se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT
for the
District of Oregon

_____ Division

JOSEPH LUNA
_____

**Plaintiff(s)**
(Write the full name of each plaintiff who is filing this complaint.
If the names of all the plaintiffs cannot fit in the space above,
please write "see attached" in the space and attach an additional
page with the full list of names.)

-v-

FRANK KRIM, LOUIS LAMP, SEASIDE CIVIC & CONVENTION CENTER
_____

**Defendant(s)**
(Write the full name of each defendant who is being sued. If the
names of all the defendants cannot fit in the space above, please
write "see attached" in the space and attach an additional page
with the full list of names.)

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. **3:26-CV-398-SI**
_____
(to be filled in by the Clerk's Office)

Jury Trial: (check one) ☐ Yes ☒ No

## COMPLAINT FOR A CIVIL CASE

### I.    The Parties to This Complaint

#### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if
needed.

| | |
|---|---|
| Name | JOSEPH LUNA |
| Street Address | 2065 SE 4th AVE. #237 |
| City and County | HILLSBORO, OR 97123 WASHINGTON COUNTY |
| State and Zip Code | OREGON  97123 |
| Telephone Number | 503-820-1109 |
| E-mail Address | kebahyena@yahoo.com |

#### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an
individual, a government agency, an organization, or a corporation. For an individual defendant,
include the person's job or title (if known). Attach additional pages if needed.

Page 1 of 5

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 1

Name            FRANK KAIM

Job or Title *(if known)*    OPERATIONS

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*    f kaim @ seasideconvention.com

Defendant No. 2

Name            LOUIS LAMP

Job or Title *(if known)*    FOUNDER OF GET OUT THE FLOAT

Street Address    964 4TH AVE.

City and County    VERNONIA, COLUMBIA COUNTY

State and Zip Code    OREGON 97064

Telephone Number

E-mail Address *(if known)*

Defendant No. 3

Name            SEASIDE CIVIC AND CONVENTION CENTER

Job or Title *(if known)*    N/A

Street Address    415 FIRST AVENUE

City and County    SEASIDE, CLATSOP COUNTY

State and Zip Code    OREGON 97138

Telephone Number    503-738-8585

E-mail Address *(if known)*    info@seasideconvention.com

Defendant No. 4

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☐ Federal question          ☒ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

   a.    If the plaintiff is an individual

   The plaintiff, *(name)*  JOSEPH LUNA , is a citizen of the State of *(name)*  OREGON .

   b.    If the plaintiff is a corporation

   The plaintiff, *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ , and has its principal place of business in the State of *(name)* _____ .

   *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

   a.    If the defendant is an individual

   The defendant, *(name)*  FRANK KAIM, LOUIS LAMP , is a citizen of the State of *(name)*  OREGON . Or is a citizen of *(foreign nation)* _____ .

b.    If the defendant is a corporation

The defendant, *(name)*   SEASIDE CIVIC AND CONVENTION CENTER is incorporated under

the laws of the State of *(name)*   OREGON                                        , and has its

principal place of business in the State of *(name)*   OREGON                              .

Or is incorporated under the laws of *(foreign nation)*                                    ,

and has its principal place of business in *(name)*   SEASIDE, OREGON                        .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

PLAINTIFF WAS VIOLATED OF RIGHTS AS INDIVIDUAL WITH A DISABILITY REQUIRING THE AID OF A SERVICE ANIMAL AND WAS DISCRIMINATED WRONGFULLY AS A RESULT.

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

EMOTIONAL ~~DAMAGES~~ DISTRESS, DEFAMATION OF CHARACTER,

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    3 / 2 / 26

Signature of Plaintiff    _____

Printed Name of Plaintiff    _____

### B.    For Attorneys

Date of signing:    _____

Signature of Attorney    _____

Printed Name of Attorney    _____

Bar Number    _____

Name of Law Firm    _____

Street Address    _____

State and Zip Code    _____

Telephone Number    _____

E-mail Address    _____

**2/6/25**

 arrived at the convention center around noon sitting at a table to eat lunch, once finished i noticed a vendor unloading a trunk using a side door. decided to "guard" the door in case anyone without an event badge tried to sneak in. it was around 3:30pm when the vendor finished and i went to go talk with my roommate checking if he was in the room where he was positioned at but he wasn't there. about 3:34pm, went out into the hallway searching for my roommate still and noticed other vendors were open and decided to look at their goods as i pass by. one vendor said my service dog looked like theirs and i discussed a little more getting to where i said my service dog is a pure breed blue heeler and has the noticeable dingo traits in his ears and paws. i took a step back into the middle of the hallway and once i called my service dog to come closer to me he noticed a person approaching and barked (one long bark lasting 3 to 4 seconds, not multiple barks). once done with his bark he went into a sit position close to me. about 3:37pm, i noticed my roommate down the hallway a couple seconds later and went to talk with them. it was about 10 to 15 minutes later that i was approached by 2 convention center staff members (seeing his name on his shirt but no name on the others shirt) Frank saying "you need to remove your pet" my response "he's a service dog" Franks reply "I've been a member of the ADA for 7 years and a service dog can't bark" i didn't respond to Frank after he said that but pulled out my phone to go to ADA.gov but before i could pull up any information the other convention center staff member said "the event coordinator wants you removed" before i could respond to them he took off to get Louis Lamp (event coordinator/chairman of Get Out The Float) to tell him i was refusing to leave. around 3:40pm, under a minute later Louis entered the room (main stage/bounce house room) and rushed escorted me out from the convention center. i was focused on pulling up the ADA website as Louis was escorting me out so i didn't hear too much of what he was saying to me but what i do remember hearing is "go to the hotel room and just relax, don't worry about your volunteer shift" after exiting the convention center i went to my vehicle and pulled up the info from ADA.gov pertaining to what just happened and what was said to me before i contacted Seaside police non-emergency. around 4:05pm,

after getting a call back from the officer and him telling me I'm not trespassed but the convention center stated that "the event coordinator wanted me removed" i went into the convention center, leaving my service dog in my vehicle, going up to a volunteer where registration for the event was asking the volunteer if i can talk with Louis to show him my rights were being violated. the volunteer contacted Louis on a radio then once they were finished talking to Louis told me "why are you back in here, you've been trespassed by the convention center and you also need to forfeit your badge. if you have a problem you need to talk to the convention center for your trespass". forfeited my badge to the volunteer and left the convention center returning to my vehicle again. around 4:17pm sent a message to Louis on Telegram "sorry for coming back in but i was under the assumption i had to just remove Scout as they only said for me to remove Scout (my service dog)". 6:06pm, Louis sent me a message on Telegram "your reservation has been changed, you will check out from the hotel tomorrow morning" (staff and some volunteers get a hotel room paid for by Louis for volunteering). right then and there i just gathered my belongings and left for home.

through roommate communicating to Louis, Louis changed the reason from "bark" to "barking and growling all day" then to finally "aggressiveness, barking and growling all day, and 1 complaint stating they have a fear of dogs" for the reason of my removal. ban letter was made 2/23/25 but didn't receive until sometime early March reason stating for my removal and ban "re-entry to the convention center after i was removed/trespassed". The events that happened at Get Out The Float also caused a defamation of my character as I was also banned from other conventions either to attend or even volunteer as a result of Louis spreading the word about my ban from Get Out The Float.

not just the Seaside civic and convention center and their staff member Frank Kaim but also Get Out The Float's event coordinator/chairman Louis Lamp (Louis Lamp's address is on the ban letter, unknown what his phone number is). Seaside civic and convention center had also blocked any other emails from Advocacy for Service Animals.

# How to Know If Someone Blocked You on Telegram

Elsa • Updated on Jun 12, 2025    Filed to: Parent Control

Wondering if someone has blocked you on Telegram? When notice changes in how you interact with someone, you may guess these are indicators of being blocked.

As Telegram does not directly notify you if someone blocks you, it might be tricky to determine. Yet, there are 6 obvious signs that help you know if you are blocked on Telegram, including:

- → 1: **Fail to Launch Voice or Video Calls**
- → 2: **Can't Start A Secret Chat**
- → 3: **Unable to Add Them to Group Chats**
- → 4: **Only See Last Seen A Long Time Ago**
- → 5: **Messages Are Always "Delivered"**
- → 6: **The Profile Picture Back to Initial**



**Alan**
Case 3:26-cv-00398-SI    Document 1    Filed 03/02/26    Page 10 of 57
last seen 5 minutes ago

**April 9, 2025**

Forwarded from  Queen Vinyl Da.i'gyu-Kazotetsu
Hi Zalris,

This message is to inform you that Furlandia has decided to excuse
you from volunteering this year. We have been informed that you
have been evading a block in order to forward messages from
another individual that the receiver has blocked, which violates our
anti-harrassment policy.

At this time, you are still welcome to come to Furlandia as a regular
attendee, so long as you adhere to our Code of Conduct and follow
staff instruction at the convention.

Thank you.                                          10:28 AM

Forwarded from  Alan
Evading a block? what block?    10:28 AM

Forwarded from  Alan
i did not harass anyone so i want this looked into again cause this is
not right                                          10:28 AM

Forwarded from  Queen Vinyl Da.i'gyu-Kazotetsu
We have carefully looked into this and confirmed the issue.
                                                   10:28 AM

Forwarded from  Alan
i want more info   10:28 AM

Forwarded from  Alan
this is the first i have heard of this   10:28 AM

Forwarded from  Alan
i am not mad just wanting to get more info   10:28 AM

Forwarded from  Queen Vinyl Da.i'gyu-Kazotetsu
If I may be direct, the fact that you had been forwarding messages
between two individuals when one has blocked the other is already
an issue. However, we have been informed that after the individual
blocked you on Telegram, you continued to forward messages via
text message.



Forwarded from ⛎ Alan
i am not mad just wanting to get more info    10:28 AM

Forwarded from ⛎ Queen Vinyl Da.i'gyu-Kazotetsu
If I may be direct, the fact that you had been forwarding messages
between two individuals when one has blocked the other is already
an issue. However, we have been informed that after the individual
blocked you on Telegram, you continued to forward messages via
text message.

As per our harrassment policy:

"Please remember that if you approach someone and they tell you
"no" or to leave them alone, your business with them is done. If you
do not leave them alone as they have requested, your actions may
be grounds for a complaint of harassment."

A block on Telegram, or any other communication method, is a
statement that the individual does not wish to be contacted by you
any longer.    10:28 AM

Forwarded from ⛎ Alan
if this is because of Bap Keba was standing over my shoulder and
had me send those messages to him and I told Keba I did not want
to send these but would not leave me till i sent them    10:28 AM

Forwarded from ⛎ Queen Vinyl Da.i'gyu-Kazotetsu
Did you ask Keba to leave?    10:28 AM

Forwarded from ⛎ Alan
i did and he did not leave he just stood over me    10:28 AM

Forwarded from ⛎ Queen Vinyl Da.i'gyu-Kazotetsu
I won't pry into the personal details on that, but if you have asked
him to leave and he is not leaving, then he is harrassing you and you
should take more serious action.    10:28 AM

Forwarded from ⛎ Queen Vinyl Da.i'gyu-Kazotetsu
However, you have also been asking the convention chair about
Keba's ban.    10:28 AM

Forwarded from ⛎ Alan
i understand that    10:28 AM

Forwarded from ⛎ Alan
i asked Mutterwolf and he told me to send an email    10:28 AM



Forwarded from ⛎ Alan
so i did with no responce i was not sure if it was sent right or not    10:28 AM

Keba's ban.                                    10:28 AM

Forwarded from 🙂 Alan
i understand that    10:28 AM

Forwarded from 🙂 Alan
i asked Mutterwolf and he told me to send an email    10:28 AM

Forwarded from 🙂 Alan
so i did with no responce i was not sure if it was sent right or not
                                               10:28 AM

Forwarded from 🙂 Alan
i only sent 2 emails    10:28 AM

Forwarded from 🙂 Alan
plus i did not know that Keba was banned thats why i was asking
                                               10:28 AM

Forwarded from    Queen Vinyl Da.i'gyu-Kazotetsu
The details of a ban may only be discussed with the individual in
question.  I'm not sure why you were informed to send an email.
                                               10:28 AM

Forwarded from    Queen Vinyl Da.i'gyu-Kazotetsu
But the question still remains: why *are* you asking about it anyways?
                                               10:28 AM

Forwarded from 🙂 Alan
i asked cause Keba was thinking on going to Furlandia and when he
got kicked from the group i was just wondering if that was a ban as
well i was not trying to pry i was just wondering just in case i needed
another way to the con                         10:28 AM

Forwarded from    Queen Vinyl Da.i'gyu-Kazotetsu
If Keba has been banned, they will receive a letter stating as such
and the reason why.                            10:28 AM

Forwarded from 🙂 Alan
ok thats ifine    10:28 AM

Forwarded from 🙂 Alan
i was going to go with keba to the con if he was not banned so thats
why i asked is all i am saying                 10:28 AM

Forwarded from 🙂 Alan
but i am sorry that all this crap happened you know me i would not

try to cause problems                          10:28 AM

**April 12, 2025**





← Back

JL **Joseph Luna**
To: Matthew · Fri, Feb 28, 2025 at 7:30 AM ⌄

sorry its taken a little time for me to reply back (was waiting for my money to come in) ide like to get the link please for the chat and i also just tryed to register but the payment method says by paypal or check/money order (dont have a paypal)

Show trimmed content ⌄

MD **Matthew Dahlquist**
To: me · Sat, Mar 1, 2025 at 3:28 PM ⌄

Furlandia Staff telegram link
https://t.me/+JeyCQzy1yMlfYWEx

Show trimmed content ⌄

JL **Joseph Luna**
To: Matthew · Mon, Mar 10, 2025 at 4:43 PM ⌄

i joined the group but a little bit later i dont see it on telegram , was i supposed to confirm something

Show trimmed content ⌄

Reply ⤶        Forward ⤷

**March 21, 2025**

Forwarded from 👤 Alan
hey sorry to bug you but it seem cause of the ban letter you sent now Keba may have to bring you into the lawsuit cause it does not state the full info of why he was banned and i dont know what to do
12:36 PM

Forwarded from 👤 Alan
question did i ever tell you that scout is not a service animal?i dont remember saying anything about that
12:36 PM

Forwarded from 🐾 Baphnedia
Keba can do as he wants.
The ADA does not protect aggressive dogs under any circumstances.
12:36 PM

Forwarded from 👤 Alan
I know and he is trying to bring me into this and its been stressing me out and i have to live with him
12:36 PM

Forwarded from 🐾 Baphnedia
you do not have to live with him, you needed to be physically separated from him during GOTF, for your safety from his dog and your wellbeing. I covered that at my expense.

Privately reach out to the Hilllsboro municipal court clerk and ask for help starting a restraining order.
12:36 PM

Forwarded from 🐾 Baphnedia
Seaside PD already has a police report from us.
12:36 PM

Forwarded from 👤 Alan
well i asked to be moved due to scouts barks i just did not want to get complaints that was really it
12:36 PM

Forwarded from 👤 Alan

it was not cause scout was being aggressive towards me which he was not i just did not want to hear from the hotel
12:36 PM

April 0, 2025

**Alan**
last seen 3 minutes ago

**April 12, 2025**



Hey it's Zalms I am sorry most of those messages came from Keba he was pestering me to send you this message and this message and most of those messages were him again I am sorry

Thank you for letting me know. You're roommate made you send those messages in part to isolate you from your friends.

I mean it is true that scout is not aggressive just he kept on wanting me to send other messages

← Back    ↩ ↩ ↪ ☑ ☆ ▢ 🗑 ⊚ •••    ↑ ↓ ✕

# Concerning Service Animals & Seaside Civic Center 🖉 ▢ Inbox

 **advocacy411@gmail.com**    ☆ •••
To: bowen@seasideconvention.com, Cc: me · Wed, Feb 18 at 3:44 PM ⌄

February 17, 2026 Dear Mr. Owen, Thank you for contacting Advocates for Service Animal Partners concerning the service animal incident we discussed. As per your reques...

 **advocacy411@gmail.com**    ☆ •••
To: info@seasideconvention.com, Cc: me · Thu, Feb 19 at 7:45 AM ⌄

     I orginally sent this correspondence to Mr. Owen bowen@seasideconvention.com but it was returned undeliverable because it was blocked. In due diligence to resolve this concern, I am sending it to the general mailbox listed on your website. Please send this on to Mr. Owen on our behalf. Thank you very much!

Sincerely yours,
Marion Gwizdala
President/CEO
ADVOCATES FOR SERVICE ANIMAL PARTNERS INC.
386-ASAP411 (386-272-7411

From: advocacy411@gmail.com <advocacy411@gmail.com>
Sent: Wednesday, February 18, 2026 6:44 PM
To: bowen@seasideconvention.com
Cc: kebahyena@yahoo.com
Subject: Concerning Service Animals & Seaside Civic Center
Importance: High

February 17, 2026

← Back                  ↩ ↩ ↪ ☑ ☆ ▢ 🗑 ⊗ ⋯                               ↑ ↓ ✕

## Concerning Service Animals & Seaside Civic Center  📎 ▢ Inbox                              ☆ ⋯

 **advocacy411@gmail.com**
To: bowen@seasideconvention.com, Cc: me · Wed, Feb 18 at 3:44 PM ∨

February 17, 2026

Dear Mr. Owen,

     Thank you for contacting    Advocates for Service Animal Partners concerning the service animal incident we discussed. As per your request, I am forwarding the information we have received about this incident, along with excerpts from the Americans with Disabilities Act, its implementing regulations concerning service animals, and other information published by the United States Department of Justice and Advocates for Service Animal Partners. This information is intended as informal guidance only. It should not be construed as legal advice. If you believe you need legal advice, you should contact a civil rights attorney licensed to practice in your jurisdiction.

Joseph Luna is a qualified individual with a disability who uses a trained service dog to mitigate the effects of his disability. According to Mr. Luna and Mr. Lamp's correspondence with him (attached), the Seaside Convention center staff, specifically Frank Kaim,  was involved in the removal of our client and his service animal. As per our telephone conversation, the Americans with Disabilities Act (ADA) considers "an auditorium, convention center, lecture hall, or other place of public gathering" a place of public accommodation. **42 USC 12181(7)(D). The implementing regulations of the ADA require places of public accommodation to modify their policies, practices, and procedures to allow an individual with a disability accompanied by a service dog the same access as other invitees, as relevant. 28 CFR § 36.302(c)(1).**

The ADA prohibits discrimination based on disability, codifying four broad practices as discriminatory: 1) denial of participation, 2) unequal benefit, 3) separate benefit, and 4) association with a member of the protected class. As it pertains to this issue, the Act states, "It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of
such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class
to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 USC
12182(b)(1)(A)(i).

During our conversation, it was asserted that the removal of Mr. Luna was at the request of the event and Seaside Civic and Convention Center only complied with this request by the event coordinator. As it relates to this assertion, "Get out the Float" is not a place of public accommodation but has a contractual arrangement with Seaside Civic and Convention Center. The aforementioned section of code clearly prohibits discrimination through such contractual arrangements.

The contention is that Mr. Luna's service dog was out of control because it reacted to a costumed participant by barking. Mr. Luna contends that his service dog barked once because it was startled. Mr. Luna contends he corrected the behavior and it did not happen again. The implementing regulations of Title III of the ADA allows a public accommodation to "ask an individual with a disability to remove a service animal from the premises if: (i) The animal is out of control and the animal's handler does not take effective action to control it; or
(ii) The animal is not housebroken.' 28 CFR § 36.302(c)(2). It is not enough for the animal to be out of control to be excluded; rather, it is based upon the handler not taking effective measures to correct the behavior. The Department of Justice addresses what constitutes out-of-control behavior in its publication, "Frequently Asked Questions about service Animals" (attached). The pertinent excerpt is found in question 27: which states, "if a dog barks just once, or barks because someone has provoked it, this would not mean that the dog is out of control." A provocation does not need to be intentional to startle a dog. A dog's startle reaction is generally to recoil and bark which Mr. Luna asserts is how his service dog reacted.

Despite Mr. Luna's understanding that the removal of the dog was improper, he complied with the request. He later returned to the event without the service dog and was still denied access to the Seaside Civic and Convention Center, another practice prohibited by the Act's implementing regulations. "If a public accommodation property excludes a service animal under § 36.302(c)(2), it shall give the individual with a disability the opportunity to obtain goods, services, and accommodations without having the service animal on the premises." 28 CFR §36.302(c)(3). Even if Seaside Civic and Convention Center had properly asked for the dog to be removed, Mr. Luna's continued denial of participation without the dog being present further violates the ACT.

It is our hope that this incident will be used as a teachable moment for Seaside Civic and Convention Center and you will take the time to properly train your staff on the application of the ADA to your operations. Advocates for Service Animal Partners conducts such training concerning service animals for public and private entities. If we can be of assistance in this regard, please feel free to reach out to us. If you would prefer more authoritative information about this issue, you may also contact the United States Department of Justice ADA Information Line at (800) 514-0301.

Sincerely yours,
Marion Gwizdala
President/CEO
ADVOCATES FOR SERVICE ANIMAL PARTNERS INC.
386-ASAP411 (386-272-7411)
Advocacy411@gmail.com
ServiceAnimals.info

From: Joseph Luna

**February 6, 2025**

 He didn't send me anything  6:58 PM ✓✓

 Hmm I will see if I can talk to him  7:05 PM

 How do I take a screenshot so I can show u  7:06 PM ✓✓

 Hold volume down and the power button at the same time
7:13 PM

 Just fuck it, don't worry about me checking out tomorrow I'm doing it rn , if I die then I die , tired of being marked as the asshole when I'm dead ass staring at the what the law says and people lying , if I do crash I just hope scout passes painlessly  7:36 PM ✓✓



 

Look very closely at the KEY words , it wasn't excessively barking since it was 1 ALERT bark and the proper questions they could have asked weren't asked
  11:26 PM ✓✓

**February 7, 2025**



 | Music map

**Alan**
last seen 12 minutes ago



LOOK very closely at the KEY words , it wasn't excessively barking since it was 1 ALERT bark and the proper questions they could have asked weren't asked

11:26 PM ✓✓

**February 7, 2025**



12:20 AM ✓✓





R u sooo sure I need that doctors note    12:24 AM ✓✓




E.S.A. yes , S.A. no because the animal is trained to perform the certain "service" as to E.S.A. is ONLY emotional    12:28 AM ✓✓



12:31 AM ✓✓



 Really pay attention to this 1



12:36 AM ✓✓



 Fundamentally alter means (as in an example) if the service dog is in the surgery room compared to being in the recovery room



Again he barked once so yeeeaaahhh . I couldn't have been asked to remove him

12:43 AM ✓✓











12:44 AM ✓✓



 OOOHH BOII , federal and private lawsuit here I come   12:46 AM ✓✓

 no you will not

**Alan**
Case 3:26-cv-00398-SI        Document 1        Filed 03/02/26        Page 25 of 57
last seen 7 minutes ago



 **OOOHH BOII**, federal and private lawsuit here I come    12:46 AM ✓✓

no you will not    :09 A M

 if i so hear you trying to pull that you will be out on your fucking ass you understand that    1:09 AM



1:32 AM ✓✓

The convention center is gonna get their ass chewed out , not G.O.T.F. if it is true that it was the convention center staff that wanted to trespass me for scouts 1 single ALERT bark    1:40 AM ✓✓





1:32 AM ✓✓

The convention center is gonna get their ass chewed out , not G.O.T.F. if it is true that it was the convention center staff that wanted to trespass me for scouts 1 single ALERT bark     1:40 AM ✓✓



It IS aggravating for those that do lie about S.A. but I'm not lying

1:50 AM ✓✓

Maybe instead of looking at E.S.A. registration that requires a





 It IS aggravating for those that do lie about S.A. but I'm not lying
1:50 AM ✓✓

 Maybe instead of looking at E.S.A. registration that requires a doctor's note you should have looked at A.D.A. laws for S.A. because I know you've been telling the food banks and other places we've gone to that scout isn't a S.A.
2:11 AM ✓✓

you know what just fuck off  7:38 AM

YOU ARE SO FUCKING STUPID HE IS NOT A SERVICE ANIMAL HE WAS NEVER PROPERLY TRAINED YOU DONT HAVE A DOCTORS NOTE STATING THAT. You even told me long time that you were wanting to cheat the system and pretend he was one
7:45 AM

 dude even brett know he is not as well  7:54 AM

 Some1 didn't read the specifics STATING "I", "MYSELF" can train him for the specific needs of my disabilitys
9:05 AM ✓✓

 umm no thats not how it works and i am done talking about it so fuck off
9:06 AM



### Frequently Asked Questions abou
### Animals and the ADA

Write a message...



Get Out The Float
964 4th Ave
Vernonia, OR 97064
www.getoutthefloat.com

Joseph Luna
2085 SE 44th Ave
Apt #237
Hillsboro, OR 97123
Ph: 503-820-1109
Email: kebahyena@yahoo.com
Re: Get Out The Float 2025 Attendance

February 23rd, 2025

Hello Joseph / KebaYena,

This letter is to inform you that you have been permanently banned from Get Out the Float (GOTF). During GOTF 2025, you were removed from the premises on Thursday, February 6, 2025 by the Seaside Civic & Convention Center staff and the convention chair. After your removal from the convention center, you returned later in the day to dispute your removal with GOTF registration volunteers.

### Expulsion from Event by Venue or Hotel

If you are expelled from the hotel or other venue for violation of their rules, you immediately forfeit your event membership, must surrender your badge, and will receive no refund. Attendees who commit vandalism or conduct themselves in such a way that is grossly offensive to the venue or hotel staff may also be subject to long-term bans from future GOTF events.

As a result, you have been permanently banned from attending Get Out The Float. You may make a written appeal for this ban after March 1st, 2026. No appeals will be reviewed before that date.

You are also permanently banned from volunteering at Get Out the Float. No appeals will be accepted.

Sincerely,

Louis Lamp
Founder
Get Out The Float

**american family care**
**URGENT CARE**

# Doctor's Note

Location: American Family Care

Phone: 503-305-6262

Address: 1071 SE Tualatin Valley Hwy

Fax: 888-493-2953

Name: LUNA, JOSEPH

Date of visit: 7/7/2025

To Whom It May Concern,

I am writing to request reasonable accommodation for my patient, Joseph Luna, to have his service dog, Scout, live with him at Park Creek Village.

Mr. Luna suffers from diabetic neuropathy and diabetic retinopathy, conditions that significantly impair his mobility and vision. Scout provides essential support to help him manage these impairments and maintain his daily functioning.

Allowing Mr. Luna to keep Scout in his residence is necessary for his health and well-being. Mr. Luna is committed to following all community guidelines related to pet care and safety.

Please contact our office 503-305-6262 if you require any additional information.



Provider Signature
American Family Care

# American Service Pets Certification

## This Certificate Confirms That

# SCOUT

Has been officially certified with the ESAC by

## JOSEPH LUNA

### Emotional Support Animals are protected under Federal Law

In accordance with the Federal Fair Housing Act Amendment of 1988 (FHA Title 42 U.S.C CH 45 S.U.B-CH 1 SEC 3601) a housing provider may not deny a request for reasonable accommodation due to an uncertainty about the requestors physical or mental disability or their need for a support animal. Further, in accordance with the Air Carrier Access Act 1986 (ACAA Title 49 SEC 41705 U.S.C) a U.S. foreign air carrier is prohibited from discriminating based on a passenger's need for a support animal (either emotional or physical).

This certificate is for secondary proof only and should be used in conjunction with a letter from a certified and licensed doctor.

DATE: 31-Dec-2020

WWW.ESACONFIRM.COM

REGISTRATION ID: 669537

PHONE: (888) 532-8211

www.ada.gov/resources/service-animals-faqs/

**Table of contents**

Frequently Asked Questions about Service Animals and the ADA

Definition of a Service Animal

General Rules

Certification and Registration

**Breeds**

Exclusion of Service animals

Miscellaneous

Resources

Print this page

# Exclusion of Service animals

—

Q25. When can service animals be excluded?                                    +

Q26. When might a service dog's presence fundamentally alter the nature of a service or program provided to the public?                                    +

Q27. What does under control mean?  Do service animals have to be on a leash?  Do they have to be quiet and not bark?                                    +

Q28. What can my staff do when a service animal is being disruptive?                                    +

Q29. Are hotel guests allowed to leave their service animals in their hotel room when they leave the hotel?                                    +

Q30. What happens if a person thinks a covered entity's staff has discriminated against him or her?                                    —

A. Individuals who believe that they have been illegally denied access or service because they use service animals may file a complaint with the U.S. Department of Justice.  Individuals also have the right to file a private lawsuit in Federal court charging the entity with discrimination under the ADA.

www.ada.gov/resources/service-animals-faqs/

# Exclusion of Service animals

**Table of contents**

**Frequently Asked Questions about Service Animals and the ADA**

Definition of a Service Animal

General Rules

Certification and Registration

Breeds

**Exclusion of Service animals**

Miscellaneous

Resources

Print this page

 **Q25. When can service animals be excluded?**                          +

 **Q26. When might a service dog's presence fundamentally alter the nature of a service or program provided to the public?**    +

 **Q27. What does under control mean?  Do service animals have to be on a leash?  Do they have to be quiet and not bark?**    —

A. The ADA requires that service animals be under the control of the handler at all times. In most instances, the handler will be the individual with a disability or a third party who accompanies the individual with a disability. In the school (K-12) context and in similar settings, the school or similar entity may need to provide some assistance to enable a particular student to handle his or her service animal. The service animal must be harnessed, leashed, or tethered while in public places unless these devices interfere with the service animal's work or the person's disability prevents use of these devices. In that case, the person must use voice, signal, or other effective means to maintain control of the animal. For example, a person who uses a wheelchair may use a long, retractable leash to allow her service animal to pick up or retrieve items. She may not allow the dog to wander away from her and must maintain control of the dog, even if it is retrieving an item at a distance from her. Or, a returning veteran who has PTSD and has great difficulty entering unfamiliar spaces may have a dog that is trained to enter a space, check to see that no threats are there, and come back and signal that it is safe to enter. The dog must be off leash to do its job, but may be leashed at other times. Under control also means that a service animal should not be allowed to bark repeatedly in a lecture hall, theater, library, or other quiet place. However, if a dog barks just once, or barks because someone has provoked it, this would not mean that the dog is out of control.



www.ada.gov/resources/service-animals-faqs/

# Exclusion of Service animals

—

## Table of contents

**Frequently Asked Questions about Service Animals and the ADA**

Definition of a Service Animal

General Rules

Certification and Registration

Breeds

**Exclusion of Service animals**

Miscellaneous

Resources

**Q25. When can service animals be excluded?**

A. The ADA does not require covered entities to modify policies, practices, or procedures if it would "fundamentally alter" the nature of the goods, services, programs, or activities provided to the public.  Nor does it overrule legitimate safety requirements.  If admitting service animals would fundamentally alter the nature of a service or program, service animals may be prohibited.  In addition, if a particular service animal is out of control and the handler does not take effective action to control it, or if it is not housebroken, that animal may be excluded.

**Q26. When might a service dog's presence fundamentally alter the nature of a service or program provided to the public?**

○ 🛡 🔒 www.ada.gov/resources/service-animals-faqs/

**Table of contents**

**Frequently Asked Questions about Service Animals and the ADA**

Definition of a Service Animal

General Rules

Certification and Registration

Breeds

Exclusion of Service animals

Miscellaneous

Resources

Print this page 🖶

📖 **Q2. What does do work or perform tasks mean?** +

📖 **Q3. Are emotional support, therapy, comfort, or companion animals considered service animals under the ADA?** +

📖 **Q4. If someone's dog calms them when having an anxiety attack, does this qualify it as a service animal?** +

📖 **Q5. Does the ADA require service animals to be professionally trained?** +

📖 **Q6. Are service-animals-in-training considered service animals under the ADA?** +

# General Rules
—

📖 **Q7. What questions can a covered entity's employees ask to determine if a dog is a service animal?** +

📖 **Q8. Do service animals have to wear a vest or patch or special harness identifying them as service animals?** —

A. No. The ADA does not require service animals to wear a vest, ID tag, or specific harness.

 www.ada.gov/resources/service-animals-faqs/

Revised Requirements: Service Animals.

**Table of contents**

**Frequently Asked Questions about Service Animals and the ADA**

Definition of a Service Animal

General Rules

Certification and Registration

Breeds

Exclusion of Service animals

Miscellaneous

Resources

**Print this page**

# Definition of a Service Animal



—

Q1. What is a service animal?                                            +

Q2. What does do work or perform tasks mean?                            +

Q3. Are emotional support, therapy, comfort, or companion animals
considered service animals under the ADA?                               +

Q4. If someone's dog calms them when having an anxiety attack, does this
qualify it as a service animal?                                         +

Q5. Does the ADA require service animals to be professionally trained?  —

A. No. People with disabilities have the right to train the dog themselves and are not required
to use a professional service dog training program.



www.ada.gov/resources/service-animals-2010-requirements/

**Table of contents**

**ADA Requirements: Service Animals**

Overview

**How "Service Animal" Is Defined**

Where Service Animals Are Allowed

Service Animals Must Be Under Control

Inquiries, Exclusions, Charges, and Other Specific Rules Related to Service Animals

Miniature Horses

Print this page

Information about such laws can be obtained from the relevant State attorney general's office.

# Where Service Animals Are Allowed

—

**Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is allowed to go.** For example, in a hospital it usually would be inappropriate to exclude a service animal from areas such as patient rooms, clinics, cafeterias, or examination rooms. However, it may be appropriate to exclude a service animal from operating rooms or burn units where the animal's presence may compromise a sterile environment.

# Service Animals Must Be Under Control

—

**A service animal must be under the control of its handler. Under the ADA, service animals must be harnessed, leashed, or tethered, unless the individual's disability prevents using these devices or these devices interfere with the service animal's safe, effective performance of tasks. In that case, the individual must maintain control of the animal through voice,** signal, or other effective controls.



www.ada.gov/resources/service-animals-2010-requirements/

**Table of contents**

**ADA Requirements: Service Animals**

Overview

How "Service Animal" Is Defined

Where Service Animals Are Allowed

**Service Animals Must Be Under Control**

Inquiries, Exclusions, Charges, and Other Specific Rules
Related to Service Animals

Miniature Horses

**Print this page**

**A service animal must be under the control of its handler. Under the ADA, service animals must be harnessed, leashed, or tethered, unless the individual's disability prevents using these devices or these devices interfere with the service animal's safe, effective performance of tasks.** In that case, the individual must maintain control of the animal through voice, signal, or other effective controls.

# Inquiries, Exclusions, Charges, and Other Specific Rules Related to Service Animals

When it is not obvious what service an animal provides, only limited inquiries are allowed. Staff may ask two questions: (1) is the dog a service animal required because of a disability, and (2) what work or task has the dog been trained to perform. Staff cannot ask about the person's disability, require medical documentation, require a special identification card or training documentation for the dog, or ask that the dog demonstrate its ability to perform the work or task.

- Allergies and fear of dogs are not valid reasons for denying access or refusing service to people using service animals. When a person who is allergic to dog dander and a person who uses a service animal must spend time in the same room or facility, for example, in a school classroom or at a homeless shelter, they both should be accommodated by assigning them, if possible, to different locations within the room or different rooms in the facility.
- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence.
- Establishments that sell or prepare food must geny allow service animals in public areas even if state or local health codes prohibit animals on the premises.

O △ www.ada.gov/resources/service-animals-2010-requirements/

**Table of contents**

**ADA Requirements: Service Animals**

Overview

How "Service Animal" Is Defined

Where Service Animals Are Allowed

**Service Animals Must Be Under Control**

Inquiries, Exclusions, Charges, and Other Specific Rules
Related to Service Animals

Miniature Horses

Print this page                                            🖶

A service animal must be under the control of its handler. Under the ADA, service animals must be harnessed, leashed, or tethered, unless the individual's disability prevents using these devices or these devices interfere with the service animal's safe, effective performance of tasks. In that case, the individual must maintain control of the animal through voice, signal, or other effective controls.

# Inquiries, Exclusions, Charges, and Other Specific Rules Related to Service Animals

When it is not obvious what service an animal provides, only limited inquiries are allowed. Staff may ask two questions: (1) is the dog a service animal required because of a disability, and (2) what work or task has the dog been trained to perform. Staff cannot ask about the person's disability, require medical documentation, require a special identification card or training documentation for the dog, or ask that the dog demonstrate its ability to perform the work or task.

- Allergies and fear of dogs are not valid reasons for denying access or refusing service to people using service animals. When a person who is allergic to dog dander and a person who uses a service animal must spend time in the same room or facility, for example, in a school classroom or at a homeless shelter, they both should be accommodated by assigning them, if possible, to different locations within the room or different rooms in the facility.



Justice.gov > Servicemembers and Veterans Initiative > Service Animals and Assistance Animals

**Servicemembers and Veterans Initiative Home**

How We Can Help

Topics  +

Cases

News/Blogs

Resources

# Service Animals and Assistance Animals

Share  >

PDF

The right for a person with a disability to live and travel with the aid of a service animal or assistance animal is protected by a combination of federal laws that vary based on factors like the type of animal and location.

## Differences Between Service Animals and Assistance Animals

| Service Animal | Assistance Animal |
|---|---|
| Service animal has a specific definition and meaning under applicable federal laws. | This is a broad term that can refer to assistance animals, support animals, emotional support animals, therapy animals, companion animals, etc. |
| Dog of any breed or size | Could be any species |

Resources

# Differences Between Service Animals and Assistance Animals

| Service Animal | Assistance Animal |
|---|---|
| Service animal has a specific definition and meaning under applicable federal laws. | This is a broad term that can refer to assistance animals, support animals, emotional support animals, therapy animals, companion animals, etc. |
| Dog of any breed or size | Could be any species |
| Trained to perform a task related to a person's disability | Necessary to mitigate the effects of a physical or mental disability |
| Generally, can accompany people with disabilities in their homes and all areas where the public, participants in programs, services, or activities, or invitees are permitted. | Must be permitted in areas like a person's home, workplace, and K-12 schools. |

# Rules About Service Animals

- To verify a service animal, generally it is permissible to ask only two questions:
    1. Is the dog a service animal required because of a disability?
    2. What work or task has the dog been trained to perform?
- Local rules on dog licenses and vaccinations can be applied to service dogs.
- A service dog cannot be banned or prohibited based on its breed or size.
- Service animals are not required to be certified or to wear a vest or other ID.
- Miniature horses may qualify as a reasonable modification and be treated in the same manner as a service animal.

www.justice.gov/servicemembers/service-animals-and-assistance-animals-0

## Where Are Service Animals & Assistance Animals Protected?*

| Location (Potential Applicable Law) | Service | Assistance |
| --- | --- | --- |
| Businesses and Public Accommodations (ADA Title III) | Yes | No |
| K-12 Education (ADA Title II or III, Sec. 504. or IDEA) | Yes | Yes |
| Higher Education (ADA Title II or III, or Sec. 504) | Yes | No |
| Government Spaces (ADA Title II or Sec. 504) | Yes | No |
| Health Care Facilities (ADA Title II or III, or Sec. 504) | Yes | No |
| Housing (FHA or Sec. 504) | Yes | Yes |
| Places/Programs Receiving Federal Funds (Sec. 504) | Yes | No |
| Public Transportation (ADA Title II) & Airplanes (ACAA) | Yes | No |
| Workplaces (over 15 employees) (ADA Title I) | Yes | Yes |

* May depend on specific facts and circumstances. Additional resources should be consulted.

## When Service Animals and Assistance Animals

www.justice.gov/servicemembers/service-animals-and-assistance-animals-0

| | Yes | No |
|---|---|---|
| Public Transportation (ADA Title II) & Airplanes (ACAA) | Yes | No |
| Workplaces (over 15 employees) (ADA Title I) | Yes | Yes |

* May depend on specific facts and circumstances. Additional resources should be consulted.

# When Service Animals and Assistance Animals Can Be Prohibited

- If they are not harnessed/leashed or controlled by voice/hand signals, etc.
- If they are out of control in public – e.g., growling, biting, excessive barking.
- If the animal is not housebroken [applies to public spaces, not housing].
- If the animal's presence or behavior would fundamentally alter the nature of the service, program, or activity.
- If the animal poses a direct threat to the health or safety of others.
- Where there is a legitimate safety requirement necessary for the safe operation of the service, program, or activity.

Find more information on service animals and assistance animals at ada.gov and hud.gov/fairhousing

Updated November 4, 2024



U.S. Department of
JUSTICE

**Google**

can someone be a member of the americans with disability act

AI Mode    **All**    News    Images    Shopping    Short videos    Videos    More ⌄    Tools ⌄

◆ AI Overview

The Americans with Disabilities Act (ADA) is a civil rights law, not a club or organization with "members." It protects qualified individuals with physical or mental impairments that substantially limit major life activities. Protection applies to people with a current disability, a record of a disability, or those perceived as having one.

**Key Details on ADA Protection:**

- **Definition:** An individual must have a substantial, rather than minor, impairment (e.g., blindness, cancer, diabetes, or mental health conditions).

- **Coverage:** It applies to U.S. citizens, non-citizens, and tourists within the United States.

- **Scope:** The ADA protects individuals from discrimination in employment (Title I), state/local government services (Title II), and public accommodations (Title III).

- **Association:** The law also protects individuals who have a relationship or association with someone with a disability.

While there is no formal membership, individuals with disabilities or their advocates often use the term to describe being protected by or operating within the rights granted by the ADA.gov website.

ADA Update: A Primer for State and Local Governments - ADA.gov

Jun 1, 2015 — Who is Protected by the ADA? The ADA protects the rights of people who ha...

ⓐ ADA.gov ⋮



Americans with Disabilities Act (ADA) - DB101 Arizona

The immune system. Special sense organs. The skin. Normal cell growth. Digestive, genitourinary, bowel, and bladder...

DB DB101 Arizona ⋮

Guide to Disability Rights Laws - ADA.gov

Feb 28, 2020 — Americans with Disabilities Act (ADA) The ADA prohibits discrimination on the...

ⓐ ADA.gov ⋮





**Show all**



**Dive deeper in AI Mode**

AI responses may include mistakes. For legal advice, consult a professional. Learn more

Implementing Regulations of Title III of the ADA concerning Service animals

**This information is provided by Advocates for Service animal Partners. It is intended as informal guidance only and should not be construed as legal advice. For more information, you may contact**

**Advocates for Service animal Partners (ASAP)**
**386-ASAP411 (386-272-7411)**
Advocacy411@gmail.com
ServiceAnimals.info

**N.B.: This information is published by the United States Department of Justice. As an official publication of the federal government, it is in the public domain and reproduction is encouraged.**

## 28 CFR Part 36.104

*Service animal* means any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability. Other species of animals, whether wild or domestic, trained or untrained, are not service animals for the purposes of this definition. The work or tasks performed by a service animal must be directly related to the individual's disability. Examples of work or tasks include, but are not limited to, assisting individuals who are blind or have low vision with navigation and other tasks, alerting individuals who are deaf or hard of hearing to the presence of people or sounds, providing non-violent protection or rescue work, pulling a wheelchair, assisting an individual during a seizure, alerting individuals to the presence of allergens, retrieving items such as medicine or the telephone, providing physical support and assistance with balance and stability to individuals with mobility disabilities, and helping persons with psychiatric and neurological disabilities by preventing or interrupting impulsive or destructive behaviors. The crime deterrent effects of an animal's presence and the provision

of emotional support, well-being, comfort, or companionship do not constitute work or tasks for the purposes of this definition.

**28 CFR § 36.302 Modifications in policies, practices, or procedures.**

- (c) *Service animals.*
    - (1) *General.* Generally, a public accommodation shall modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability.
    - (c)(2) *Exceptions.* A public accommodation may ask an individual with a disability to remove a service animal from the premises if:
        - (i) The animal is out of control and the animal´s handler does not take effective action to control it; or
        - (ii) The animal is not housebroken.
    - (3) *If an animal is properly excluded.* If a public accommodation properly excludes a service animal under § 36.302(c)(2), it shall give the individual with a disability the opportunity to obtain goods, services, and accommodations without having the service animal on the premises.

- o **(4)** *Animal under handler's control.* A service animal shall be under the control of its handler. A service animal shall have a harness, leash, or other tether, unless either the handler is unable because of a disability to use a harness, leash, or other tether, or the use of a harness, leash, or other tether would interfere with the service animal's safe, effective performance of work or tasks, in which case the service animal must be otherwise under the handler;s control (e.g., voice control, signals, or other effective means).

- o **(5)** *Care or supervision.* A public accommodation is not responsible for the care or supervision of a service animal.

- o **(6)** *Inquiries.* A public accommodation shall not ask about the nature or extent of a person's disability, but may make two inquiries to determine whether an animal qualifies as a service animal. A public accommodation may ask if the animal is required because of a disability and what work or task the animal has been trained to perform. A public accommodation shall not require documentation, such as proof that the animal has been certified, trained, or licensed as a service animal. Generally, a public accommodation may not make these inquiries about a service animal when it is readily apparent that an animal is trained to do work or perform tasks for an individual with a disability (e.g., the dog is observed guiding an individual who is blind or has low vision, pulling a person's wheelchair, or providing assistance with stability or balance to an individual with an observable mobility disability).

- o **(7)** *Access to areas of a public accommodation.* Individuals with disabilities shall be permitted to

be accompanied by their service animals in all areas of a place of public accommodation where members of the public, program participants, clients, customers, patrons, or invitees, as relevant, are allowed to go.

- (8) *Surcharges*. A public accommodation shall not ask or require an individual with a disability to pay a surcharge, even if people accompanied by pets are required to pay fees, or to comply with other requirements generally not applicable to people without pets. If a public accommodation normally charges individuals for the damage they cause, an individual with a disability may be charged for damage caused by his or her service animal.

- (9) *Miniature horses*.

  - (i) A public accommodation shall make reasonable modifications in policies, practices, or procedures to permit the use of a miniature horse by an individual with a disability if the miniature horse has been individually trained to do work or perform tasks for the benefit of the individual with a disability.

(ii) *Assessment factors.* In determining whether reasonable modifications in policies, practices, or procedures can be made to allow a miniature horse into a specific facility, a public accommodation shall consider –

- (A) The type, size, and weight of the miniature horse and whether the facility can accommodate these features;

- (B) Whether the handler has sufficient control of the miniature horse;

- (C) Whether the miniature horse is housebroken; and

- (D) Whether the miniature horse´s presence in a specific facility compromises legitimate safety requirements that are necessary for safe operation.

(iii) *Other requirements.* § 36.302(c)(3) through (c)(8), which apply to service animals, shall also apply to miniature horses.

Frequently Asked Questions About Service animals

This information is provided by Advocates for Service Animal Partners (ASAP) and is duplicated with the permission of the United States Department of Justice. It is intended for technical assistance only and should not be construed as legal advice. For more information, you may contact

Advocates for service animal Partners

386-ASAP411 (386-272-7411)

Advocacy411@gmail.com

ServiceAnimals.info

**Q1. What is a service animal?**

**A.** Under the ADA, a service animal is defined as a dog that has been individually trained to do work or perform tasks for an individual with a disability.  The task(s) performed by the dog must be directly related to the person's disability.

**Q2. What does "do work or perform tasks" mean?**

**A.** The dog must be trained to take a specific action when needed to assist the person with a disability. For example, a person with diabetes may have a dog that is trained to alert him when his blood sugar reaches high or low levels. A person with depression may have a dog that is trained to remind her to take her medication. Or, a person who has epilepsy may have a dog that is trained to detect the onset of a seizure and then help the person remain safe during the seizure.

**Q3. Are emotional support, therapy, comfort, or companion animals considered service animals under the ADA?**

**A.** No.  These terms are used to describe animals that provide comfort just by being with a person.  Because they have <u>not</u> been trained to perform a specific job or task, they do <u>not</u> qualify as service animals under the ADA.  However, some State or local governments have laws that allow people to take emotional support animals into public places.  You may check with your State and local government agencies to find out about these laws.

**Q4. If someone's dog calms them when having an anxiety attack, does this qualify it as a service animal?**

**A.** It depends. The ADA makes a distinction between psychiatric service animals and emotional support animals. If the dog has been trained to sense that an anxiety attack is

about to happen and take a specific action to help avoid the attack or lessen its impact, that would qualify as a service animal. However, if the dog's mere presence provides comfort, that would not be considered a service animal under the ADA.

### Q5. Does the ADA require service animals to be professionally trained?

**A.** No. People with disabilities have the right to train the dog themselves and are not required to use a professional service dog training program.

### Q6. Are service-animals-in-training considered service animals under the ADA?

**A.** No. Under the ADA, the dog must already be trained before it can be taken into public places. However, some State or local laws cover animals that are still in training.

### GENERAL RULES

### Q7. What questions can a covered entity's employees ask to determine if a dog is a service animal?

**A.** In situations where it is not obvious that the dog is a service animal, staff may ask only two specific questions: (1) is the dog a service animal required because of a disability? and (2) what work or task has the dog been trained to perform? Staff are not allowed to request any documentation for the dog, require that the dog demonstrate its task, or inquire about the nature of the person's disability.

### Q8. Do service animals have to wear a vest or patch or special harness identifying them as service animals?

**A.** No. The ADA does not require service animals to wear a vest, ID tag, or specific harness.

### Q9. Who is responsible for the care and supervision of a service animal?

**A.** The handler is responsible for caring for and supervising the service animal, which includes toileting, feeding, and grooming and veterinary care. Covered entities are not obligated to supervise or otherwise care for a service animal.

### Q10. Can a person bring a service animal with them as they go through a salad bar or other self-service food lines?

**A.** Yes. Service animals must be allowed to accompany their handlers to and through self-service food lines. Similarly, service animals may not be prohibited from communal food preparation areas, such as are commonly found in shelters or dormitories.

### Q11. Can hotels assign designated rooms for guests with service animals, out of consideration for other guests?

**A.** No. A guest with a disability who uses a service animal must be provided the same opportunity to reserve any available room at the hotel as other guests without disabilities. They may not be restricted to "pet-friendly" rooms.

**Q12. Can hotels charge a cleaning fee for guests who have service animals?**

No. Hotels are not permitted to charge guests for cleaning the hair or dander shed by a service animal. However, if a guest's service animal causes damages to a guest room, a hotel is permitted to charge the same fee for damages as charged to other guests.

**Q13. Can people bring more than one service animal into a public place?**

**A.** Generally, yes. Some people with disabilities may use more than one service animal to perform different tasks. For example, a person who has a visual disability and a seizure disorder may use one service animal to assist with way-finding and another that is trained as a seizure alert dog. Other people may need two service animals for the same task, such as a person who needs two dogs to assist him or her with stability when walking. Staff may ask the two permissible questions (See Question 7) about each of the dogs. If both dogs can be accommodated, both should be allowed in. In some circumstances, however, it may not be possible to accommodate more than one service animal. For example, in a crowded small restaurant, only one dog may be able to fit under the table. The only other place for the second dog would be in the aisle, which would block the space between tables. In this case, staff may request that one of the dogs be left outside.

**Q14. Does a hospital have to allow an in-patient with a disability to keep a service animal in his or her room?**

**A.** Generally, yes. Service animals must be allowed in patient rooms and anywhere else in the hospital the public and patients are allowed to go. They cannot be excluded on the grounds that staff can provide the same services.

**Q15. What happens if a patient who uses a service animal is admitted to the hospital and is unable to care for or supervise their animal?**

**A.** If the patient is not able to care for the service animal, the patient can make arrangements for a family member or friend to come to the hospital to provide these services, as it is always preferable that the service animal and its handler not be separated, or to keep the dog during the hospitalization. If the patient is unable to care for the dog and is unable to arrange for someone else to care for the dog, the hospital may place the dog in a boarding facility until the patient is released, or make other appropriate arrangements. However, the hospital must give the patient the opportunity to make arrangements for the dog's care before taking such steps.

**Q16. Must a service animal be allowed to ride in an ambulance with its handler?**

**A.** Generally, yes.  However, if the space in the ambulance is crowded and the dog's presence would interfere with the emergency medical staff's ability to treat the patient, staff should make other arrangements to have the dog transported to the hospital.

**CERTIFICATION AND REGISTRATION**

**Q17. Does the ADA require that service animals be certified as service animals?**

**A.** No.  Covered entities may not require documentation, such as proof that the animal has been certified, trained, or licensed as a service animal, as a condition for entry.

**There are individuals and organizations that sell service animal certification or registration documents online. These documents do not convey any rights under the ADA and the Department of Justice does not recognize them as proof that the dog is a service animal.**

**Q18. My city requires all dogs to be vaccinated.  Does this apply to my service animal?**

**A.** Yes.  Individuals who have service animals are not exempt from local animal control or public health requirements.

**Q19**
**. My city requires all dogs to be registered and licensed.  Does this apply to my service animal?**

**A.** Yes.  Service animals are subject to local dog licensing and registration requirements.

**Q20. My city requires me to register my dog as a service animal. Is this legal under the ADA?**

**A.** No.  Mandatory registration of service animals is not permissible under the ADA. However, as stated above, service animals are subject to the same licensing and vaccination rules that are applied to all dogs.

**Q21. My city / college offers a voluntary registry program for people with disabilities who use service animals and provides a special tag identifying the dogs as service animals. Is this legal under the ADA?**

**A.** Yes.  Colleges and other entities, such as local governments, may offer voluntary registries.  Many communities maintain a voluntary registry that serves a public purpose, for example, to ensure that emergency staff know to look for service animals during an emergency evacuation process.  Some offer a benefit, such as a reduced dog license fee, for individuals who register their service animals.  Registries for purposes like this are permitted under the ADA.  An entity may not, however, require that a dog be registered as

a service animal as a condition of being permitted in public places. This would be a violation of the ADA.

**BREEDS**

**Q22. Can service animals be any breed of dog?**

**A.** Yes. The ADA does not restrict the type of dog breeds that can be service animals.

**Q23. Can individuals with disabilities be refused access to a facility based solely on the breed of their service animal?**

**A.** No. A service animal may not be excluded based on assumptions or stereotypes about the animal's breed or how the animal might behave. However, if a particular service animal behaves in a way that poses a direct threat to the health or safety of others, has a history of such behavior, or is not under the control of the handler, that animal may be excluded. If an animal is excluded for such reasons, staff must still offer their goods or services to the person without the animal present.

**Q24. If a municipality has an ordinance that bans certain dog breeds, does the ban apply to service animals?**

**A.** No. Municipalities that prohibit specific breeds of dogs must make an exception for a service animal of a prohibited breed, unless the dog poses a direct threat to the health or safety of others. Under the "direct threat" provisions of the ADA, local jurisdictions need to determine, on a case-by-case basis, whether a particular service animal can be excluded based on that particular animal's actual behavior or history, but they may not exclude a service animal because of fears or generalizations about how an animal or breed might behave. It is important to note that breed restrictions differ significantly from jurisdiction to jurisdiction. In fact, some jurisdictions have no breed restrictions.

**EXCLUSION OF SERVICE ANIMALS**

**Q25. When can service animals be excluded?**

**A.** The ADA does not require covered entities to modify policies, practices, or procedures if it would "fundamentally alter" the nature of the goods, services, programs, or activities provided to the public. Nor does it overrule legitimate safety requirements. If admitting service animals would fundamentally alter the nature of a service or program, service animals may be prohibited. In addition, if a particular service animal is out of control and the handler does not take effective action to control it, or if it is not housebroken, that animal may be excluded.

**Q26. When might a service dog's presence fundamentally alter the nature of a service or program provided to the public?**

**A.** In most settings, the presence of a service animal will not result in a fundamental alteration. However, there are some exceptions. For example, at a boarding school, service animals could be restricted from a specific area of a dormitory reserved specifically for students with allergies to dog dander. At a zoo, service animals can be restricted from areas where the animals on display are the natural prey or natural predators of dogs, where the presence of a dog would be disruptive, causing the displayed animals to behave aggressively or become agitated. They cannot be restricted from other areas of the zoo.

**Q27. What does under control mean? Do service animals have to be on a leash? Do they have to be quiet and not bark?**

**A.** The ADA requires that service animals be under the control of the handler at all times. In most instances, the handler will be the individual with a disability or a third party who accompanies the individual with a disability. In the school (K-12) context and in similar settings, the school or similar entity may need to provide some assistance to enable a particular student to handle his or her service animal. The service animal must be harnessed, leashed, or tethered while in public places unless these devices interfere with the service animal's work or the person's disability prevents use of these devices. In that case, the person must use voice, signal, or other effective means to maintain control of the animal. For example, a person who uses a wheelchair may use a long, retractable leash to allow her service animal to pick up or retrieve items. She may not allow the dog to wander away from her and must maintain control of the dog, even if it is retrieving an item at a distance from her. Or, a returning veteran who has PTSD and has great difficulty entering unfamiliar spaces may have a dog that is trained to enter a space, check to see that no threats are there, and come back and signal that it is safe to enter. The dog must be off leash to do its job, but may be leashed at other times. Under control also means that a service animal should not be allowed to bark repeatedly in a lecture hall, theater, library, or other quiet place. However, if a dog barks just once, or barks because someone has provoked it, this would not mean that the dog is out of control.

**Q28. What can my staff do when a service animal is being disruptive?**

**A.** If a service animal is out of control and the handler does not take effective action to control it, staff may request that the animal be removed from the premises.

**Q29. Are hotel guests allowed to leave their service animals in their hotel room when they leave the hotel?**

**A.** No, the dog must be under the handler's control at all times.

**Q30. What happens if a person thinks a covered entity's staff has discriminated against him or her?**

**A**. Individuals who believe that they have been illegally denied access or service because they use service animals may file a complaint with the U.S. Department of Justice. Individuals also have the right to file a private lawsuit in Federal court charging the entity with discrimination under the ADA.

**MISCELLANEOUS**

**Q31. Are stores required to allow service animals to be placed in a shopping cart?**

**A**. Generally, the dog must stay on the floor, or the person must carry the dog.  For example, if a person with diabetes has a glucose alert dog, he may carry the dog in a chest pack so it can be close to his face to allow the dog to smell his breath to alert him of a change in glucose levels.

**Q32. Are restaurants, bars, and other places that serve food or drink required to allow service animals to be seated on chairs or allow the animal to be fed at the table?**

**A**. No.  Seating, food, and drink are provided for customer use only.  The ADA gives a person with a disability the right to be accompanied by his or her service animal, but covered entities are not required to allow an animal to sit or be fed at the table.

**Q33. Are gyms, fitness centers, hotels, or municipalities that have swimming pools required to allow a service animal in the pool with its handler?**

**A**. No.  The ADA does not override public health rules that prohibit dogs in swimming pools.  However, service animals must be allowed on the pool deck and in other areas where the public is allowed to go.

**Q34. Are churches, temples, synagogues, mosques, and other places of worship required to allow individuals to bring their service animals into the facility?**

**A**. No.  Religious institutions and organizations are specifically exempt from the ADA. However, there may be State laws that apply to religious organizations.

**Q35. Do apartments, mobile home parks, and other residential properties have to comply with the ADA?**

**A**. The ADA applies to housing programs administered by state and local governments, such as public housing authorities, and by places of public accommodation, such as public and private universities.  In addition, the Fair Housing Act applies to virtually all types of housing, both public and privately-owned, including housing covered by the ADA.  Under the Fair Housing Act, housing providers are obligated to permit, as a reasonable accommodation, the use of animals that work, provide assistance, or perform tasks that benefit persons with a disabilities, or provide emotional support to alleviate a symptom or

effect of a disability. For information about these Fair Housing Act requirements see HUD's <u>Notice on Service Animals and Assistance Animals for People with Disabilities in Housing and HUD-funded Programs</u>.

**Q36. Do Federal agencies, such as the U.S. Department of Veterans Affairs, have to comply with the ADA?**

**A.** No. Section 504 of the Rehabilitation Act of 1973 is the Federal law that protects the rights of people with disabilities to participate in Federal programs and services. For information or to file a complaint, contact the agency's equal opportunity office.

**Q37. Do commercial airlines have to comply with the ADA?**

**A.** No. The Air Carrier Access Act is the Federal law that protects the rights of people with disabilities in air travel. For information or to file a complaint, contact the U.S. Department of Transportation, Aviation Consumer Protection Division, at 202-366-2220.

**RESOURCES**

For more information about the ADA, please visit our website or call our toll-free number.

### ADA WEBSITE

### www.ADA.gov

To receive e-mail notifications when new ADA information is available, visit the ADA Website's home page and click the link near the bottom of the right-hand column.

### ADA INFORMATION LINE

### 800-514-0301 (Voice) and 800-514-0383 (TTY)

M-W, F 9:30 a.m. – 5:30 p.m. , Th 12:30 p.m. – 5:30 p.m. (Eastern Time) to speak with an ADA Specialist. Calls are confidential.

For people with disabilities, this publication is available in alternate formats.

Duplication of this document is encouraged.
July 2015

---

### ADA Home Page

July 20, 2015