MELISSA J. HEALY, OSB No. 102176
melissa.healy@stoel.com
D. RYAN METS, OSB No. 234680
ryan.mets@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  503.224.3380
Facsimile:  503.220.2480

*Attorneys for Plaintiff Joseph
Luna*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JOSEPH LUNA,<br><br>        Plaintiff,<br><br>   v.<br><br>FRANK KAIM, individually, LOUIS LAMP, GET OUT THE FLOAT LLC, RAINFURREST ANTHROPOMORPHICS INTERNATIONAL, CITY OF SEASIDE, and JOHN DOES I-X, individually,<br><br>        Defendants. | Case No.:  3:26-cv-00398-SI<br><br>**SECOND AMENDED COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Joseph Luna, by and through his counsel, alleges as follows:

## I.  INTRODUCTION

1.      This is an action for Declaratory and Injunctive Relief, Monetary Damages,

Attorney Fees and Costs, and Punitive Damages. Mr. Luna alleges that public and private actors

conspired to wrongfully remove him from the Seaside Civil & Convention Center during the Get

Page 1 – SECOND AMENDED COMPLAINT
153303314.2 0085398-00001

Out The Float convention on account of him being a person who asserted his right to be accompanied by his trained and certified service animal. Since that discriminatory and retaliatory exclusion, affiliates of the Get Out The Float convention have interfered with Mr. Luna's ability to attend, volunteer, generate income from, and enjoy other conventions by "blacklisting" him. All this intentional, systematic, and discriminatory conduct was motivated by hostility and personal animus resulting from Mr. Luna asserting his right to be accompanied by his service animal, Scout.

## II.  PARTIES

2.      Plaintiff Joseph Luna ("Mr. Luna") is, and at all relevant times was, a resident of Hillsboro, Oregon. Mr. Luna also goes by the aliases "Kebayena," "Keba," and "Kebasha."

3.      Defendant City of Seaside, Oregon owns and operates the Seaside Civic and Convention Center ("SCCC"), which is a place of public accommodation located at 415 First Avenue, Seaside, Oregon 97138.

4.      Defendant Frank Kaim ("Kaim") is an individual who, on information and belief, is and was at all relevant times employed by the City of Seaside at the SCCC.

5.      Defendant Get Out The Float LLC is an Oregon limited liability company which, on information and belief, organizes and hosts the Get Out The Float convention ("GOTF").

6.      Defendant Louis Lamp ("Lamp") is an individual who, on information and belief, is and was at all relevant times the Manager and event coordinator of all of Get Out The Float LLC's events, including GOTF. Lamp also goes by the alias "Baphnedia."

7.      Defendant Rainfurrest Anthropomorphics International ("Rain") is a Washington 501(c)(3) designated non-profit organization which, on information and belief, organizes and hosts the annual Furlandia convention in Oregon.

Page 2 – SECOND AMENDED COMPLAINT
153303314.2 0085398-00001

8.      Defendants John Does are individuals whose identities are currently unknown but who, on information and belief, are or were at all relevant times SCCC employees, GOTF affiliates, or affiliates of other Oregon conventions who discriminated or retaliated against Mr. Luna, or aided and abetted in the discrimination or retaliation against Mr. Luna, based, at least in part, on his disabilities or assertion of his right to be accompanied by his service animal.

### III.  JURISDICTION & VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action arises under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.

10.     Mr. Luna requests this Court invoke its supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with respect to the causes of action based on Oregon state law because the state claims arise from the same nucleus of operative facts as the federal claims.

11.     Venue is in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because the claim arose in this Judicial District.

### IV.  FACTS

12.     Mr. Luna is an individual with a disability requiring the aid of a service animal.

13.     For over ten years, Mr. Luna has suffered and continues to suffer from diabetes, diabetic neuropathy, and diabetic retinopathy; conditions that cause him chronic pain, anxiety, impaired vision, and impaired mobility.

14.     Mr. Luna uses a trained service animal (dog) named Scout to help perform his daily functions and mitigate the effects of his disabilities.

15.     Scout is a certified service animal that is trained to assist Mr. Luna with a number of daily activities, including:

(1) notifying Mr. Luna that he has elevated glucose levels;

(2) notifying Mr. Luna when someone is approaching his visually impaired side;

(3) notifying Mr. Luna if his blood sugar levels are too low or too high;

(4) helping him safely navigate public spaces, particularly in crowded areas.

16.     Scout is also trained to perform tasks that help Mr. Luna manage chronic pain and anxiety, including deep pressure therapy ("DPT").

17.     At times, Mr. Luna's conditions cause nerve and muscle pain which interfere with his ability to hold a leash.

**Events Leading to Plaintiff's Exclusion on February 6, 2025**

18.     On February 6, 2025, Mr. Luna and Scout arrived at the SCCC to attend the GOTF convention.

19.     Mr. Luna had signed up to volunteer at the GOTF convention, and as a result of his history of volunteering, GOTF provided him with certain benefits including free lodging at a nearby hotel.

20.     Around noon, Mr. Luna ate lunch at a table inside the SCCC. After lunch, Mr. Luna saw a vendor unloading a trunk using a side door and decided to observe what the vendor was unloading.

21.     At approximately 3:30 p.m., after the vendor finished unloading, Mr. Luna and Scout went to locate Mr. Luna's roommate.

22.     At approximately 3:34 p.m., Mr. Luna walked into the SCCC hallway while still searching for his roommate and began looking at vendor goods as he passed by.

23.     While in the hallway, a vendor commented that Scout looked like the vendor's dog. Mr. Luna discussed that Scout was a purebred blue heeler with noticeable traits in his ears and paws.

Page 4 – SECOND AMENDED COMPLAINT

24.     Mr. Luna then stepped back into the middle of the hallway and called Scout to come closer.

25.     Scout, while standing near Mr. Luna, noticed a person dressed in a dragon costume approaching Mr. Luna from his visually impaired side. Scout barked a single bark, which lasted three to four seconds. After that one bark, Scout sat down next to Mr. Luna.

26.     Moments later, Mr. Luna saw his roommate down the hallway and went to speak with him.

27.     Approximately fifteen minutes later, Mr. Luna was approached by two SCCC employees: Kaim and John Doe I.

28.     Kaim told Mr. Luna, "you need to remove your pet from the premises."

29.     John Doe I then threatened that if Mr. Luna did not remove Scout from the SCCC, they would "get police to trespass" him.

30.     In response to Kaim's comment inappropriately labeling Scout as a "pet," Mr. Luna clarified that "he's a service dog."

31.     Kaim replied, "I've been a member of the ADA for seven years and a service dog can't bark."

32.     Mr. Luna pulled out his phone to go to the ADA website, but before he could find the relevant information online to refute Kaim's statements, John Doe I said to Mr. Luna "the event coordinator wants you removed," and quickly left the area. Kaim remained with Mr. Luna.

33.     Shortly after John Doe I left to contact Lamp, Lamp entered the main stage/bounce house room and escorted Mr. Luna and Scout out of the SCCC.

34.     While Lamp escorted Mr. Luna out of the SCCC, Mr. Luna was focused on pulling up ADA information on his phone, but recalls Lamp stating, "go to the hotel room and

Page 5 – SECOND AMENDED COMPLAINT
153303314.2 0085398-00001

just relax, don't worry about your volunteer shift."

**Police Contact, Attempted Return Without Service Animal, and Badge Forfeiture**

35.    After being escorted out, Mr. Luna went to his vehicle, reviewed information from the ADA website relating to what occurred and then contacted the Seaside Police Department's non-emergency line.

36.    Approximately ten minutes later, an officer called back and told Mr. Luna he was not "trespassed," but that the event coordinator wanted him removed from the SCCC.

37.    Following that call, Mr. Luna left Scout in his vehicle and returned to the SCCC. Mr. Luna went to a GOTF volunteer at the registration table and asked to speak with Lamp about his belief that his rights were being violated.

38.    The registration volunteer communicated with Lamp via radio, and then said to Mr. Luna: "Why are you back in here, you've been trespassed by the convention center and you also need to forfeit your badge. If you have a problem you need to talk to the convention center for your trespass."

39.    Mr. Luna forfeited his badge to the GOTF volunteer and left the SCCC.

40.    After his second removal, Mr. Luna called the SCCC general manager, who also indicated that the "event coordinator" was the one who instigated SCCC staff to approach Mr. Luna about his removal.

**Communications and Removal from Hotel Accommodations**

41.    At approximately 4:17 p.m., Mr. Luna sent Lamp a Telegram[1] message stating: "Sorry for coming back in but I was under the assumption I had to just remove Scout as they

---

[1] Telegram is an instant messaging app which provides similar services to those offered by WhatsApp or Slack.

only said for me to remove Scout (my service dog)."

42.     At approximately 6:06 p.m. the same day, Lamp responded to Mr. Luna with a Telegram message stating: "your reservation has been changed, you will check out from the hotel tomorrow morning."

43.     After Mr. Luna and Scout engaged in DPT to counteract an oncoming panic attack caused by his traumatic removal and exclusion from GOTF, Mr. Luna then left the hotel and did not return.

44.     Around 8:00 pm on his drive home in the dark and heavily forested roads between Seaside and Hillsboro, Mr. Luna struck a deer with his car, which caused significant damage to his car.

**Post-GOTF Explanations for Removal and Ban Letter**

45.     Lamp later changed the asserted reason for Mr. Luna's removal from the single "bark" to "barking and growling all day," then to "aggressiveness, barking and growling all day, and one complaint stating they have a fear of dogs."

46.     Mr. Luna later received a letter dated February 23, 2025, from Lamp on behalf of Get Out The Float LLC (the "Letter"), informing Mr. Luna that he had been "permanently banned" from both attending and volunteering at GOTF.

47.     The Letter explained that Mr. Luna was "permanently banned" because he "was removed from the premises on Thursday, February 6, 2025 by the Seaside Civic & Convention Center staff and the convention chair," and that after removal he "returned later in the day to dispute [his] removal with GOTF registration volunteers."

48.     Mr. Luna did not receive the Letter until sometime in March 2025.

**Rain's Discrimination and Retaliation**

49.     A few weeks later, Mr. Luna volunteered to assist at the 2025 Furlandia convention in Oregon, which is organized and hosted by Defendant Rain. On information and belief, individuals organizing or communicating on behalf of the Furlandia convention are employees, officers, agent, and/or representatives of Defendant Rain.

50.     Similar to volunteers at GOTF, volunteers at Furlandia receive various benefits beyond those received by regular attendees, depending on the amount of hours the volunteer works.

51.     For example, Furlandia volunteers can receive (1) free admission to the convention, (2) access to the Furlandia staff lounge; (3) a tee-shirt; (4) a "Mystery Gift"; and more.

52.     Rain instructs volunteers not to pay the admission fee when registering for the Furlandia convention because the expectation for volunteers is that they will work at least twelve hours over the course of the three-day convention, which entitles them to free admission, a tee-shirt, a mystery gift, and staff lounge access.

53.     Shortly after enrolling to volunteer at the 2025 Furlandia convention, Mr. Luna was removed from the volunteer listserv (on which he had previously been included) without explanation, and as a result, he did not attend the 2025 Furlandia convention.

54.     Later, Mr. Luna enrolled to volunteer at the 2026 Furlandia convention.

55.     During the summer of 2025, Mr. Luna attended a Rain barbeque at which he sought to confirm his ability to volunteer at the 2026 Furlandia convention, given what happened the previous year. Mr. Luna spoke with the Furlandia chairman at the barbeque and confirmed that he was registered and would be able to participate as a volunteer at the 2026 Furlandia

153303314.2 0085398-00001

convention.

56.    Later, in or around January 2026, the Furlandia "HR lead" and "volunteering co-coordinator" ("Matt" or "Mutterwolf") contacted Mr. Luna informing him that he had a "volunteering ban for working Furlandia related to the issues" at GOTF.

57.    Mutterwolf informed Mr. Luna that, despite its initial decision to allow him to volunteer, "[s]ince then, Furlandia has some Get Out The Float staff joining our staff and the ruling has changed[.]"

58.    At or around that same time, the Furlandia chairman, to whom Mr. Luna spoke at the barbeque the previous summer, emailed Mr. Luna citing "the situation that happened at another convention" as the reason for his exclusion from volunteering.

59.    Approximately a week later, Mr. Luna emailed the Furlandia chairman explaining how he felt that he was wrongfully and illegally removed from GOTF based on a personal grudge or vendetta against him and Scout.

60.    In that email, Mr. Luna explained the events at GOTF and requested that Furlandia reconsider or further explain its decision to ban Mr. Luna from volunteering. Mr. Luna received no response.

61.    On or around April 24, 2026, Mr. Luna emailed Mutterwolf again to inquire about a response to his request for reconsideration or further explanation.

62.    Mutterwolf responded the next day informing Mr. Luna that he could attend Furlandia, but that the determination regarding his ability to volunteer in 2026 was "unlikely to be changed," and suggested trying to address the issue again after the 2026 Furlandia convention.

63.    Mr. Luna did not attend the 2026 Furlandia convention due to the embarrassment and humiliation he felt as a result of being blacklisted and excluded from volunteering.

153303314.2 0085398-00001

**Continuing Discrimination and Retaliation**

64. Similar to the discrimination and retaliation that Mr. Luna experienced associated with Furlandia, Defendants' conduct has interfered with his ability to attend and/or volunteer at other conventions since then.

65. Specifically, when Mr. Luna attended the 2026 Portland Roadsters Show, another local convention, he was told that he had been identified as someone who causes problems and was required to be accompanied by event chaperones.

66. Mr. Luna was prevented from attending the 2026 Pacific Northwest Reptile & Exotic Animal Show in Hillsboro, Oregon, for similar reasons.

67. Mr. Luna has also been prevented from pre-registering to volunteer or attend various other conventions in Washington, Nevada, and Utah, which ultimately prevented him from attending.

68. On information and belief, the continued discrimination and retaliation against Mr. Luna, interfering with his ability to attend and enjoy these and other various events, is the result of Defendants marking or identifying him on an internal list or database, or otherwise misrepresenting to other conventions and expos, that Mr. Luna and Scout are aggressive and/or dangerous, cause problems, and require monitoring.

69. This continued discrimination and retaliation has caused Mr. Luna to lose income. Specifically, Mr. Luna often maintains a booth at conventions, expos, and events that he attends, from which he generates income selling various goods including jewelry, costumes, reptiles, and more.

70. Specifically, at "furry" conventions like GOTF and Furlandia, Mr. Luna has made as much as $6,000 at a single event from selling costumes (called "fursuits") and associated

parts. Mr. Luna has been prevented from pursuing that income as a result of Defendants blacklisting him from those events.

71. Mr. Luna intended to maintain a booth at multiple events since GOTF 2025, including GOTF 2026 (Oregon), Biggest Little Furr Con (Nevada), Las Vegas Fur Con (Nevada), and Anthro Weekend Utah (Utah), but was prevented from doing so due the incident at GOTF 2025.

72. At reptile expos, like the one he was excluded from in Hillsboro, Oregon, earlier this year, Mr. Luna has made as much as $8,000 at a single event from selling reptiles and bugs. Mr. Luna has been prevented from pursuing that income as a result of Defendants blacklisting him from those events.

73. Mr. Luna previously bred reptiles and bugs that he would sell at various events. Mr. Luna has been forced to forfeit all of his reptiles and bugs, and therefore can no longer breed them, given his exclusion from the various conventions, expos, and events at which he typically sells them.

74. At Renaissance fairs, Mr. Luna has made as much as $4,000 at a single event from selling art, jewelry, and other related accessories. Mr. Luna has been prevented from pursuing that income as a result of Defendants blacklisting him from those events.

75. This continued discrimination and retaliation has also caused Mr. Luna to suffer repeated panic attacks, anxiety, and harm to his reputation, respect, goodwill, and confidence in which he is held in the community.

## V.  CAUSES OF ACTION

### COUNT 1 – ADA DISCRIMINATION – TITLE III (42 U.S.C. § 12182) – GET OUT THE FLOAT LLC, LOUIS LAMP

76. Mr. Luna incorporates by reference all relevant allegations set forth herein.

77. Mr. Luna is a qualified individual with a disability.

78. Mr. Luna's service animal, Scout, is a trained service dog.

79. Get Out The Float LLC is a place of public accommodation, and contracted to offer goods and services to the public at the Seaside Civic & Convention Center, which is a place of public accommodation owned and operated by the City of Seaside.

80. At all relevant times, Get Out The Float LLC, through its Manager and agent Louis Lamp, was aware of Mr. Luna's disabilities.

81. Get Out The Float LLC, through its Manager and agent Louis Lamp, discriminated against Mr. Luna for being disabled and for being accompanied by a service animal in violation of 42 U.S.C. § 12182 and its accompanying regulations.

82. Mr. Luna has been permanently banned from attending or volunteering at GOTF.

83. Mr. Luna is entitled to injunctive relief, including, but not limited to, an order prohibiting future discrimination and retaliation, and mandating full compliance with Title III of the ADA.

84. Mr. Luna is entitled to a declaration that Get Out The Float LLC, and its Manager and agent Louis Lamp, violated Title III of the ADA.

85. Pursuant to 42 U.S.C. § 12205, Mr. Luna is entitled to an award of attorney's fees, expert witness fees, and costs incurred.

**COUNT 2 – ADA RETALIATION – TITLE III (42 U.S.C. § 12203) – GET OUT THE FLOAT LLC, RAINFURREST ANTHROPOMORPHICS INTERNATIONAL**

86. Mr. Luna incorporates by reference all relevant allegations set forth herein.

87. Mr. Luna was initially instructed by SCCC employees Frank Kaim and John Doe I that he only needed to remove his service animal, Scout.

88. Mr. Luna objected to that request and asserted his right to be accompanied by

Scout because he was "a service dog." SCCC employees Frank Kaim and John Doe I then threatened to call the police and contacted Lamp to remove Mr. Luna from the SCCC.

89.     Mr. Luna then returned to GOTF to continue vigorously asserting his right to be accompanied by his service animal, Scout, under the ADA.

90.     Mr. Luna was again excluded from GOTF and forced to forfeit his volunteer credentials.

91.     Mr. Luna was later informed that his hotel accommodations had been changed and that he would be required to leave the hotel earlier than he otherwise intended to.

92.     Subsequently, Mr. Luna received a letter informing him that he had been permanently banned from attending or volunteering at future GOTF conventions, in part, because "[a]fter [his] removal from the convention center, [he] returned later in the day to dispute [his] removal with GOTF registration volunteers."

93.     Months later, after confirming Mr. Luna's ability to volunteer at the 2026 Furlandia convention, the Furlandia volunteer coordinator informed Mr. Luna he was banned from volunteering.

94.     The Furlandia volunteer coordinator explained that since the initial determination about Mr. Luna volunteering, "Furlandia ha[d] some Get Out The Float staff joining [its] staff and the ruling has changed[.]"

95.     On information and belief, but-for Mr. Luna vigorously asserting his rights under the ADA at GOTF, he would not have been banned from volunteering at Furlandia.

96.     Mr. Luna did not attend the 2025 or 2026 Furlandia convention in part because he felt humiliated and embarrassed by the treatment he received.

97.     This continued discrimination has caused Mr. Luna to suffer repeated panic

153303314.2 0085398-00001

attacks, anxiety, and harm to his reputation, respect, goodwill, and confidence in which he is held in the community.

98.     Mr. Luna is entitled to injunctive relief, including, but not limited to, an order prohibiting future discrimination and retaliation, and mandating full compliance with Title III of the ADA.

99.     Mr. Luna is entitled to a declaration that Get Out The Float LLC, and its Manager and agent Louis Lamp, violated Title III of the ADA.

100.    Pursuant to 42 U.S.C. § 12205, Mr. Luna is entitled to an award of attorney's fees, expert witness fees, and costs incurred.

## COUNT 3 – ADA DISCRIMINATION – TITLE II (42 U.S.C. § 12132) – CITY OF SEASIDE

101.    Mr. Luna incorporates by reference all relevant allegations set forth herein.

102.    Mr. Luna is a qualified individual with a disability.

103.    Mr. Luna's service animal, Scout, is a trained service dog.

104.    Seaside Civic & Convention Center is a place of public accommodation owned and operated by the City of Seaside.

105.    At all relevant times, the City of Seaside, through its employees Frank Kaim and John Doe I, was aware of Mr. Luna's disabilities.

106.    The City of Seaside, through its employees Frank Kaim and John Doe I, discriminated against Mr. Luna for being disabled and for being accompanied by a service animal in violation of 42 U.S.C. § 12132 and its accompanying regulations.

107.    Mr. Luna is entitled to injunctive relief, including, but not limited to, an order mandating full compliance with Title II of the ADA.

108.    Mr. Luna is entitled to a declaration that the City of Seaside, through its

153303314.2 0085398-00001

employees Frank Kaim and John Doe I, violated Title II of the ADA.

109.    Pursuant to 42 U.S.C. § 12205, Mr. Luna is entitled to an award of attorney's fees, expert witness fees, and costs incurred.

### COUNT 4 – ADA RETALIATION – TITLE II (42 U.S.C. § 12203) – CITY OF SEASIDE

110.    Mr. Luna incorporates by reference all relevant allegations set forth herein.

111.    Mr. Luna was initially instructed by SCCC employees Frank Kaim and John Doe I that he only needed to remove his service animal, Scout.

112.    SCCC employees John Doe I then threatened to call the police and contacted Lamp to remove Mr. Luna from the SCCC.

113.    Mr. Luna objected to that instruction and asserted his right to be accompanied by Scout because he was "a service dog."

114.    Mr. Luna then returned to GOTF to continue vigorously asserting his right to be accompanied by his service animal, Scout, under the ADA.

115.    Mr. Luna was then again excluded from GOTF and forced to forfeit his volunteer credentials.

116.    Mr. Luna was later informed that his hotel accommodations had been changed and that he would be required to leave the hotel earlier than he otherwise intended to.

117.    Subsequently, Mr. Luna received a letter stating that he "was removed from the premises on Thursday, February 6, 2025 by the Seaside Civic & Convention Center staff" and had been permanently banned from attending or volunteering at future GOTF conventions, in part, because "[a]fter [his] removal from the convention center, [he] returned later in the day to dispute [his] removal with GOTF registration volunteers."

118.    Months later, after confirming Mr. Luna's ability to volunteer at the 2026

Page 15 – SECOND AMENDED COMPLAINT
153303314.2 0085398-00001

Furlandia convention, the Furlandia volunteer coordinator informed Mr. Luna he was banned from volunteering.

119.    The Furlandia volunteer coordinator explained that since the initial determination about Mr. Luna volunteering, "Furlandia ha[d] some Get Out The Float staff joining [its] staff and the ruling has changed[.]"

120.    On information and belief, but-for Mr. Luna vigorously asserting his rights under the ADA at GOTF, he would not have been banned from volunteering at Furlandia.

121.    Mr. Luna did not attend the 2025 or 2026 Furlandia convention in part because he felt humiliated and embarrassed by the treatment he received.

122.    This continued discrimination has caused Mr. Luna to suffer repeated panic attacks, anxiety, and harm to his reputation, respect, goodwill, and confidence in which he is held in the community.

123.    Pursuant to 42 U.S.C. § 12205, Mr. Luna is entitled to an award of attorney's fees, expert witness fees, and costs incurred.

### COUNT 5 – DISCRIMINATION (ORS § 659A.142 and ORS § 659A.143) – GET OUT THE FLOAT LLC, LOUIS LAMP

124.    Mr. Luna incorporates by reference all relevant allegations set forth herein.

125.    Mr. Luna is a qualified individual with a disability.

126.    Mr. Luna's service animal, Scout, is a trained service dog.

127.    Get Out The Float LLC is a place of public accommodation.

128.    At all relevant times, Get Out The Float LLC, through its Manager and agent Louis Lamp, was aware of Mr. Luna's disabilities.

129.    Get Out The Float LLC, through its Manager and agent Louis Lamp, discriminated against Mr. Luna for being disabled and for being accompanied by a service

Page 16 – SECOND AMENDED COMPLAINT
153303314.2 0085398-00001

animal in violation of ORS § 659A.142 and ORS § 659A.143.

130.    Mr. Luna is entitled to injunctive relief, including, but not limited to, an order prohibiting any further discrimination or retaliation, and mandating full compliance with ORS § 659A.142 and ORS § 659A.143.

131.    Mr. Luna is entitled to a declaration that Get Out The Float LLC, and its Manager and agent Louis Lamp, violated ORS § 659A.142 and ORS § 659A.143.

132.    Pursuant to ORS § 659A.885, Mr. Luna is entitled to economic and non-economic damages as alleged above, attorney's fees, and punitive damages in an amount to be specified at trial.

### COUNT 6 – DISCRIMINATION (ORS § 659A.142 and ORS § 659A.143) – CITY OF SEASIDE

133.    Mr. Luna incorporates by reference all relevant allegations set forth herein.

134.    Mr. Luna is a qualified individual with a disability.

135.    Mr. Luna's service animal, Scout, is a trained service dog.

136.    The Seaside Civic & Convention Center is a place of public accommodation owned and operated by the City of Seaside.

137.    At all relevant times, the City of Seaside, through its employees and agents Frank Kaim and John Doe I, was aware of Mr. Luna's disabilities.

138.    The City of Seaside, through its employees and agents Frank Kaim and John Doe I, discriminated against Mr. Luna for being disabled and for being accompanied by a service animal in violation of ORS § 659A.142 and ORS § 659A.143.

139.    Mr. Luna is entitled to injunctive relief, including, but not limited to, an order prohibiting any further discrimination or retaliation, and mandating full compliance with ORS § 659A.142 and ORS § 659A.143.

153303314.2 0085398-00001

140.    Mr. Luna is entitled to a declaration that the City of Seaside, and its employees Frank Kaim and John Doe I, violated ORS § 659A.142 and ORS § 659A.143.

141.    Pursuant to ORS § 659A.885, Mr. Luna is entitled to economic and non-economic damages as alleged above, and attorney fees in an amount to be specified at trial.

## COUNT 7 – CIVIL CONSPIRACY – GET OUT THE FLOAT LLC, CITY OF SEASIDE, LOUIS LAMP, FRANK KAIM, JOHN DOE I

142.    Mr. Luna incorporates by reference all relevant allegations set forth herein.

143.    Agents and/or representatives of the SCCC and Get Out The Float LLC conspired to unlawfully remove Mr. Luna from GOTF and the SCCC in violation of his rights.

144.    Specifically, SCCC employee John Doe I stated that the "event coordinator" wanted Mr. Luna and Scout removed and soon thereafter, contacted Lamp who immediately removed Mr. Luna from GOTF and the SCCC.

145.    After his first removal, Mr. Luna contacted the Seaside Police Department, which further confirmed that the GOTF "event coordinator" sought his removal, which was initiated by SCCC employees.

146.    After his second removal, Mr. Luna called the SCCC general manager, who also indicated that the "event coordinator" sought his removal, which was initiated by SCCC employees.

147.    Months later, Mr. Luna received the Letter explaining that Mr. Luna was "permanently banned" and confirming that he "was removed from the premises on Thursday, February 6, 2025 by" _**both**_ "the Seaside Civic & Convention Center staff and the convention chair."

148.    Both of Mr. Luna's removals from GOTF and the SCCC violated his right to be free from discrimination on the basis of his disabilities under state and federal law, and were

Page 18 – SECOND AMENDED COMPLAINT
153303314.2 0085398-00001

therefore unlawful.

149.    On information and belief, the continued discrimination and retaliation against Mr. Luna, interfering with his ability to attend and enjoy these and other various events, is the result of Defendants marking or identifying him and Scout on an internal list or database, or otherwise misrepresenting to other conventions and expos, that Mr. Luna and Scout are aggressive and/or dangerous, cause problems, and require monitoring.

150.    This continued discrimination and retaliation has caused Mr. Luna to lose assets and income as a result of his inability to maintain booths and sell goods at the various conventions, expos, and events, as further described above.

151.    This continued discrimination has also caused Mr. Luna to suffer repeated panic attacks, anxiety, and harm to his reputation, respect, goodwill, and confidence in which he is held in the community.

### COUNT 8 – INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE – GET OUT THE FLOAT LLC, LOUIS LAMP

152.    Mr. Luna incorporates by reference all relevant allegations set forth herein.

153.    Mr. Luna has obtained and sought to obtain various economic advantages as a result of attending and volunteering at GOTF, Furlandia, and other events, including but not limited to: income from the sale of goods, free admission to various events, gifts, tee-shirts, hotel accommodations, food and beverages, access to staff lounges, and more.

154.    As further described above, Get Out The Float LLC, through its Manager and agent Louis Lamp, intentionally interfered with those current and prospective economic advantages through improper means and for the improper purpose of excluding Mr. Luna from those various events because of his personal animus and vendetta against Mr. Luna for asserting his right to be accompanied by his service animal, Scout.

155.    On information and belief, Lamp has marked or identified Mr. Luna and Scout on an internal list or database, or otherwise misrepresented to other conventions and expos that Mr. Luna and Scout are aggressive and/or dangerous, cause problems, and require monitoring.

156.    On information and belief, the continued discrimination and retaliation against Mr. Luna has interfered with his ability to attend and enjoy various events including, but not limited to, Furlandia, the Portland Roadsters Show, 2026 Pacific Northwest Reptile & Exotic Animal Show, and more.

157.    This continued discrimination and retaliation has caused Mr. Luna to lose assets and income as a result of his inability to maintain booths and sell goods at the various conventions, expos, and events, as further described above.

158.    This continued discrimination has also caused Mr. Luna to suffer repeated panic attacks, anxiety, and harm to his reputation, respect, goodwill, and confidence in which he is held in the community.

### COUNT 9 – DEFAMATION – LOUIS LAMP

159.    Mr. Luna incorporates by reference all relevant allegations set forth herein.

160.    Since the 2025 GOTF, Lamp has stated to one or more third parties that Mr. Luna is not entitled to be accompanied by Scout under the ADA because Scout is "aggressive."

161.    Lamp filed a police report against Mr. Luna based on the events at the 2025 GOTF described herein.

162.    On information and belief, Lamp marked or identified Mr. Luna and Scout on an internal list or database, or otherwise misrepresented to other conventions and expos that Mr. Luna and Scout are aggressive and/or dangerous, cause problems, and require monitoring.

163.    Lamp's misrepresentations have caused other convention coordinators, staff, and

Page 20 – SECOND AMENDED COMPLAINT
153303314.2 0085398-00001

volunteers to hold unpleasant feelings and opinions against Mr. Luna and Scout, which has interfered with their ability to attend and enjoy various conventions, expos, and events.

164.    This continued discrimination and retaliation has caused Mr. Luna to lose assets and income as a result of his inability to maintain booths and sell goods at the various conventions, expos, and events, as further described above.

165.    Lamp's continued misrepresentations to other conventions, expos, and events in the community have caused Mr. Luna to suffer repeated panic attacks, anxiety, and harm to his reputation, respect, goodwill, and confidence in which he is held in the community.

## VI.  PRAYER

166.    Mr. Luna demands a jury trial.

167.    Mr. Luna prays for judgment against Defendants as follows:

1.    A declaration that Defendants violated his right to be free from discrimination on the basis of his disabilities;

2.    Injunctive and other equitable relief as the Court deems appropriate, including, but not limited to, an order prohibiting further discrimination or retaliation, and an order mandating full compliance with Title II and Title III of the ADA, ORS § 659A.142, and ORS § 659A.143;

3.    An award of non-economic damages in an amount to be proven at trial;

4.    An award of economic damages for losses associated with lost income, lost assets, and out-of-pocket expenses incurred in an amount to be determined at trial;

5.    Punitive damages in an amount to be determined at trial;

6.    Mr. Luna's attorneys' fees;

7.    Mr. Luna's expert witness fees, costs, and disbursements incurred herein;

and

8.    Any other relief as the Court may deem just and equitable.

DATED:  June 24, 2026                          STOEL RIVES LLP


                                               /s/ D. Ryan Mets
                                               MELISSA J. HEALY, OSB No. 102176
                                               melissa.healy@stoel.com
                                               D. RYAN METS, OSB No. 234680
                                               ryan.mets@stoel.com

                                               *Attorneys for Plaintiff Joseph Luna*