**Will Riddell, OSB No. 195635**
1491 Commercial Street SE
Salem, Oregon 97301
Phone: (503) 269-8961
Email: will@riddell.lawyer
Attorney for Defendants Louis Lamp
and Get out the Float LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

| | |
|---|---|
| **JOSEPH LUNA**, | **Case No.** 3:26-cv-00398-SI |
| Plaintiff, | |
| v. | **DEFENDANTS LOUIS LAMP AND GET OUT THE FLOAT LLC'S SPECIAL MOTION TO STRIKE** |
| **FRANK KAIM**, individually; **LOUIS LAMP**, individually; **GET OUT THE FLOAT LLC**; **RAINFURREST ANTHROPOMORPHICS INTERNATIONAL**, the **CITY OF SEASIDE**, and **JOHN DOES I-X,** individually, | Oral argument requested |
| Defendants. | |

Page 1 – **Defendants Louis Lamp and Get out
the Float LLC's Special Motion to Strike**

# MOTION

Defendants Louis Lamp and Get out the Float LLC hereby move for an order under ORS § 31.150 striking plaintiff's fifth, sixth, seventh, eighth, and ninth claims for relief.[1] This motion is supported by the accompanying Declaration of Louis Lamp and the memorandum below. Defendants request an award of costs and attorney's fees under ORS § 31.152 (3). In accordance with LR 7, Defendants' counsel attempted to confer with Plaintiff's counsel by phone about this motion, but was unable to reach Plaintiff's counsel. The parties previously agreed to a deadline for Defendants to file either an answer or responsive filing by July 10, 2026. Since Defendants' counsel was unable to reach Plaintiff's counsel by phone, Defendants' counsel was unable to confer on an extension of that deadline to allow more time to confer on this motion. Defendants' counsel was consequently required to file this motion when it was due, but expects that Plaintiff will oppose the motion.

Dated July 10, 2026.

s/ Will Riddell
_____
**Will Riddell, OSB No. 195635**
1491 Commercial Street SE
Salem, Oregon 97301
Phone: (503) 269-8961
Email: will@riddell.lawyer
Attorney for Defendants Louis Lamp
and Get out the Float LLC

---

[1] As confirmed below, to the extent necessary, Defendants are simultaneously moving to dismiss Plaintiff's claims under FRCP 12 (b) (6) and moving for summary judgment against Plaintiff's claims under FRCP 56.

Page 2 – **Defendants Louis Lamp and Get out the Float LLC's Special Motion to Strike**

**MEMORANDUM**

Plaintiff Joseph Luna commenced this action asserting nine claims for relief against Defendants, all of which arise out of his allegations that Defendants discriminated against Plaintiff for "being disabled and for being accompanied by a service animal." *See, e.g.,* Second Amended Complaint ¶ 81. Plaintiff's first four claims seek relief under the Americans with Disabilities Act. *See id.* ¶¶ 76–123. However, Plaintiff's latter five claims all seek relief under Oregon state law. ¶¶ 124–165. Plaintiff has requested that the Court exercise supplemental jurisdiction over the five state law claims pursuant to 28 U.S.C. § 1367. *See id.* ¶ 10.

**A.    The standard for a special motion to strike under ORS § 31.150.**

ORS § 31.150 is an Oregon statute that was enacted "to permit a defendant who is sued over certain actions taken in the public arena to have a questionable case dismissed at an early stage." *Yes On 24-367 Comm. v. Deaton*, 276 Or. App. 347, 349–50 (2016). Like a motion for summary judgment, the "Anti-SLAPP" statute is designed "to weed out meritless claims meant to harass or intimidate." *Young v. Davis*, 259 Or. App. 497, 508 (2013). It provides that a defendant may file "a special motion to strike against a claim" that arises out of any "conduct in furtherance of the exercise of the constitutional right of assembly, petition, or association or the constitutional right of free speech or freedom of the press in connection with a public issue or an issue of public interest." Or. Rev. Stat. § 31.150 (2) (D). If the motion makes a "prima facie showing" that the plaintiff's claim arises out of constitutionally protected conduct, then "the burden shifts to the plaintiff... to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case." Or. Rev. Stat. § 31.150 (3); *Young*, 259 Or. App. at 508 – 509 (explaining procedural framework).

So, first, the defendant must demonstrate that the conduct targeted by the plaintiff's claims "(1) was in furtherance of the constitutional right of free speech; and (2) was in connection with a public issue or an issue of public interest." *DeHart v. Tofte*, 326 Or. App. 720, 742 (2023). This inquiry focuses generally on "what sort of claim" the plaintiff filed and the defendant's general activity, and not the plaintiff's motivations for filing the claim or the question of whether the defendant's conduct was unlawful. *See Mullen v. Meredith Corp.*, 271 Or. App. 698, 705 (2015).

Under the first step, Oregon cases generally hold that conduct is "in furtherance of the constitutional right of free speech" when "the defendant's activity is communicative." *DeHart*, 326 Or. App. at 742. The statute broadly applies not only to conduct or speech that is "necessary to the exercise of free speech," but also to any conduct or speech that is "in furtherance of" that right. *See Mullen*, 271 Or. App. at 706. For the second step of the defendant's initial showing, an "issue of public interest" is interpreted to have its "common-sense meaning," which is simply "an issue that is of interest to the public." *DeHart v. Tofte*, 326 Or. App. at 742.

The plaintiff's responsive burden to present "substantial evidence to support a prima facie case" means that the plaintiff "must submit sufficient evidence from which a reasonable trier of fact could find that the plaintiff met its burden of production." *Wingard v. Oregon Fam. Council, Inc.,* 290 Or. App. 518, 523 (2018). That question depends on the substantive law governing the plaintiff's claim, and whether any opposing evidence in the record negates the plaintiff's attempt to establish a prima facie case as a matter of law. *See Young v. Davis*, 259 Or. App. 497, 510 (2013) (explaining this). Ultimately, with some slight differences, the analysis is essentially the same as the analysis for a motion for summary judgment. *See id.*

Page 4 – **Defendants Louis Lamp and Get out the Float LLC's Special Motion to Strike**

**B.    Special motions to strike in federal court.**

As mentioned above, although Plaintiff's first four claims seek relief under federal law, the Court is exercising supplemental jurisdiction over Plaintiff's five other state law claims. Like diversity cases, the "*Erie* principles apply equally in the context of pendent jurisdiction." *Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995); *see also Malaivanh v. Humphreys Coll.*, No. 2:16-cv-01081, 2017 WL 3503386, at *2 (E.D. Cal. Aug. 16, 2017) ("The *Erie* analysis is the same for state claims heard in federal court based on supplemental jurisdiction as it is for those based on diversity jurisdiction."). And, although Anti-SLAPP motions appear to be a procedural mechanism to vindicate existing substantive rights, "they are generally allowed in federal court." *Dossett v. Ho-Chunk, Inc.*, 472 F. Supp. 3d 900, 906 (D. Or. 2020).

But the analysis does change slightly in federal court, depending on whether the special motion to strike challenges the legal or factual sufficiency for a claim. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). If the motion challenges only the legal sufficiency for a claim, federal courts treat the motion as a motion to dismiss under FRCP 12 (b) (6). And, when the motion challenges the factual support for a claim, federal courts treat the motion as a motion for summary judgment. *See id.*

When the motion is treated as a motion for summary judgment, the standards under FRCP 56 apply and the nonmoving party may seek discovery before responding to the motion if that discovery is necessary. *See id.* However, in accordance with FRCP 56 (d) (2), the nonmoving party must still show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." *Wynn v. Bloom*, 2019 WL 1983044, at *3 (D. Nev. May 2, 2019).

**C.    Plaintiff's claims are based on constitutionally protected activity.**

Defendant Louis Lamp is an army veteran and the founder of a charitable "furry" group that hosts an event at the Seaside Convention Center called "Get Out the Float." Basically, everybody dresses up in animal costumes and attends an event that hosts things like vendors and lighthearted fun activities or events (like a bounce house), and they donate proceeds from the event to local charities. *See* Lamp Declaration ¶¶ 2 – 3.

As Plaintiff's Second Amended Complaint acknowledges, the people at this convention each have their own unique persona while they are dressed up as their animal character. Plaintiff alleges that he goes by the aliases "Kebayena," "Keba," and "Kebasha" while in character. *See* Second Amended Complaint ¶ 2. Defendant Louis Lamp goes by the alias "Baphnedia" while in character. *See* Lamp Declaration ¶ 4. These events and the characters attending them are performative; the people who dress up and attend are playing a role that they've created.

"Performing or expressing a particular persona is indistinguishable from performing a character in a play or film or competing in a beauty pageant, all of which is undoubtedly purely expressive activity." *Imperial Sovereign Ct. of Montana v. Knudsen*, 170 F.4th 820, 855 (9th Cir. 2026). This is a form of creative expression, which makes it speech that is subject to First Amendment protection. *Cf. Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558 (1975) (live drama is speech). In *Knudsen,* for example, the Ninth Circuit concluded that drag queens hosting an event called "drag story hour" were engaging in expressive conduct by "expressing a particular persona." *Knudsen*, 170 F.4th at 855. On a legal basis, that is not materially different from people "expressing a particular persona" by dressing up in an animal costume. Consequently, Defendant's activity was constitutionally protected expressive conduct.

Page 6 – **Defendants Louis Lamp and Get out the Float LLC's Special Motion to Strike**

Even if Plaintiff has not necessarily filed claims based directly on Defendant's expressive conduct, the Anti-SLAPP statute still applies. As mentioned above, ORS § 31.150 (2) (D) applies to any "conduct *in furtherance* of the exercise of the constitutional right of assembly, petition, or association or the constitutional right of free speech…" Or. Rev. Stat. § 31.150 (2) (D) (emphasis added). And, conduct is "in furtherance" of free speech when "the defendant's activity is communicative." *DeHart v. Tofte*, 326 Or. App. 720, 742 (2023). Since Defendant's activity in this case was communicative and at least directly collateral to the conduct Plaintiff is challenging, ORS § 31.150 (2) (D) applies.

Defendant's activity also meets the second part of the initial requirements of ORS § 31.150 (2) (D), which is the requirement that the speech concerns "an issue that is of interest to the public." *DeHart*, 326 Or. App. at 742. Based on the common-sense meaning of that phrase, a convention where people gather to express individual characters or personas, and thereby engage in expressive conduct, is a matter of public interest. The public has an interest in the freedom to engage in expressive conduct like this, regardless of whether it is a drag show or a "furry" convention.

**D.    Plaintiff's specific allegations against Defendant Louis Lamp.**

Plaintiff alleges that he suffers from "diabetic neuropathy, and diabetic retinopathy," and that he "uses a trained service animal (dog) named Scout to help perform his daily functions and mitigate the effects of his disabilities." *See* Second Amended Complaint ¶ 14. Specifically, Plaintiff claims that Scout is trained to (1) notify Plaintiff that "he has elevated glucose levels," (2) notify Plaintiff "when someone is approaching his visually impaired side," (3) notify Plaintiff if "his blood sugar levels are too low or too high," and (4) help Plaintiff "safely navigate public spaces, particularly in crowded areas." *See* Second Amended Complaint ¶¶ 15 (1) – (4).

Page 7 – **Defendants Louis Lamp and Get out
the Float LLC's Special Motion to Strike**

**1.    Defendant's prior experience with Plaintiff.**

Defendant Louis Lamp has known Plaintiff for a few years and they have both attended events like this together in the past. *See* Lamp Declaration ¶ 4. Over the years, Plaintiff has told Defendant about his medical issues related to his diabetes, and has introduced Defendant to Scout. *See* Lamp Declaration ¶ 5. Typically, however, Plaintiff doesn't rely on Scout for any particular assistance. *See id.* Most of the time, Plaintiff allows Scout to follow him around off-leash and appears to have no difficulty seeing, moving around, or functioning without Scout. *See id.*

Based on what Plaintiff has told Defendant, Plaintiff actually relies on Scout as an emotional support animal. *See id.* ¶ 6. In the past, Plaintiff has used Scout's status as an emotional support animal to allow Scout to accompany him to places that do not allow pets or to live with Plaintiff at his apartment. *See id.* ¶ 6. In fact, earlier in this case, Plaintiff's complaint included a certificate indicating that Scout was only an "Emotional Support Animal," and not a service animal. *See* ECF No. 1, Pg. 30.[2]

**2.    Plaintiff repeatedly failed to keep Scout under control.**

In 2025, the "Get out the Float" convention took place between February 6 and February 9. *See* Lamp Declaration ¶ 7. On February 4, 2025, Defendant was planning to pick up a rental truck to move things out of his storage unit and house to the convention. *See id.* ¶ 8. Several other people, including Plaintiff, were helping Defendant with this preparation. *See id.* ¶¶ 8–9. Everybody met at Defendant's house after the rental truck was picked up to help load everything into the truck. *See id.*

---

[2] An "emotional support animal" does not qualify as a service animal under the ADA. *See* 28 C.F.R. § 36.104 ("[T]he provision of emotional support, well-being, comfort, or companionship do not constitute work or tasks for the purposes of this definition.").

Page 8 – **Defendants Louis Lamp and Get out the Float LLC's Special Motion to Strike**

Plaintiff eventually arrived at Defendant's house with one of his friends, and Scout was with him. *See* Lamp Declaration ¶ 9. While everybody was helping load up the rental truck, Scout was playing off leash and running around the truck. *See id.* ¶ 10. He actually ran under the lift gate several times while it was operating, which was dangerous. *See id.* At one point, Scout completely left Defendant's property and had to be retrieved by another person who was helping that day. *See id.* After Scout returned, he continued interfering with everybody's work by running under the lift gate and around the truck, and it happened for long enough that people started complaining about it to Defendant. *See id.*

The convention started on February 6, 2025. *See* Lamp Declaration ¶ 11. Plaintiff was at the event with Scout when it started, but Plaintiff was not holding on to Scout's leash and was allowing Scout to run around. *See id.* At one point, Scout ran around another attendee and tangled up their legs in the leash. *See* Colvin Declaration ¶ 4.

Defendant was eventually notified by a staff member that there was a dog "barking and growling" near the vendors, and that several of the vendors were feeling unsafe because the dog was behaving aggressively. *See* Lamp Declaration ¶ 12. Defendant suspected that the dog was Scout, because Scout was behaving that way when everybody was helping load up the rental truck and had also behaved aggressively at prior conventions, including the convention in 2024. *See id.* Defendant went to one of the vendors at the event while he was looking for Plaintiff and Scout, and the vendor appeared to be alarmed and was acting fearful because of the dog. *See id.* ¶ 13. Based on what Defendant was seeing, he went to the convention center's operations center and told staff he was concerned that Scout was running around off leash, acting aggressively toward attendees, and clearly not under Plaintiff's control. *See id.*

Page 9 – **Defendants Louis Lamp and Get out the Float LLC's Special Motion to Strike**

One of the staff members at the convention center asked Defendant if Scout was the same dog that was running around off leash at the convention in 2024, which Defendant confirmed. *See* Lamp Declaration ¶ 14. The two staff members then left to speak with Plaintiff about Scout, and then returned to the operations center to speak to Defendant. *See id.* They told Defendant that Plaintiff was refusing to leave the convention despite being asked, and asked Defendant to speak to him about leaving before they called the police. *See id.*

### 3.   Plaintiff asked the police to shut down the event.

Defendant agreed and spoke to Plaintiff privately in the Pacific Room at the convention center. *See* Lamp Declaration ¶ 15. He told Plaintiff that Plaintiff had to leave because he was repeatedly failing to keep Scout under control, and Scout was running around and acting aggressively toward people at the event. *See id.* Defendant also explained that Plaintiff had to leave because Plaintiff himself was behaving aggressively and rudely toward the convention center staff who approached Plaintiff earlier to talk about Scout. *See id.* As he was walking Plaintiff out, Defendant told Plaintiff to get some rest and return later after calming down, because Plaintiff was visibly angry and agitated. *See id.* ¶ 16.

Within a short time after Plaintiff left, the general manager of the convention center asked to speak with Defendant. *See* Lamp Declaration ¶ 17. He told Defendant that the Seaside Police Department called to tell him that Plaintiff had called the police and asked them to "shut down" the convention center "for violating disability rights." *Id.* An officer was sent to meet with Plaintiff after Plaintiff called the police, but the officer told Plaintiff that this was a civil matter and not a criminal matter that justified calling the police. *See id.*

Page 10 – **Defendants Louis Lamp and Get out the Float LLC's Special Motion to Strike**

### 4.    Plaintiff asked the mayor's office to shut down the event.

Defendant left to get food after speaking to the general manager. While he was out, Defendant received a call from the person working at the front desk, who stated that Plaintiff had returned and wanted to talk to Defendant. *See* Lamp Declaration ¶ 18. At that point, based on Plaintiff's earlier behavior and efforts to disrupt or "shut down" the event by calling the police, Defendant concluded that Plaintiff was acting unreasonably, disruptive, and inconsistently with the spirit of the event. Consequently, Defendant told the person at the front desk to tell Plaintiff to leave. *See id.* ¶ 19.

When Defendant returned to the convention center, the general manager asked to speak to him again. *See* Lamp Declaration ¶ 20. This time, the general manager told Defendant that Plaintiff had called the mayor's office and asked to shut down the event and fire the general manager "for violating his civil rights." *Id.* Because of Plaintiff's escalating behavior, Defendant started speaking to people at the event to learn more about what they witnessed. *See id.* ¶ 21. Defendant discovered that at least nine incidents were reported to the convention center staff about Scout and Plaintiff. *See id.*

### 5.    Plaintiff sent harassing messages to Defendant after leaving.

Later that evening, Plaintiff's friend asked to speak to Defendant and Plaintiff was on speaker phone when Defendant arrived. *See* Lamp Declaration ¶ 22. Plaintiff told Defendant that he wanted to meet Defendant "outside" and told Defendant to "come alone." *See id.* Defendant knows that Plaintiff is a gun owner, and interpreted Plaintiff's tone and the way he phrased the request as a threat of violence. *See id.* ¶ 23. Defendant refused to meet with Plaintiff outside alone, and Plaintiff's behavior prompted the convention center security staff to begin escorting Defendant to his car whenever he left to make sure he was safe each night. *See id.* ¶ 24.

After Plaintiff left that night, he received a call from Plaintiff's friend who complained about how Scout would not stop barking and acting disruptively in the hotel room they were staying at. *See* Lamp Declaration ¶ 25. Defendant was paying for the hotel room, so he contacted the hotel to get a new room for Plaintiff's friend. *See id.* He also asked the hotel to change Plaintiff's reservation so that he had to check out the next morning, instead of the following Monday or Tuesday morning. *See id.*

Defendant then called Plaintiff and told him that he would need to leave the next morning because Defendant did not want to continue paying for the hotel room. *See* Lamp Declaration ¶ 27. Plaintiff got angry, and then told Defendant that he wanted to crash his van and "die on the way back home." *Id.* Plaintiff specifically threatened to drive as fast as possible in an effort to kill himself and Scout. *See id.* Defendant told one of his friends about Plaintiff's threats, who then called the Oregon State Police to report that Plaintiff may be driving recklessly and had expressed a desire to kill himself and Scout. *See id.* Defendant later learned from the hotel staff that Plaintiff had checked out early from the hotel, and one of Defendant's friends later confirmed to Defendant that Plaintiff had made it home safely. *See id.*

On or about February 23, 2025, Defendant drafted and sent a letter to Plaintiff informing him that he was permanently banned from Get out the Float. The letter explained that Plaintiff's behavior at the event on February 6, 2025 was the reason for Defendant's decision. *See* Ex. 02. Apparently, Plaintiff subsequently attempted to volunteer at a separate event called "Furlandia" in 2026, but the owners of the event refused to allow him to volunteer. *See* Second Amended Complaint ¶¶ 55 – 63. This was the result of Plaintiff's violations of Furlandia's Code of Conduct, and his aggressive behavior at a Furlandia barbeque in a park in 2025. *See* Lamp Declaration ¶ 32.

Page 12 – **Defendants Louis Lamp and Get out
the Float LLC's Special Motion to Strike**

**ARGUMENT**

Defendants' special motion to strike is split into two parts, based on how federal courts in the Ninth Circuit treat these motions. The first part is comprised of Defendants' legal challenges to Plaintiff's claims, and the second part is comprised of Defendants' factual challenges. Consistent with *Planned Parenthood Fed'n of Am., Inc.,* the legal challenges should be determined before discovery is exchanged. The factual challenges are related to issues that Plaintiff should already have the discovery he needs to support (such as whether Scout is a service animal), so the Court should only allow discovery if Plaintiff files a motion explaining what specific discovery he needs before he can respond. *See Wynn v. Bloom*, 2019 WL 1983044, at *3 (D. Nev. May 2, 2019).

**A.    Defendants' challenges to the legal sufficiency of Plaintiff's claims.**

Defendants move to dismiss (1) all claims against Defendant Louis Lamp individually; (2) Plaintiff's fifth claim for discrimination under state law against Defendants; (3) Plaintiff's seventh claim for "civil conspiracy;" (4) Plaintiff's eighth claim for intentional interference with prospective economic advantage; and (5) Plaintiff's ninth claim for defamation.

**1.    Plaintiff's claims against Louis Lamp must be dismissed.**

First, Plaintiff has named both Get out the Float LLC and its Manager, Louis Lamp, as Defendants in this case. However, the Second Amended Complaint seems to allege that Defendant Louis Lamp is liable solely because he is the Manager of Get out the Float LLC, which is a separate entity. *See* ECF No. 23 ¶ 6. Defendant Louis Lamp cannot be personally liable for acts of his LLC merely because of his status as the LLC's Manager. *See Cortez v. Nacco Material Handling Grp., Inc.*, 356 Or. 254, 268 (2014). Consequently, the claims against Defendant Louis Lamp should be dismissed.

**2.      Plaintiff's fifth claim for discrimination must be dismissed.**

Plaintiff's fifth claim for relief is for discrimination under Oregon state law, specifically under ORS § 659A.142 and ORS § 659A.143. *See* ECF No. 23 ¶ 130. In relevant part, ORS § 659A.142 (4) provides that it "is an unlawful practice for any place of public accommodation... or any person acting on behalf of such place, to make any distinction, discrimination or restriction because a customer or patron is an individual with a disability." Or. Rev. Stat. § 659A.142 (4). Therefore, to state a claim under this statute, Plaintiff must allege that (1) he was a "customer or patron," (2) he is "an individual with a disability," (3) he was subjected to "any distinction, discrimination or restriction," and (4) the discrimination occurred in a "place of public accommodation." *Abraham v. Corizon Health, Inc.*, 369 Or. 735, 740 (2022).

Plaintiff's fifth claim does not allege that he was a customer or a patron as required by ORS § 659A.142 (4). The allegation is completely missing from the Second Amended Complaint. Since a material fact is missing from Plaintiff's fifth claim, the claim must be dismissed. Separately, Plaintiff cannot genuinely allege that he was *either* a customer or a patron of Get out the Float, because he was not buying or receiving any goods or services from Get out the Float. *See Abraham v. Corizon Health, Inc.*, 369 Or. 735, 741 (2022). As a result, the claim should be dismissed with prejudice.

On top of that, Plaintiff alleges that the "place of public accommodation" was Get out the Float LLC itself. *See* ECF No. 23 ¶ 127. Get out the Float LLC is a limited liability company, and it hosts a private convention, or a *private* event, which is not a physical "place" nor is it "public." Neither the "Get out the Float" event or Get out the Float LLC itself fit within the definition of a "place of public accommodation" under ORS § 659A.400 (1). Consequently, this claim must be dismissed either way.

Page 14 – **Defendants Louis Lamp and Get out the Float LLC's Special Motion to Strike**

Plaintiff also alleges a violation of ORS § 659A.143 in his fifth claim for relief, which only regulates what people can or cannot ask about service animals. *See* Or. Rev. Stat. § 659A.143. The statute does not create a separate claim. Even if it did, it uses the definition of "place of public accommodation" from ORS § 659A.400 (1). As a result, any "claim" under this statute would need to be dismissed for the same reasons explained above even if the statute did create a separate claim for relief, and it doesn't.

**3.      Plaintiff's seventh claim for civil conspiracy must be dismissed.**

Plaintiff's seventh claim for relief is for "civil conspiracy," but civil conspiracy is "not a separate tort or basis for recovery." *Osborne v. Fadden*, 225 Or. App. 431, 437 (2009). It does not exist as a separate cause of action under Oregon law. *See Granewich v. Harding*, 329 Or. 47, 53 (1999) ("[N]either 'conspiracy' nor 'aid and assist' is a separate theory of recovery."). Instead, a "conspiracy" is "a theory of mutual agency under which a conspirator becomes jointly liable for the tortious conduct of his or her coconspirators." *Osborne*, 225 Or. App. at 437. Despite this, Plaintiff's Second Amended Complaint pleads "civil conspiracy" as a cause of action and basis for recovering damages. This is improper. It is not a claim, so it should be dismissed with prejudice.

**4.      Plaintiff's eighth claim must be dismissed.**

Plaintiff's eighth claim is for intentional interference with prospective economic relations. To state this claim, Plaintiff must allege "(1) the existence of a professional or business relationship (which could include, e.g., a contract or a prospective economic advantage); (2) intentional interference with that relationship or advantage; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and the harm to the relationship or prospective advantage; and (6) damages." *Grimstad v. Knudsen*, 283 Or. App. 28, 54 (2016).

Page 15 – **Defendants Louis Lamp and Get out
the Float LLC's Special Motion to Strike**

The Second Amended Complaint alleges that the "professional or business relationship" which was the basis for Plaintiff's prospective economic advantages was his "attending and volunteering at GOTF…" *See* ECF NO. 23 ¶ 153. Essentially, Plaintiff is alleging that Defendants Get out the Float LLC and Louis Lamp "interfered" with Plaintiff's relationship with Get out the Float LLC. However, under Oregon law, "a party to a contract cannot be liable for interference with that contract." *Ziebert v. Sun Valley Lumber, Inc.*, 198 Or. App. 162, 170 (2005). This rule applies to both Defendant Get out the Float LLC and its agents, including Defendant Louis Lamp. *See McGanty v. Staudenraus*, 321 Or. 532, 538 (1995) ("[W]hen an employee is acting within the scope of the employee's employment,… that employee is not a third party for the tort of intentional interference with economic relations."). Since Plaintiff cannot state this claim against parties to his relationship, the claim must be dismissed with prejudice.

### 5.    Plaintiff's ninth claim for defamation must be dismissed.

Finally, Plaintiff's ninth claim is for defamation against Defendant Louis Lamp personally. To state a claim for defamation, Plaintiff must allege that "(1) the defendant made a defamatory statement about the plaintiff and (2) the defendant published that statement to a third party." *Wingard v. Oregon Fam. Council, Inc.*, 290 Or. App. 518, 523 (2018). According to the Second Amended Complaint, Plaintiff alleges that Defendant represented that Plaintiff "and Scout are aggressive and/or dangerous, cause problems, and require monitoring." ECF No. 23 ¶ 162. However, in "First Amendment jurisprudence, the rule is well established that the expression of an opinion does not constitute an actionable cause of action for defamation." *See Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 971 (N.D. Cal. 2013), aff'd, 609 F. App'x 497 (9th Cir. 2015);, *Hickey v. Settlemier* 141 Or. App. 103, 110 (1996) (same).

Page 16 – **Defendants Louis Lamp and Get out
the Float LLC's Special Motion to Strike**

At most, Plaintiff's allegations about what Defendant claimed about Plaintiff and Scout are expressions of opinion and not facts. Calling somebody "aggressive" or "dangerous" is an opinion. The same goes for claiming that they "require monitoring" or "cause problems." There is nothing specific or factual about those things. In *Hickey v. Settlemier*, for example, the defendant called the conditions at the plaintiff's business (which sold animals) "inhuman." The Oregon Court of Appeals held that this "was nonactionable opinion." *Hickey v. Settlemier*, 141 Or. App. 103, 111 (1996). That's not materially different from calling Plaintiff or Scout "aggressive," or claiming any of the other things that Plaintiff alleges Defendant said. Those things are statements of opinion, not fact, and they are not actionable in a claim for defamation. Consequently, Plaintiff's ninth claim for relief must be dismissed with prejudice.

**B.    Defendant's challenges to the factual sufficiency of Plaintiff's claims.**

Defendant challenges the factual sufficiency of Plaintiff's fifth, sixth, seventh, eighth, and ninth claims as to all material elements of those claims. As mentioned above, a special motion to strike that challenges the factual sufficiency of the plaintiff's claims is treated like a motion for summary judgment under FRCP 56. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). This is consistent with how special motions to strike are treated under Oregon law. Under ORS § 31.150 (3), "the plaintiff must submit sufficient evidence from which a reasonable trier of fact could find that the plaintiff met its burden of production." *Handy v. Lane Cnty.*, 360 Or. 605 (2016). Although courts do not "weigh the evidence," the moving party's evidence is still considered "to determine if it defeats the plaintiff's showing as a matter of law." *Young v. Davis*, 259 Or. App. 497, 510 (2013). The evidence and inferences are still viewed in the light most favorable to the moving party. *See id.*

Two facts are dispositive of all of Plaintiff's claims for relief in this case: (1) Scout is not a "service animal" as defined by 28 C.F.R. § 36.104; and (2) Defendants had a non-discriminatory purpose for removing Plaintiff and Scout according to 28 C.F.R. § 36.302 (c). If the trier of fact could not find in favor of Plaintiff with regard to these two facts, then Plaintiff's claims for discrimination under state or federal law would need to be dismissed because no discrimination occurred. Likewise, Plaintiff's claim for intentional interference would need to be dismissed because Plaintiff could not show "improper conduct" if Defendants' actions were legally justified. *Cf. Ride PDX, LLC v. Tee & B, LLC*, 322 Or. App. 165, 168, (2022) ("...the [improper] means must violate some objective, identifiable standard, such as a statute or other regulation."). It would also make Defendants' alleged statements about Plaintiff true, which would be dispositive of Plaintiff's claim for defamation. *See Lansford v. Georgetown Manor, Inc.*, 192 Or. App. 261, 270 (2004) ("Truth is an affirmative defense to a defamation claim.").

### 1.    Scout is not a "service animal."

As the accompanying declarations (and many of Plaintiff's own allegations) demonstrate, Scout does not meet the definition of a "service animal." A "service animal" means "any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability." 28 C.F.R. § 36.104. The regulations clarify that the "work or tasks performed by a service animal must be directly related to the individual's disability," and that "the provision of emotional support, well-being, comfort, or companionship do not constitute work or tasks for the purposes of this definition." 28 C.F.R. § 36.104. Here, Plaintiff alleges that Scout (1) helps monitor his blood glucose levels; (2) notifies him if someone approaches his "visually impaired side;" and (3) helps him navigate public spaces, and crowded areas. *See* ECF No. 23 ¶ 15.

Page 18 – **Defendants Louis Lamp and Get out
the Float LLC's Special Motion to Strike**

Plaintiff's first "task" doesn't immediately appear to be necessary or realistic, given that people with diabetes typically rely on medical monitoring devices to determine their blood glucose levels. Plaintiff provides no explanation for why he would need a dog to perform this task, and doesn't confirm whether he uses medical monitoring devices at all. This allegation is unsupported and does not appear rational.

The second "task" is disproven by the record. Plaintiff did not have a visual impairment in one of his eyes until only a few weeks before the Get out the Float convention. The date that he told Defendants about this was January 16, 2025, which was exactly three weeks before the first day of the convention on February 6, 2025. *See* Ex. 01, Pg. 001. No reasonable jury could find that Plaintiff trained Scout to perform an entirely new task in three weeks. The only reasonable conclusion is that Scout was barking and growling because he is a regular dog, and he was surrounded by a bunch of people dressed up as dogs and various other animals.

The third "task" is also disproven by the record. Plaintiff is able to drive and navigate public and crowded places without Scout perfectly fine. He was doing that at the convention, which is how Scout ended up wrapping his leash around the legs of one of the attendees. *See* Colvin Declaration ¶ 4. Apparently, Plaintiff does not use a leash with Scout. *See* Lamp Declaration ¶ 5; Felix Declaration ¶ 3; Cacioppo Declaration ¶ 11. Everybody who attended the convention and was available to provide a statement about what happened has confirmed that Plaintiff was walking around perfectly fine and that Scout was not "guiding" Plaintiff with his leash. To the contrary, the witnesses confirm that Scout was unruly, reactionary, and aggressive. *See* Cacioppo Declaration ¶¶ 10 – 13; Felix Declaration ¶ 2. Michael Cacioppo, who is personally familiar with service dogs, confirmed that Scout does not act like one. *See* Cacioppo Declaration ¶¶ 8 – 13.

Page 19 – **Defendants Louis Lamp and Get out
the Float LLC's Special Motion to Strike**

So far, the only evidence of "training" that Plaintiff has produced is a "certification" indicating that Scout is an "emotional support animal." *See* ECF No. 1, Pg. 30. However, as mentioned above, an emotional support animal does not qualify as a "service animal." *See* 28 C.F.R. § 36.104. No evidence exists in the record to support a decision in Plaintiff's favor on this issue. And, ultimately, Plaintiff is the party with the burden of proving this issue. He is the only party with the evidence that could support this issue, and the nonmoving party facing a summary judgment motion "is required to 'wheel out all its artillery to defeat it.'" *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). Since Plaintiff is the only party with the evidence to prove this issue, there isn't any need for Plaintiff to obtain discovery from Defendants before the Court can rule on this motion. As a result, Plaintiff's claims should be dismissed because Plaintiff cannot meet his burden of production.

### 2. Defendants did not discriminate against Plaintiff.

Based on the record, no reasonable jury could conclude that Defendants removed Plaintiff from the convention for a discriminatory purpose. In fact, as mentioned above, it is presently undisputed that Plaintiff was refusing to keep Scout on a leash, and was completely unable to control Scout at the convention. *See* Lamp Declaration ¶ 5; Felix Declaration ¶ 3; Cacioppo Declaration ¶ 11. Scout was barking, growling, tangling his leash up in an attendee's legs, and Plaintiff was unable to prevent any of it. *See id.* Service animals may be removed from public places if the "animal is out of control and the animal's handler does not take effective action to control it," or if the animal does not have "a harness, leash, or other tether." 28 C.F.R. § 36.302 (c). Since there is no reasonable dispute that Scout was out of control and unleashed in this case, Defendants had a justifiable and non-discriminatory reason to remove Plaintiff and Scout.

Page 20 – **Defendants Louis Lamp and Get out
the Float LLC's Special Motion to Strike**

Again, as mentioned above, this is an issue that Plaintiff bears the burden of proving at trial, which means he bears the burden of production at the summary judgment stage. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). This is also an issue which only Plaintiff has the evidence to support – as in, only Plaintiff can show that he either did have Scout on a leash, or was unable to leash Scout for a legitimate reason. Since Plaintiff cannot meet his burden of production on that issue, no reasonable jury could find in Plaintiff's favor and his claims must be dismissed.

**C.    Defendants are entitled to an award of attorney's fees and costs.**

ORS § 31.152 (3) provides that a "defendant who prevails on a special motion to strike made under ORS 31.150 shall be awarded reasonable attorney fees and costs." Or. Rev. Stat. § 31.152 (3). The Ninth Circuit has confirmed that this right is considered to be a "substantive law[] under the *Erie* doctrine" and applies to actions in federal court. *See Northon v. Rule*, 637 F.3d 937, 938–39 (9th Cir. 2011). Defendants should therefore be awarded attorney's fees and costs in this action under ORS § 31.152 (3).

**D.    Defendants simultaneously move to dismiss under FRCP 12 (b) (6) and move for summary judgment under FRCP 56.**

As mentioned above, this special motion to strike is essentially considered to be a combination between a motion to dismiss under FRCP 12 (b) (6) and a motion for summary judgment under FRCP 56. Defendants are filing it as a special motion to strike because they have the substantive right to file this particular type of motion, and in fact are required to file it before filing an answer, and would waive these rights if they did not file this motion. However, to the extent necessary, Defendants are simultaneously moving to dismiss Plaintiff's claims under FRCP 12 (b) (6) and also moving for summary judgment under FRCP 56 for the same reasons explained above.

# CONCLUSION

Plaintiff lacks the legal and factual support required to support his claims in this case. The claims should be dismissed with prejudice as a result.

Dated July 10, 2026.

*s/ Will Riddell*

**Will Riddell, OSB No. 195635**
1491 Commercial Street SE
Salem, Oregon 97301
Phone: (503) 269-8961
Email: will@riddell.lawyer
Attorney for Defendants Louis Lamp
and Get out the Float LLC

**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing **Defendants Louis Lamp and Get out the Float LLC's Special Motion to Strike** on the following persons on **July 10, 2026**, in the manner described below:

Melissa J. Healy
760 S.W. Ninth Ave., Suite 3000
Portland, Oregon 97205
Phone: 503-294-9263
Email: melissa.healy@stoel.com
Pro Bono Counsel for Plaintiff

□ by hand-delivery
□ by facsimile
□ by first class mail
□ by e-mail
X by electronic service

Kenneth S. Montoya
350 Mission Street SE, Suite 202
Salem, Oregon 97302
Phone: (503) 990-8436
Email: kenny@montoyalaw.org
Counsel for Defendant City of Seaside
and Defendant Frank Kaim

□ by hand-delivery
□ by facsimile
□ by first class mail
□ by e-mail
X by electronic service

Dated July 10, 2026.

_s/ Will Riddell_
**Will Riddell, OSB No. 195635**
1491 Commercial Street SE
Salem, Oregon 97302
Phone: (503) 269-8961
Email: will@riddell.lawyer
Attorney for Defendant Louis Lamp