Docusign Envelope ID: ECB7E835-B380-8B00-8195-D20AA0A4DD91

**Will Riddell, OSB No. 195635**
1491 Commercial Street SE
Salem, Oregon 97301
Phone: (503) 269-8961
Email: will@riddell.lawyer
Attorney for Defendant Louis Lamp

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

| | |
|---|---|
| **JOSEPH LUNA**, <br><br> Plaintiff, <br><br> v. <br><br> **FRANK KAIM**, individually; **LOUIS LAMP**, individually; **GET OUT THE FLOAT LLC**; **RAINFURREST ANTHROPOMORPHICS INTERNATIONAL**, the **CITY OF SEASIDE**, and **JOHN DOES I-X,** individually, <br><br> Defendants. | **Case No.** 3:26-cv-00398-SI <br><br><br> **DECLARATION OF LOUIS LAMP SUPPORTING SPECIAL MOTION TO STRIKE** |

**DECLARATION**

I, Louis Lamp, hereby declare as follows:

**1.** I am one of the defendants in this case. I am over the age of eighteen, competent to testify, and have personal knowledge of the facts stated in this declaration.

**2.** I am an army veteran and also the founder of the "Get out the Float" convention in Seaside, Oregon. This is a "furry" convention, where people dress up in various animal costumes and portray their own unique character.

Page 1 – **Declaration of Louis Lamp Supporting Special Motion to Strike**

Docusign Envelope ID: ECB7E835-B380-8B00-8195-D20AA0A4DD91

**3.** The convention hosts things like vendors and lighthearted fun activities and events, like a bounce house. We donate proceeds from the event to local charities.

**4.** I have known Plaintiff Joseph Luna for a few years because he has attended prior Get out the Float conventions. While he is in character, he goes by the aliases "Kebayena," or "Keba," or "Kebasha." While I am in character, I sometimes go by "Baphnedia" or "Baph." Most people who do this have their own unique character.

**5.** During my interactions with Plaintiff, he has told me about how he suffers from diabetes and has introduced me to Scout, who I understood to be Plaintiff's "emotional support animal." I have not witnessed Plaintiff relying on Scout for any particular work, tasks, or assistance. Usually, Plaintiff allows Scout to follow him around off leash. Plaintiff did tell me shortly before the convention in 2025 that his vision recently was impaired in one eye, but he generally has not appeared to have difficulty seeing, driving, moving around, or functioning without Scout. He is usually not relying on Scout at all.

**6.** Based on what Plaintiff has told me in the past, I believe Scout is an emotional support animal. Plaintiff has used Scout's status as an emotional support animal to allow Scout to go with him to places that do not allow pets, or to live in Plaintiff's apartment. Earlier in this case, Plaintiff filed a certificate confirming that Scout is an "emotional support animal," and not stating that Scout is a "service animal."

**7.** The "Get out the Float" convention in 2025 took place between February 6 and February 9. I usually spend several days preparing for the convention before it starts, and I often have help from other attendees and friends.

**8.** On February 4, 2025, I was planning to move items for the convention out of my house and storage unit and to the convention center. I had rented a truck for this purpose, and several people were meeting at my house to load things into the truck.

Page 2 – **Declaration of Louis Lamp Supporting Special Motion to Strike**

Docusign Envelope ID: ECB7E835-B380-8B00-8195-D20AA0A4DD91

9. Plaintiff was also helping load things into the rental truck that day, and he showed up at my house with his friend and Scout.

10. As always, Plaintiff let Scout play around off leash while we were loading things into the truck. Scout ran under the lift gate for the truck several times, which was dangerous and was interfered with our work. At one point, Scout ran away and had to be retrieved from another property by one of my friends. Even after we got Scout back, Plaintiff allowed Scout to run around off leash and run under the lift gate for the rental truck, causing further interference with our work. This happened for long enough to prompt several people to complain about Scout's behavior to me that day.

11. The first day of the convention was February 6, 2025. Plaintiff was there with Scout when the event started. My understanding is that Scout was unleashed, running around, and frequently far away from Plaintiff. At one point, Scout ran around another event attendee and tangled up the attendee's legs in his leash.

12. I was eventually notified by a staff member that there was a dog "barking and growling" near the vendors, and that more than one person reported feeling unsafe because the dog was acting aggressively. Based on Scout's behavior earlier and while everybody was helping load property into the rental truck, I suspected that these reports were probably about Scout. In fact, when Plaintiff and Scout attended the event the prior year in 2024, Plaintiff had allowed Scout to act the same way.

13. I approached one of the vendors at the event after hearing the reports about the aggressive dog, and I noticed that the vendor appeared to be alarmed and was acting fearful because of the dog. I noticed that Scout was, in fact, running around off leash and barking near the vendors, and not under Plaintiff's control. Based on what was reported to me, I went to the convention center's operations center and told the staff about Scout.

Page 3 – **Declaration of Louis Lamp Supporting Special Motion to Strike**

Docusign Envelope ID: ECB7E835-B380-8B00-8195-D20AA0A4DD91

**14.** One of the convention center staff members I spoke to remembered Scout from 2024 and asked if it was the same dog that was running around off leash, and I confirmed that it was. Two of the staff members then left to speak with Plaintiff about Scout. When they returned, one was visibly frustrated and told me that Plaintiff was acting aggressively and rudely, and refusing to leave when asked. They told me they would allow me to speak to him and convince him to leave before they called the police.

**15.** I spoke to Plaintiff privately in the Pacific Room at the convention center with one staff member, away from other people at the event. I explained to Plaintiff that he had to leave because he was repeatedly failing to keep Scout under control, and Scout was clearly running around and acting aggressively toward other people at the event. I also told Plaintiff that Plaintiff himself was acting aggressively and rudely toward the convention center staff who approached him earlier, and they wanted him to leave.

**16.** As I was walking Plaintiff out of the convention center, Plaintiff was visibly angry and agitated. I told him to get some rest and come back later to talk after calming down.

**17.** I went back to the convention center after Plaintiff left. Within a short time, the general manager asked to speak to me. When I met with him, he told me that he had just got off the phone with the Chief of Police for the Seaside Police Department. The general manager explained that Plaintiff had called the police and asked them to "shut down" the convention center "for violating disability rights." He also told me that an officer was sent to speak to Plaintiff, but the officer told Plaintiff that this was a civil matter and not a criminal matter that justified calling the police.

**18.** I left to get something to eat after that. While I was out, the person at the front desk of the convention center called me and told me Plaintiff was back and wanted to speak to me.

Page 4 – **Declaration of Louis Lamp Supporting Special Motion to Strike**

Docusign Envelope ID: ECB7E835-B380-8B00-8195-D20AA0A4DD91

19. At that point, Plaintiff had already acted inappropriately to the convention center staff members, had repeatedly failed to keep Scout under control even after being asked, and had now attempted to call the police to shut down the Get out the Float event and the convention center completely. I concluded that Plaintiff was acting unreasonably, disruptively, and inconsistently with the spirit of the event. As a result, I told the person at the front desk to tell Plaintiff to leave and not return.

20. The general manager asked to speak to me again when I returned to the convention center. This time, he told me that Plaintiff had called the mayor's office and asked to shut down the event and fire the general manager "for violating his civil rights."

21. Because of Plaintiff's escalating behavior, I started speaking to people at the event to learn more about what they witnessed. I learned that at least nine incidents were reported to the convention center staff about Scout and Plaintiff that day.

22. Later in the evening, Plaintiff's friend asked to speak to me. When I met with him, he had Plaintiff on speaker phone. Plaintiff told me that he wanted to meet me "outside," and told me to "come alone."

23. I know that Plaintiff owns a gun, and his behavior that day was erratic and unreasonable. His tone on the phone was also noticeably aggressive, and when combined with the way he phrased his demand, I believed Plaintiff was threatening violence and was potentially planning to show up with his gun. Plaintiff subsequently sent me messages on Telegram asking to speak with me "one-on-one," and I told him he should speak to the security team.

24. My messages with Plaintiff on Telegram include some other discussions we had before the event in 2025 as well, including when Plaintiff mentioned that he was having trouble seeing with one eye on January 16, 2025.

Page 5 – **Declaration of Louis Lamp Supporting
Special Motion to Strike**

Docusign Envelope ID: ECB7E835-B380-8B00-8195-D20AA0A4DD91

**25.**    A true and correct copy of this message thread with Plaintiff is attached as Ex. 01.

**26.**    I am a combat veteran, so I took Plaintiff's threat seriously. I refused to meet with Plaintiff alone, or at all, and reported what he said to the convention center staff. The convention center staff then notified the security team, who began escorting me to my car to make sure I was safe when I left the event each night. We all believed at that time that Plaintiff was acting aggressively and unpredictably.

**27.**    After I left the convention center that night, I received a call from Plaintiff's friend who complained that Scout would not stop barking and acting disruptively in the hotel room they were staying in. I was paying for that hotel room, and I was concerned that Plaintiff or Scout might cause damage to it. I was also concerned about how Plaintiff and Scout were clearly having a negative impact on another event attendee, and by this time Plaintiff had already been told that he could not return to the event.

**28.**    Because of this, I called the hotel and got a new room for Plaintiff's friend. I also asked the hotel to change Plaintiff's reservation so that he had to leave the next morning because I did not want to continue paying for Plaintiff's room, and they did.

**29.**    I called Plaintiff and told him that I changed his reservation because of his behavior, so he would need to leave the hotel in the morning. Plaintiff got very angry about this and then told me that he wanted to crash his van on the way home. He specifically threatened to drive his van as fast as possible in an effort to kill himself and Scout. I told one of my friends at the convention about this phone call, and my friend called the Oregon State Police to tell them that Plaintiff may be driving recklessly and had expressed a desire to kill himself and Scout. I learned later from the hotel staff that Plaintiff had checked out early from the hotel that night. One of my friends at the event later confirmed that Plaintiff had made it home safely.

Page 6 – **Declaration of Louis Lamp Supporting Special Motion to Strike**

Docusign Envelope ID: ECB7E835-B380-8B00-8195-D20AA0A4DD91

**30.** On or about February 23, 2025, I drafted and sent a letter to Plaintiff informing him that he was permanently banned from Get out the Float. I explained that my decision was because of his behavior at the event on February 6, 2026, and his actions after he was asked to leave the event and the hotel. A true and correct copy of my letter to Plaintiff is attached as Ex. 02.

**31.** More recently, I learned that Plaintiff asked to volunteer at the 2026 Furlandia convention, which is a separate event that I do not host. He attended a barbeque at a park hosted by the Furlandia owners.

**32.** I spoke to one of the people who attended that barbeque, and learned that Plaintiff refused to keep Scout on a leash even though the park rules required all dogs to be leashed. Plaintiff was apparently behaving disruptively and aggressively at the barbeque. Plaintiff now alleges in his complaint that he was told not to volunteer at Furlandia in 2026. I suspect that is because of his behavior at the barbeque. Many people who attended the Get out the Float convention also attend the Furlandia convention, so the people there most likely were already familiar with Plaintiff's history.

**I hereby declare under penalty of perjury that this declaration is true and correct to the best of my knowledge and belief and that I understand it will be used as evidence in court.**

Dated July 10, 2026.

Signed by:

*Louis Lamp*

C742A66244F6492...

**Louis Lamp**

Page 7 – **Declaration of Louis Lamp Supporting Special Motion to Strike**

Docusign Envelope ID: ECB7E835-B380-8B00-8195-D20AA0A4DD91

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **Declaration of Louis Lamp Supporting Special Motion to Strike** on the following persons on **July 10, 2026**, in the manner described below:

Melissa J. Healy
760 S.W. Ninth Ave., Suite 3000
Portland, Oregon 97205
Phone: 503-294-9263
Email: melissa.healy@stoel.com
Pro Bono Counsel for Plaintiff

□ by hand-delivery
□ by facsimile
□ by first class mail
□ by e-mail
X by electronic service

Kenneth S. Montoya
350 Mission Street SE, Suite 202
Salem, Oregon 97302
Phone: (503) 990-8436
Email: kenny@montoyalaw.org
Counsel for Defendant City of Seaside
and Defendant Frank Kaim

□ by hand-delivery
□ by facsimile
□ by first class mail
□ by e-mail
X by electronic service

Dated July 10, 2026.

*s/ Will Riddell*
**Will Riddell, OSB No. 195635**
1491 Commercial Street SE
Salem, Oregon 97302
Phone: (503) 269-8961
Email: will@riddell.lawyer
Attorney for Defendant Louis Lamp

Page 8 – **Declaration of Louis Lamp Supporting Special Motion to Strike**



**KebaYena**
last seen 3/28/2026

November 23, 2024

*toynoises!*   4:39 PM ✓✓

This is Baph with GOTF, and I has a volunteering question for you when you're around.  ^^
4:40 PM ✓✓

November 27, 2024

Sorry , didn't see this untill just now   6:09 PM

November 28, 2024

It happens to the best of us. ^_^
How many shifts/day would you like to be schediluled?   9:26 AM ✓✓

I don't mind getting placed around, anywhere ya need me
12:45 PM

January 12, 2025

> **KebaYena**
> I don't mind getting placed around, anywhere ya need me

meep sounds good.... am so sad I'm just returning to this convo...
will schedule you for 3 shifts/day for sanity sake :)   12:26 PM ✓✓

January 16, 2025

New development with me , I'm half blind rn , a blood vessel in my right eye leaked some blood so until it clears , yeeeaaahhh
12:59 PM

ooofy! any idea on how long?   1:00 PM ✓✓

January 19, 2025

No idea   9:37 PM

*hugz   11:34 PM ✓✓

January 20, 2025

🖉 | Write a message...

**Ex. 01, Pg. 001**



Ex. 01, Pg. 002



Ex. 01, Pg. 003



**Get Out The Float**
964 4th Ave
Vernonia, OR 97064
www.getoutthefloat.com

Joseph Luna
2065 SE 44th Ave
Apt #237
Hillsboro, OR 97123
Ph:  503-820-1109
Email: kebahyena@yahoo.com
Re:  Get Out The Float 2025 Attendance

February 23rd, 2025

Hello Joseph / KebaYena,

This letter is to inform you that you have been permanently banned from Get Out the Float (GOTF). During GOTF 2025, you were removed from the premises on Thursday, February 6, 2025 by the Seaside Civic & Convention Center staff and the convention chair. After your removal from the convention center, you returned later in the day to dispute your removal with GOTF registration volunteers.

### *Expulsion from Event by Venue or Hotel*
*If you are expelled from the hotel or other venue for violation of their rules, you immediately forfeit your event membership, must surrender your badge, and will receive no refund. Attendees who commit vandalism or conduct themselves in such a way that is grossly offensive to the venue or hotel staff may also be subject to long-term bans from future GOTF events.*

As a result, you have been permanently banned from attending Get Out The Float. You may make a written appeal for this ban after March 1st, 2026. No appeals will be reviewed before that date.

You are also permanently banned from volunteering at Get Out the Float. No appeals will be accepted.

Sincerely,

Louis Lamp
Founder
Get Out The Float

**Ex. 02, Pg. 001**