MELISSA J. HEALY, OSB No. 102176
melissa.healy@stoel.com
D. RYAN METS, OSB No. 234680
ryan.mets@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: 503.224.3380
Facsimile: 503.220.2480

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JOSEPH LUNA,<br><br>Plaintiff,<br><br>v.<br><br>FRANK KAIM, individually, LOUIS LAMP, GET OUT THE FLOAT LLC, RAINFURREST ANTHROPOMORPHICS INTERNATIONAL, CITY OF SEASIDE, and JOHN DOES I-X, individually,<br><br>Defendants. | Case No.: 3:26-cv-00398-SI<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE**<br><br>ORAL ARGUMENT REQUESTED |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 7

II. LEGAL STANDARD ..... 7

III. ARGUMENT ..... 8

1. Defendants' Use of Anti-SLAPP Is Inappropriate—Plaintiff's Claims Do Not Arise from Protected Conduct Connected to a Public Issue. ..... 8

a. Plaintiff's Claims Arise from Defendants' Discriminatory Acts, Not from Defendants' Expressive Conduct. ..... 10

b. Defendants Have Not Connected the Conduct Underlying Mr. Luna's Claims to Any Public Issue or Issue of Public Interest. ..... 14

2. The Challenged Claims Are Legally Sufficient Under Rule 12(b)(6). ..... 16

a. Lamp Personally Participated in the Challenged Conduct. ..... 16

b. Mr. Luna Adequately Alleges Claims for Disability Discrimination Under Oregon Law. ..... 18

(i) Mr. Luna Was a Customer and Patron of GOTF. ..... 19

(ii) Mr. Luna Plausibly Alleges That GOTF Is a Place of Public Accommodation. ..... 21

(iii) Oregon Law Does Not Require a Place of Public Accommodation to Be a Physical Place. ..... 23

(iv) GOTF Is Not Distinctly Private. ..... 23

(v) Plaintiff's ORS 659A.143 Claim is Proper. ..... 25

c. Defendants' Motion to Strike Mr. Luna's Civil Conspiracy Allegations Should Be Denied. ..... 27

d. Mr. Luna Alleges Interference by Lamp and GOTF with Third-Party Economic Relationships. ..... 28

e. Defendants' Alleged Defamatory Statements Imply Provable Factual Assertions. ..... 31

3. Defendants' Factual Challenge Fails on the Facts and Law. ..... 33

a. Defendants' Arguments Fail on the Law—Their Factual Challenge and Motion for Summary Judgment Are Premature. ..... 33

b. Defendants' Arguments Fail on the Facts—Scout Is a Service Dog. ..... 35

c. Defendants Discriminated Against Mr. Luna. ..... 37

4. Defendants' Requests for Dismissal with Prejudice and for Fees Should be Denied. ..... 40

IV. CONCLUSION ..... 40

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abraham v. Corizon Health, Inc.*,
511 P.3d 1083 (Or. 2022) ........ passim

*All. for Tribal Clean Energy v. 7Skyline, LLC, (findings and recommendation adopted)*,
2026 WL 163056 (D. Or. Jan. 21, 2026) ........ 15

*All. for Tribal Clean Energy v. 7Skyline, LLC*,
No. 3:24-CV-01818-JR, 2025 WL 2781756 (D. Or. Sept. 16, 2025) ........ 15

*Amort v. NWFF, Inc*,
No. 6:11-cv-06396, 2012 WL 3756330 (D. Or. Aug. 27, 2012) ........ 27

*Boers v. Payline Sys., Inc.*,
918 P.2d 432 (Or. Ct. App. 1996) ........ 29, 30

*C.R. v. Eugene Sch. Dist. 4J*,
481 P.3d 334 (Or. Ct. App. 2021) ........ 14

*Cantua v. Creager*,
7 P.3d 693 (Or Ct. App. 2000) ........ 40

*Chase v. Gordon, Alyworth & Tami, (findings and recommendation adopted)*,
2020 WL 3977608 (D. Or. July 14, 2020) ........ 33

*Chase v. Gordon, Aylworth & Tami, P.C.*,
No. 3:18-cv-00568-AC, 2020 WL 1644310 (D. Or. Feb. 14, 2020) ........ 33

*Chesterman v. Barmon*,
753 P.2d 404 (Or. 1988) (en banc) ........ 29

*Conroy v. Mewshaw*,
No. 3:21-cv-00298-SB, 2022 WL 2981453 (D. Or. July 28, 2022) ........ 33, 34

*Conroy v. Mewshaw*,
No. 3:21-cv-00298-SB, 2022 WL 602354 (D. Or. Mar. 1, 2022) ........ 8, 33

*Coppedge v. City of Hillsboro*,
No. 3:21-CV-00146-YY, 2022 WL 21828133 (D. Or. Mar. 31, 2022) ........ 21

*Cortez v. Nacco Material Handling Grp., Inc.*,
337 P.3d 111 (Or. 2014) ........ 17, 18

## TABLE OF AUTHORITIES

**Page**

*Cox v. Mariposa County*,
445 F. Supp. 3d 804 (E.D. Cal. 2020)....................10

*Davoodian v. Rivera*,
535 P.3d 309 (Or. Ct. App. 2023)....................9

*Deep Photonics Corp. v. LaChapelle*,
385 P.3d 1226 (Or. Ct. App. 2016)....................9

*DeHart v. Tofte*,
533 P.3d 829 (Or. Ct. App. 2023)....................9, 13, 14

*Dossett v. Ho-Chunk, Inc.*,
472 F. Supp. 3d 900 (D. Or. 2020)....................11, 31, 32, 40

*Green Bldg. Initiative, Inc. v. Peacock*,
No. 3:24-cv-00298-SI, 2025 WL 1434993 (D. Or. May 19, 2025)....................8, 28

*Green Building Initiative, Inc. v. Peacock*,
350 F.R.D. 289 (D. Or. 2025)....................40

*Green v. Miss U.S. of Am., LLC*,
52 F.4th 773 (9th Cir. 2022)....................22

*Harrington v. Airbnb, Inc.*,
348 F. Supp. 3d 1085 (D. Or. 2018)....................22, 24

*Imperial Sovereign Ct. of Montana v. Knudsen*,
170 F.4th 820 (9th Cir. 2026)....................11, 12

*Johnson v. Or. Bur. of Lab. & Indus.*,
415 P.3d 1071 (Or. Ct. App. 2018)....................26

*Lahmann v. Grand Aerie of Fraternal Ord. of Eagles*,
43 P.3d 1130 (Or. Ct. App. 2002)....................22, 23, 24

*Lloyd Lions Club of Portland v. Int'l Ass'n of Lions Clubs*,
724 P.2d 887 (Or. Ct. App. 1986)....................22

*Lowes v. Thompson*,
573 P.3d 377 (Or. 2025) (en banc)....................8

*M.S.G. v. Bean*,
No. 3:19-cv-00325-HZ, 2019 WL 6310720 (D. Or. Nov. 25, 2019)....................9

**TABLE OF AUTHORITIES**

**Page**

*Marquard v. New Penn Fin., LLC*,
No. 3:17-cv-00549-SI, 2017 WL 4227685 (D. Or. Sept. 22, 2017) ........................................23

*Mas v. Sound Lounge, (findings and recommendation adopted)*,
2021 WL 5355921 (D. Or. Nov. 16, 2021)........................................................................26

*Mas v. Sound Lounge, LLC*,
No. 1:20-CV-02176-CL, 2021 WL 5356970 (D. Or. Oct. 27, 2021) .....................................26

*McGanty v. Staudenraus*,
901 P.2d 841 (Or. 1995) ..............................................................................................29

*Milkovich v. Lorain J. Co.*,
497 U.S. 1 (1990)........................................................................................................31

*Mission Working Dogs v. Brookfield Props. Retail, Inc.*,
770 F. Supp. 3d 215 (D. Me. 2025) ...........................................................................36, 38

*Morasch v. Hood*,
222 P.3d 1125 (Or. Ct. App. 2009)...............................................................................27

*Mouktabis v. Clackamas Cnty.*,
536 P.3d 1037 (Or. Ct. App. 2023)............................................................................9, 12

*Mullen v. Meredith Corp.*,
353 P.3d 598 (Or. Ct. App. 2015)..............................................................................9, 10

*Neumann v. Liles*,
369 P.3d 1117 (Or. 2016) .........................................................................................31, 32

*C.G. ex rel. P.G. v. Saucon Valley Sch. Dist.*,
571 F. Supp. 3d 430 (E.D. Pa. 2021) ..............................................................................36

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
890 F.3d 828 (9th Cir.), *as amended*, 897 F.3d 1224 (9th Cir. 2018) ............................. passim

*Porter v. Oba, Inc.*,
42 P.3d 931 (Or. Ct. App. 2002)....................................................................................30

*RMS Tech., Inc. v. Stenbock*,
832 P.2d 1260 (Or. Ct. App. 1992)................................................................................30

*Sadler v. Fred Meyer Stores, Inc.*,
No. 3:17-CV-1269-SI, 2018 WL 4854064 (D. Or. Oct. 5, 2018)..........................26, 36, 37, 39

## TABLE OF AUTHORITIES


**Page**

*Shelley v. Leisure Hotel Grp., LLC*,
No. 4:23-cv-02007, 2024 WL 235218 (N.D. Cal. Jan. 22, 2024)....36

*State v. Kellar*,
247 P.3d 1232 (Or. 2011)....15

*Tallman v. Spencer*,
No. 2:23-cv-01773, 2026 WL 496434 (D. Or. Feb. 23, 2026)....40

*Tokarski v. Wildfang*,
496 P.3d 22 (Or. Ct. App. 2021)....8, 10

*United States v. Cole*,
No. 3:13-CV-01606-SI, 2014 WL 1303143 (D. Or. Mar. 31, 2014)....16

*Williams v. California*,
764 F.3d 1002 (9th Cir. 2014)....16

*Wynn v. Bloom*,
No. 2:18-cv-00609-JCM-GWF, 2019 WL 1983044 (D. Nev. May 2, 2019)....34

**Statutes**

Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12191 et seq. (1990)....17, 32, 38, 39

Oregon Public Accommodations Act, ORS 659A.400 et seq.....22

ORS 31.150.... passim

ORS 31.150(1)....27

ORS 31.150(2)....9, 10, 27

ORS 31.150 (2)(a)(D)....9, 11

ORS 31.150(4)....9, 10

ORS 31.152(3)....40

ORS 63.165(1)....17, 18

ORS 174.010....15

ORS 659A.142....19, 25, 26

ORS 659A.143....18, 19, 25, 26

# TABLE OF AUTHORITIES

Page

ORS 659A.400 ....................18, 23

ORS 659A.400(1)(a) ....................22, 23, 24

ORS 659A.400(2)(e) ....................25

ORS § 31.150(2)[(a)](D) ....................10

ORS § 659A.142 ....................18, 21, 25

ORS § 659A.142(4) ....................18

ORS § 659A.143 ....................26

ORS § 659A.143(1)–(9) ....................26

ORS § 659A.400(1)(e) ....................24

**Rules**

Fed. R. Civ. P. 12(b)(6) ....................7, 8, 16, 28

Fed. R. Civ. P. 56(d) ....................34

Fed. R. Civ. P. 56(d)(2) ....................34

Fed. R. Civ. Proc. 56 ....................7, 8, 34

**Regulations**

28 C.F.R. § 36.302(c)(2)(i) ....................37, 39

28 C.F.R. § 36.302(c)(4) ....................38

**Constitutional Provisions**

U.S. Const. amend. I ....................12, 13, 31

**Other Authorities**

*Frequently Asked Questions about Service Animals and the ADA*, U.S. Dep't of Justice (last updated Feb. 28, 2020), available at https://www.ada.gov/resources/service-animals-faqs/ ....................39

Montana House Bill 359 (HB 359) ....................12

Plaintiff Joseph Luna ("Mr. Luna") files this response in opposition to Defendants Louis Lamp's ("Lamp") and Get Out the Float, LLC's ("GOTF") (together, "Defendants"), Special Motion to Strike ("Motion," ECF No. 27).

## I. INTRODUCTION

At bottom, Defendants attempt to weaponize Oregon's anti-SLAPP statute against the type of plaintiff it was intended to protect by inappropriately seeking to convert a disability discrimination case into a speech case. Defendants do so by focusing on expressive activity that is—at most—background context. The fact that Defendants do not challenge, under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), FRCP 56, or otherwise, the federal claims asserted based on the same facts—suggests that Defendants' primary goal is to intimidate Mr. Luna through the use of the anti-SLAPP statute's mandatory fee provision.

Defendants' Motion should be denied in full because, contrary to Defendants' conclusory assertions, the Second Amended Complaint ("SAC") does not seek to punish Defendants' expression. Rather, it seeks to redress harm stemming from Defendants' removal and exclusion of Mr. Luna from a public venue, and subsequent blacklisting and retaliation. Defendants' thinly supported challenges should be summarily rejected because Mr. Luna's claims do not target protected conduct connected to an issue of public interest, and Mr. Luna adequately pleads each challenged claim.

## II. LEGAL STANDARD

Defendants move to strike under Oregon's anti-SLAPP statute, ORS 31.150, and move to dismiss and for summary judgment under the federal rules all of Mr. Luna's state law claims asserted against them. (Mot. at 2.)

"ORS 31.150 provides a mechanism for a defendant to move to strike certain nonmeritorious claims predicated on speech and petitioning activity potentially entitled to constitutional protection." *Tokarski v. Wildfang*, 496 P.3d 22, 24 (Or. Ct. App. 2021). In general, "[t]he statute seeks 'to minimize the effect of strategic suits intended to deter persons from expressing their views.'" *Lowes v. Thompson*, 573 P.3d 377, 382 (Or. 2025) (en banc) citation omitted).

To avoid "the stark collision of [a state's] rules of procedure with the governing Federal Rules of Civil Procedure while in a federal district court[,]" *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), *as amended*, 897 F.3d 1224 (9th Cir. 2018), when a defendant's "anti-SLAPP motion challenges only the legal sufficiency of a claim," the court applies "the Federal Rule of Civil Procedure 12(b)(6) standard and consider[s] whether a claim is properly stated." *Green Bldg. Initiative, Inc. v. Peacock*, No. 3:24-cv-00298-SI, 2025 WL 1434993, at *3 (D. Or. May 19, 2025) (citations omitted).

"[W]hen an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply." *Conroy v. Mewshaw*, No. 3:21-cv-00298-SB, 2022 WL 602354, at *1 (D. Or. Mar. 1, 2022) (citation omitted).

## III. ARGUMENT

### 1. Defendants' Use of Anti-SLAPP Is Inappropriate—Mr. Luna's Claims Do Not Arise from Protected Conduct Connected to a Public Issue.

Defendants' Motion should be denied at the outset because Defendants fail to show—or meaningfully engaged with the relevant analysis to show—that Mr. Luna's claims are part of a "strategic suit[] intended to deter persons from expressing their views.'" *Lowes*, 573 P.3d at 382.

"A defendant making a special motion to strike . . . has the initial burden of making a prima facie showing that the claim against which the motion is made arises out of a statement,

document or conduct described in [ORS 31.150(2)]." ORS 31.150(4). Where, as here, a defendant moves to strike claims pursuant to ORS 31.150 (2)(a)(D) (Mot. at 7), "a defendant must demonstrate both that their conduct (1) was in furtherance of the constitutional right of free speech; and (2) was in connection with a public issue or an issue of public interest." *DeHart v. Tofte*, 533 P.3d 829, 843 (Or. Ct. App. 2023) (simplified).

When courts "determine whether a claim arises out of [protected] conduct described in ORS 31.150(2) . . . [they] examine the *conduct that is targeted by the claims*[.]" *Mouktabis v. Clackamas Cnty.*, 536 P.3d 1037, 1045 (Or. Ct. App. 2023). (citation omitted; emphasis added). Indeed, "[t]he inquiry turns on the nature of the claims asserted against a defendant and the alleged actions of the defendant giving rise to those claims." *Id.*; *see also M.S.G. v. Bean*, No. 3:19-cv-00325-HZ, 2019 WL 6310720, at *4 (D. Or. Nov. 25, 2019) ("[I]t is the defendant's conduct that drives the inquiry, not the nature of the cause of action.") (citation omitted). "To 'arise out of' the conduct[,] the act underlying the claim itself must have been an act in furtherance of the [protected] right . . . and not just associated with it." *Mouktabis*, 536 P.3d at 1046 (quoting *Deep Photonics Corp. v. LaChapelle*, 385 P.3d 1226, 1135 (Or. Ct. App. 2016)). The term "in furtherance" is meant to "protect[] conduct that advances or promotes the exercise of the constitutional rights of petition or free speech in connection with a public issue or an issue of public interest." *Davoodian v. Rivera*, 535 P.3d 309, 317 (Or. Ct. App. 2023)

Importantly, when a defendant moves to strike multiple claims, ORS 31.150(4) requires that the defendant satisfy that "initial burden of making a prima facie showing" that the anti-SLAPP statute applies to each "claim against which the motion is made[.]" ORS 31.150(4); *see also Mullen v. Meredith Corp.*, 353 P.3d 598, 604 (Or. Ct. App. 2015) ("[W]e determine whether defendants have made their *prima facie* showing that plaintiffs' claims—for negligence and

emotional distress . . . 'arise out of a statement, document or conduct described in ORS 31.150(2)[.]'") (simplified); *Tokarski*, 496 P.3d at 26 (Or. Ct. App. 2021) ("By its terms, ORS 31.150 authorizes a motion to strike a 'claim' arising out of the specified protected activities. That indicates that the legislature intended that such motions would employ a claim-by-claim analysis as to whether a particular claim should be stricken.") (citation omitted).

Therefore, this Court should first determine whether Defendants have established that the conduct from which each of Mr. Luna's claims arise is in furtherance of a protected right. Only if the Court finds that Defendants have satisfied that initial burden, should it consider whether the claims are legally sufficient. Defendants' Motion fails at both turns.

**a. Mr. Luna's Claims Arise from Defendants' Discriminatory Acts, Not from Defendants' Expressive Conduct.**

Defendants must first make a prima facie showing that the conduct from which each of Mr. Luna's claims arise is in furtherance of a protected right. *See* ORS 31.150(4); *see also Mullen*, 353 P.3d at 604. Defendants' Motion fails at the first step on multiple grounds.

First, Defendants do not even attempt to identify, much less analyze, the conduct giving rise to each of Mr. Luna's claims. Rather, Defendants inappropriately overgeneralize the nature of the claims asserted, then summarily conclude that "[s]ince Defendant's activity in this case was communicative and at least directly collateral to the conduct Plaintiff is challenging, ORS § 31.150 (2)[(a)](D) applies." (Mot. at 6-7.) Defendants do not address any of the relevant allegations or conduct supporting each of the five claims against which they move. Courts in this circuit have denied anti-SLAPP motions on that ground alone. *See Cox v. Mariposa County*, 445 F. Supp. 3d 804, 821 (E.D. Cal. 2020) ("To carry its burden under the first prong of an anti-SLAPP motion, the moving defendant must identify the acts supplying the elements of the claims they seek to strike and then show that such activity falls into one or more of the four

categories of protected activity set forth in [the anti-SLAPP statute]. The shorthand—and shortcuts—in the []Defendants' briefing leave the []Defendants well short of that mark.") (citation omitted).[1]

Second, even if Defendants' overgeneralized description of the nature of Mr. Luna's claims was accurate (which it is not), anti-SLAPP still does not fit here. Defendants argue the Ninth Circuit's "conclu[sion] that drag queens hosting an event called 'drag story hour' were engaging in expressive conduct . . . is not materially different from people 'expressing a particular persona' by dressing up in an animal costume." (Mot. at 6, quoting *Imperial Sovereign Ct. of Montana v. Knudsen*, 170 F.4th 820, 855 (9th Cir. 2026)). Defendants then conclude without explanation that their conduct was "communicative and at least directly collateral to the conduct Plaintiff is challenging[.]" (*Id.* at 7.) Neither of those conclusions discuss the conduct from which Mr. Luna's claims arise. Nor do they show that such conduct occurred "in furtherance of the exercise of . . .the constitutional right of free speech[.]" ORS 31.150(2)(a)(D).

Setting aside the conclusory nature of Defendants' arguments, those arguments do not even accurately describe the basis for many of Mr. Luna's claims. Mr. Luna alleges that Lamp personally removed Mr. Luna and Scout from the convention, caused Mr. Luna to forfeit his volunteer credentials, terminated his hotel accommodation, and permanently banned him from attending or volunteering at future GOTF events. (SAC ¶¶ 33, 38–42, 46–47.) Mr. Luna further alleges that Lamp blacklisted him and Scout, resulting in their exclusion from attending and volunteering at other conventions. (*Id.* ¶¶ 53–68.) These claims arise from Defendants' acts of

---

[1] "Oregon courts look to California case law in construing Oregon's anti-SLAPP statute because Oregon's law was modeled on California statutes and it was intended that California case law would inform Oregon courts regarding the application of ORS 31.150." *Dossett v. Ho-Chunk, Inc.*, 472 F. Supp. 3d 900, 908 n.4 (simplified).

exclusion, discrimination, retaliation, and interference, not any "performance" of a particular persona. Defendants do not address, much less explain, how their acts of exclusion and retaliation—the primary conduct giving rise to most of Mr. Luna's claims—were "communicative" or otherwise constitutionally protected.

Indeed, Defendants concede that the conduct they identify as "communicative" and "protected" is at best "collateral" to Mr. Luna's claims. (*See* Mot. at 7, ("Even if Plaintiff has not necessarily filed claims based directly on Defendant's expressive conduct, the Anti-SLAPP statute still applies.") ORS 31.150 asks whether a plaintiff's claims arise *from* protected conduct, it does not ask if protected conduct occurred somewhere in the background. *See Mouktabis*, 536 P.3d at 1046 ("[T]he act underlying the claim itself must have been an act in furtherance of the right to petition and not just associated with it.") (citation omitted). Defendants' Motion fails on that basis.

The cases on which Defendants rely are inapposite and highlight that shortcoming. For example, Defendants cite *Knudsen*, for the proposition that "'expressing a particular persona . . . is undoubtedly purely expressive activity' . . . which makes it speech that is subject to First Amendment protection." (Mot. at 6 (quoting *Knudsen*, 170 F.4th at 855).) In *Knudsen*, the Ninth Circuit held that because performing a "drag story hours are purely expressive activity . . . the drag-story-hour provision [of House Bill 359 targeting that conduct was] a content-based restriction subject to strict scrutiny." *Id.* at 855. Even assuming that the Court finds Defendants' comparison between drag-story-hours and "dressing up in an animal costume" apt, that comparison has no bearing on *any* of Mr. Luna's claims. Mr. Luna is not seeking to restrict Defendants' right to perform or express a particular persona. On the contrary, Mr. Luna

challenges Defendants' discriminatory actions, which have had the effect of stifling *his* rights to do just that.

Defendants also rely on *DeHart* for the proposition that the relevant standard is satisfied when the challenged conduct is "communicative." (Mot. at 7.) Defendants fail to articulate how excluding Mr. Luna from the event in question was "communicative," their citation to *DeHart* does not cure that failure because the facts in *DeHart* are clearly distinguishable from those present here. In *DeHart*, elected public school officials sued students' parents who posted information on Facebook about the plaintiffs following their support of a ban on materials supporting Black Lives Matter in schools. *See DeHart*, 533 P.3d at 832-33. The defendants moved to strike the plaintiffs' claims, and the Oregon Court of Appeals came to the uncontroversial conclusion that the relevant conduct at issue—posting information on Facebook—was "communicative" and was either protected First Amendment speech or in furtherance of that right. *Id.* at 843-44.

Defendants do not explain how the conduct at issue here—Defendants' discriminatory acts of exclusion, discrimination, retaliation, and interference—are akin to a post on Facebook. Instead, Defendants summarily conclude that "Defendant[s'] activity in this case was communicative" and move on. (Mot. at 7.)

Thus, Defendants' Motion fails at the first step for multiple reasons. Defendants have failed to even identify the conduct on which each of Mr. Luna's claims is based, much less make a prima facie showing that any of the five claims they challenge arises out of conduct in furtherance of the exercise of a constitutional right. Contrary to Defendants' mischaracterization, the relevant conduct that *actually* gave rise to *most* of Mr. Luna's claims was neither constitutionally protected nor in furtherance of a protected right. Accordingly, the Court should

deny Defendants' Motion. *See C.R. v. Eugene Sch. Dist. 4J*, 481 P.3d 334, 340 (Or. Ct. App. 2021) (reversing grant of the defendant's anti-SLAPP motion because the defendant failed to satisfy its initial burden of establishing the claims arise out of conduct or statements made in connection with a public issue.)

**b. Defendants Have Not Connected the Conduct Underlying Mr. Luna's Claims to Any Public Issue or Issue of Public Interest.**

The second step of the preliminary analysis requires the Defendants to demonstrate "that their conduct . . . was in connection with a public issue or an issue of public interest." *DeHart*, 533 P.3d at 843 (simplified). Defendants' Motion also fails at this step.

Defendants assert—without supporting authority—that "[b]ased on the common-sense meaning of th[e] phrase ['an issue that is of interest to the public'], a convention where people gather to express individual characters. . . and thereby engage in expressive conduct, is a matter of public interest." (Mot. at 7.) But again, this is not the conduct Mr. Luna is challenging. Mr. Luna challenges Defendants' discriminatory exclusion of him from the convention, not their right to hold the convention.

As an initial point, Defendants argue that because the conduct they have (incorrectly) identified is purportedly in furtherance of the exercise of the constitutional right of free speech, it necessarily concerns an issue that is of interest to the public. (Mot. at 7, "[A] convention where people . . . engage in expressive conduct, is a matter of public interest. The public has an interest in the freedom to engage in expressive conduct like this, regardless of whether it is a drag show or a 'furry' convention.") But that conclusion would obviate the need for courts to consider the second half of the statute's requirement because under that construction, *any* conduct found to be in furtherance of the right to free speech would thereby also concern an issue of interest to the

public. That application "results in a redundancy," which Oregon courts "seek to avoid in interpreting statutes." *State v. Kellar*, 247 P.3d 1232, 1237 (Or. 2011); *see also* ORS 174.010.

Further, while Oregon courts liberally construe the anti-SLAPP statute in favor of the exercise of the rights of expression it protects, that construction is not so liberal that it functions as a judicial rubber stamp for motions brought under ORS 31.150. Instead, it requires affirmative tethering of the challenged conduct (here, the exclusion of Mr. Luna) to an issue that is of interest to the public. Defendants have done no such tethering—they merely handwave the requirement and conclude that "[t]he public has an interest in the freedom to engage in expressive conduct like this, regardless of whether it is a drag show or a 'furry' convention." (Mot. at 7.)

Where "defendants fail to connect whether" the conduct at issue "qualifies as a matter of public concern," courts deny motions to strike under Oregon's anti-SLAPP statute. *See All. for Tribal Clean Energy v. 7Skyline, LLC*, No. 3:24-CV-01818-JR, 2025 WL 2781756, at *10 (D. Or. Sept. 16, 2025) ("[D]efendants fail to connect whether purported false statements . . . qualifies as a matter of public concern. No caselaw cited by defendants supports such a proposition. . . . Accordingly, defendants fail to meet their burden of demonstrating conduct in furtherance of the exercise of the constitutional right of free speech in connection with a public issue or an issue of public interest."), *findings and recommendation adopted*, 2026 WL 163056 (D. Or. Jan. 21, 2026). Here, Defendants' conclusory assertion in passing relating to the "public interest" requirement is insufficient to satisfy their initial burden.

In sum, Defendants' Motion is not only at odds with the intended purpose of Oregon's anti-SLAPP statute but is also legally insufficient at every turn. Defendants fail to identify or analyze the conduct, giving rise to each of Mr. Luna's claims and as a result, fail to demonstrate

that the relevant conduct was in furtherance of the exercise of a constitutional right or was connected to a public issue. Accordingly, the Court should deny Defendants' Motion.

**2. The Challenged Claims Are Legally Sufficient Under Rule 12(b)(6).**

As stated above, Rule 12(b)(6)'s pleading standard applies to Defendants' legal challenge under Oregon's anti-SLAPP statute. Because Defendants fail to satisfy their initial prima facie burden to demonstrate that Mr. Luna's claims arise out of conduct in furtherance of a protected right, their anti-SLAPP motion should be denied. Mr. Luna addresses Defendants' additional arguments relating to the pleadings in light of Defendants' assertion that they are simultaneously moving for dismissal under Rule 12(b)(6). (Mot. at 21.)

Under Rule 12(b)(6), a plaintiff must provide "factual allegations sufficient to 'state a claim to relief that is plausible on its face'" and "must set forth 'more than labels and conclusions . . . of the elements of a cause of action" to survive a motion to dismiss. *Williams v. California*, 764 F.3d 1002, 1007 (9th Cir. 2014) (citations omitted). Courts considering motions to dismiss "must accept the allegations of the complaint as true and construe them in the light most favorable to the plaintiff." *Id.* at 1007. Indeed, "[a]ll reasonable inferences from the factual allegations must be drawn in favor of the plaintiff." *United States v. Cole*, No. 3:13-CV-01606-SI, 2014 WL 1303143, at *2 (D. Or. Mar. 31, 2014) (citation omitted).

**a. Lamp Personally Participated in the Challenged Conduct.**

Defendants conclude without analysis that Lamp is immune from tort liability due to GOTF's status as an LLC, and in doing so, mischaracterize the nature of Mr. Luna's claims against Lamp. Specifically, Lamp argues that the SAC "seems to allege that Defendant Louis Lamp is liable solely because he is the Manager of Get out the Float LLC . . . [but] Defendant

Louis Lamp cannot be personally liable for acts of his LLC merely because of his status as the LLC's Manager." (Mot. at 13.) Mr. Luna makes no such claims.

To the contrary, Mr. Luna alleges that Lamp directly participated in the conduct giving rise to the relevant claims (Counts 5, 7, 8, and 9). (*See, e.g.*, SAC ¶ 33, alleging that "Lamp entered the main stage/bounce house room and escorted Mr. Luna and Scout out of the SCCC"; *id.* ¶ 46, alleging that Mr. Luna "received a letter . . . from Lamp on behalf of Get Out The Float LLC . . . informing Mr. Luna that he had been 'permanently banned[.]'"; *id.* ¶ 155, alleging that "[o]n information and belief, Lamp has marked or identified Mr. Luna and Scout on an internal list or database[.]"; *id.* ¶ 160, alleging that "Lamp has stated to one or more third parties that Mr. Luna is not entitled to be accompanied by Scout under the ADA because Scout is 'aggressive.'").

In support of this argument, Defendants cite *Cortez v. Nacco Material Handling Grp., Inc.*, 337 P.3d 111 (Or. 2014). *Cortez* is not only distinguishable from the facts at issue here, but the court's analysis demonstrates the appropriateness of the type of claims Mr. Luna asserts against Lamp. In *Cortez*, an employee sued his employer (an LLC) and the LLC's owner after "a forklift hit and severely injured him." *Id.* at 112. The Oregon Supreme Court discussed the nature of the protections that a limited liability company offers to its members. *See id.* at 117-19. The *Cortez* court stated that a "a member or a manager of an LLC is not personally liable for the LLC's debts, obligations, and liabilities 'solely by reason of being or acting as a member or manager' of the LLC." *Id.* at 117 (citations omitted). However, no such allegations are present in this case.

More applicable to this case is the court's repeated and unambiguous declarations that managers in Lamp's situation remain liable for their own conduct. *See id.* at 118 ("[T]he ULLCA, and by extension in ORS 63.165(1), was not intended to immunize members and

managers from personal liability for their actions in managing an LLC."); *id.* ("[M]embers or managers will remain personally liable for their own acts[.]"); *id.* at 119 ("[A] member or manager remains responsible for his or her acts or omissions to the extent those acts or omissions would be actionable against the member or manager if that person were acting in an individual capacity."); *id.* ("ORS 63.165(1) does not shield [the manager] from responsibility for its own negligent acts[.]").

*Cortez* clearly demonstrates that an LLC manager who personally participates in tortious conduct remains personally liable for that conduct. *See id.* at 118 ("A member or manager is responsible for acts or omissions to the extent those acts or omissions would be actionable in contract or tort against the member or manager if that person were acting in an individual capacity.") (citation omitted). Mr. Luna alleges that Lamp personally engaged in tortious, discriminatory, and defamatory actions against Mr. Luna. (*See e.g.*, SAC ¶¶ 33, 46, 155, 160.) *Cortez* confirms the viability of those types of claims. Neither *Cortez* nor ORS 63.165(1) provide a basis for dismissing the claims against him. Accordingly, the Court should deny Defendants' Motion on this ground.

**b. Mr. Luna Adequately Alleges Claims for Disability Discrimination Under Oregon Law.**

Defendants seek dismissal of Mr. Luna's discrimination claims under ORS § 659A.142 and ORS 659A.143. (Mot. at 14-15.)

Oregon law provides in relevant part that "[i]t is an unlawful practice for any place of public accommodation . . . as defined in ORS 659A.400, or any person acting on behalf of such place, to make any distinction, discrimination or restriction because a customer or patron is an individual with a disability." ORS § 659A.142(4).

With respect to Mr. Luna's discrimination claims, Defendants appear to move for dismissal on the following three grounds: (1) Mr. Luna was not a customer or patron, (2) GOTF is not a place of public accommodation, and (3) ORS 659A.143 does not create a separate claim for relief. (Mot. at 14-15.) Those arguments fail because the SAC plausibly alleges that Mr. Luna qualifies as both a customer and patron of GOTF and that GOTF qualifies as a place of public accommodation under Oregon law. Moreover, Defendants' separate challenge to Mr. Luna's ORS 659A.143 claim fails for many of the same reasons, and one additional reason—it rests on an incorrect characterization of that statute.

(i) **Mr. Luna Was a Customer and Patron of GOTF.**

Defendants' argument that "Plaintiff's fifth claim does not allege that he was a customer or a patron . . . [and that] [t]he allegation is completely missing from the Second Amended Complaint" (Mot. at 14) attempts to elevate form over substance. Mr. Luna more than sufficiently alleges that he qualifies as a customer or patron of GOTF under Oregon law, allegations that cannot be seriously disputed in light of Defendants' own evidence confirming those allegations.[2]

"Unlike 'place of public accommodation,' neither 'customer' nor 'patron' is a statutorily defined term in the context of ORS 659A.142." *Abraham v. Corizon Health, Inc.*, 511 P.3d 1083, 1087 (Or. 2022). Interpreting the meaning of both terms, the Oregon Supreme Court in *Abraham* first looked to the dictionary definitions of those terms to find their plain meaning. *Id.* at 1087-88. With respect to the term "customer," the court held that the definition included "one that patronizes or uses the services (as of a library, restaurant, or theatre)" and "[a]lthough one

[2] (*See* Decl. Louis Lamp Supp. Defs.' Special Mot. Strike ("Lamp Decl.") ¶ 4, stating that he has known Mr. Luna for a few years because of Mr. Luna's repeated attendance at GOTF.)

subsense of 'customer' does refer to the *purchase* of a service, the coordinate subsense suggests that simply using a service may be enough to be considered a customer." *Id.* at 1088 (citation omitted).

Similarly, with respect to the term "patron," the court held that the definition included things like a "steady or regular client" or "one who uses the services of a library," and "although the term 'patron' may connote regularity, it is not defined to exclude the use of services that are free or for which there may be no ready alternative." *Id.* (citation omitted).

Here, Mr. Luna alleged facts that give rise to a reasonable inference that he was both a customer *and* a patron of GOTF. First, Mr. Luna is a customer of GOTF because he attended, volunteered at, and used the services offered by GOTF. (*See* SAC ¶ 19, "[A]s a result of his history of volunteering, GOTF provided him with certain benefits[.]"; *id.* ¶ 18, "On February 6, 2025, Mr. Luna and Scout arrived at the SCCC *to attend the GOTF convention.*" (emphasis added); *id.* ¶ 22, "Mr. Luna walked into the SCCC hallway while still searching for his roommate and began looking at vendor goods as he passed by."; *id.* ¶ 50, "Similar to volunteers at GOTF, volunteers at Furlandia receive various benefits beyond those received by regular attendees[.]") (emphasis added); *id.* ¶ 153, "Mr. Luna has obtained . . . various economic advantages as a result of attending and volunteering at GOTF[.]").

Certainly, attendees of GOTF are "us[ing] the services" of that convention. *See Abraham*, 511 P.3d at 1088 (providing the dictionary definition of "customer"); (*see also* Mot. at 6, providing that Defendants "hosts an event . . . [where] everybody dresses up in animal costumes and attends an event that hosts things like vendors and lighthearted fun activities or events (like a bounce house)"). Indeed, just before Lamp removed Mr. Luna and Scout from the convention, he was browsing merchandise offered for sale by venders participating in the convention. (*See* SAC

¶ 22.) Those allegations plausibly establish that Mr. Luna used GOTF's convention services and therefore qualified as a customer under *Abraham*.

Moreover, Mr. Luna independently satisfies the definition of a patron of GOTF under Oregon law because he was a "steady or regular" attendee of GOTF, as shown in his pleadings, and confirmed by Lamp himself. (*See* SAC ¶¶ 69-70, providing that "Mr. Luna often maintains a booth at conventions, expos, and events that he attends, from which he generates income . . . [s]pecifically, at 'furry' conventions like GOTF and Furlandia, Mr. Luna has made as much as $6,000 at a single event,"; *id.* ¶ 19, "[A]s a result of his history of volunteering, GOTF provided him with certain benefits including free lodging at a nearby hotel."); (Lamp Decl. ¶ 4, providing that Lamp has "known Plaintiff Joseph Luna for a few years *because he has attended prior Get out the Float conventions*.") (emphasis added). Crucially, Mr. Luna accessed the services provided by Defendants, making him a "patron" for the purposes of ORS § 659A.142. *See, e.g.*, *Coppedge v. City of Hillsboro*, No. 3:21-CV-00146-YY, 2022 WL 21828133, at *10 (D. Or. Mar. 31, 2022) ("In calling the HPD's non-emergency line for support, plaintiff used the HPD's services, making her a patron.").

In sum, the SAC alleges that Mr. Luna attended GOTF 2025, used its services, received benefits through volunteering, and had attended prior GOTF conventions. Those allegations plausibly establish that Mr. Luna was both a customer and a patron under Oregon law. Therefore, Defendants' Motion should be denied, as it provides no basis for dismissal on this ground.

(ii) **Mr. Luna Plausibly Alleges That GOTF Is a Place of Public Accommodation.**

Defendants move to dismiss Mr. Luna's disability discrimination claims on the ground that GOTF "is a limited liability company, and it hosts a private convention, or a *private* event,

which is not a physical 'place' nor is it 'public.'" (Mot. at 14.) That argument is fatally flawed and must be rejected. First, the case on which Defendants' rely expressly forecloses their argument that GOTF must be a physical place, and second, GOTF is not distinctly private in its nature such that it would fall under the relevant exemption.

In contrast to the terms "customer" and "patron" Oregon statutes *do* define the term "place of public accommodation." *See* ORS 659A.400(1)(a) (providing in relevant part that a place of accommodation is "[a]ny place ***or service*** offering to the public accommodations, advantages, facilities or privileges whether in the nature of goods, services, lodgings, amusements, transportation or otherwise.") (emphasis added).

"The [Oregon Public Accommodations Act] is analyzed under the decades-old *Lahmann* test, which considers whether an organization is a 'place of public accommodation' by asking: '(1) whether it is a business or commercial enterprise and (2) whether its membership policies are so unselective that the organization can fairly be said to offer its services to the public.'" *Green v. Miss U.S. of Am., LLC*, 52 F.4th 773, 798 (9th Cir. 2022) (quoting *Abraham*, 511 P.3d at 1094).

This Court has recognized that "the definition of a place of public accommodation under the OPAA is intended to be a broad one and to apply to all types of businesses which offer goods and/or services to the public." *Harrington v. Airbnb, Inc.*, 348 F. Supp. 3d 1085, 1093 (D. Or. 2018) (simplified). Whether a service is for-profit or non-profit is not dispositive as to whether it is a business or commercial enterprise under the OPAA. *See Lloyd Lions Club of Portland v. Int'l Ass'n of Lions Clubs*, 724 P.2d 887, 891 (Or. Ct. App. 1986) (holding that "[t]here is no automatic equivalency between an organization's overriding noncommercial character and the nature of specific activities it undertakes which are independent of its noncommercial

activities."). Indeed, "even community service organizations may be business or commercial enterprises for the purposes of [the OPAA] . . . [and even] some private organizations may have such unrestrictive membership criteria that the organization is effectively open to the public." *Lahmann v. Grand Aerie of Fraternal Ord. of Eagles*, 43 P.3d 1130, 1134 (Or. Ct. App. 2002).

(iii) **Oregon Law Does Not Require a Place of Public Accommodation to Be a Physical Place.**

First, neither ORS 659A.400 nor 659A.142 carry a requirement that a place of public accommodation be a "physical place." *See generally* 659A.400, 659A.142. The Oregon Supreme Court could not have been clearer in that regard. *See e.g.*, *Abraham*, 511 P.3d at 1095 (holding that "[u]nder current law, a place of public accommodation *need not be a physical place at all*[.]") (emphasis added). Similarly, this Court has held that "both publicly and privately owned public accommodations are not limited to those services associated with a physical space." *See Marquard v. New Penn Fin., LLC*, No. 3:17-cv-00549-SI, 2017 WL 4227685, at *9-10 (D. Or. Sept. 22, 2017). Defendants' argument that GOTF's lack of physical presence precludes it from compliance with Oregon's anti-discrimination law is mistaken.

(iv) **GOTF Is Not Distinctly Private.**

Defendants argue that the Court should dismiss Mr. Luna's disability discrimination claim based on their unsupported conclusion that GOTF is "private." (Mot. at 14.)

As stated above, "[a] place of public accommodation" includes "[a]ny place or service offering to the public accommodations, advantages, facilities or privileges whether in the nature of goods, services, lodgings, amusements, transportation or otherwise." ORS 659A.400(1)(a). Although not expressly stated, it appears that Defendants are invoking the OPAA's exclusion for "[a]n institution, bona fide club or place of accommodation that is in its nature distinctly

private." ORS § 659A.400(1)(e). To the extent that Defendants attempt to invoke that exclusion, they do so incorrectly and their argument is without merit.

Court in Oregon, including this one, have found that even membership-based services are "de facto" open to the public if they are "so unselective in their membership criteria that they are effectively public." *Harrington*, 348 F.Supp.3d at 1092–93 (holding that "even though users must join Airbnb as a member . . . to be allowed access to Airbnb's online platform services . . . [p]laintiffs [had] sufficiently alleged . . . that Airbnb offers its services to all members and appears to allow almost anyone to become a member."); *Lahmann*, 180 Or. App. 420, 1035, 1037 (Or. Ct. App. 2002) (holding that a nominally private organization that excluded women but was otherwise "unselective in whom they admit" was effectively public for the purposes of the OPAA).

Here, Mr. Luna expressly alleges that GOTF contracts with a city-owned public venue to offer goods and services to the public. (SAC ¶ 79.) Mr. Luna alleges that GOTF offers to the public convention programming relating to dressing up in costumes, activities including a bounce house, food and beverages, access to vendors providing goods and services, opportunities to personally sell goods and services, volunteering opportunities to support convention programming, and additional benefits for volunteering. (*Id.* ¶¶ 5, 19, 25, 33, 70, 71, 79, 153.) Thus, Mr. Luna has alleged that GOTF offers "advantages, facilities or privileges, . . . goods, services, lodgings, [and] amusements" to the public. ORS 659A.400(1)(a).

Defendants dispute these *allegations* by putting forth a competing *factual assertion*, without evidence, that GOTF is a "private convention." (Mot. at 14.) Defendants' argument, however, is asserted as a legal challenge to Mr. Luna's pleadings. (*See Id.* at 13-14.) In this procedural posture, the allegations in the SAC are taken as true with all reasonable inferences

construed in Mr. Luna's favor. To the extent that Defendants wanted to argue that Mr. Luna's allegations are factually inaccurate, they should have asserted that argument as a factual challenge in their motion and put forth evidence in support of that assertion. Defendants failed to do so. Indeed, had Defendants put forth evidence supporting that assertion, that evidence would be rebutted by Mr. Luna's declaration that the first time he was exposed to any sort of selectiveness in his ability to register, attend, volunteer, and obtain the associated benefits thereto was only after the discriminatory events at issue in this case. (SAC ¶¶ 18–19; Decl. Joseph Luna Supp. Opp'n Defs.' Mot. Strike ("Luna Decl.") ¶ 19.)

In sum, Defendants cannot seek dismissal merely by labeling GOTF or its convention "private." Mr. Luna plausibly alleges that GOTF conducted events at a public convention center for the public, offered programming and other benefits to attendees, and accepted volunteers in exchange for benefits including free admission and lodging. Those allegations plausibly establish that GOTF is effectively open to the public, not distinctly private. Mr. Luna is not aware of any meaningful admission criteria imposed by GOTF prior to the discriminatory conduct at issue, nor did he allege any. (Luna Decl. ¶ 19.) The exclusion in ORS 659A.400(2)(e) therefore does not apply, and Defendants' Motion should be denied.

(v) **Mr. Luna's ORS 659A.143 Claim is Proper.**

Defendants erroneously conclude without analysis that ORS 659A.143 "does not create a separate claim[,]" and merely "regulates what people can or cannot ask about service animals." (Mot. at 15.) They also assert that because ORS 659A.143 "uses the same definition of 'place of public accommodation'" as ORS 659A.142, "any 'claim' under this statute would need to be dismissed for the same reasons" they challenge Mr. Luna's claims under ORS § 659A.142. (*Id.*) Those conclusions are incorrect and must be rejected.

First, ORS § 659A.143 is a comprehensive statute that defines many key terms and governs most aspects of how places of public accommodation, state services, programs, or activities may interact with—or what they may require of—service animals and people with disabilities. *See Johnson v. Or. Bur. of Lab. & Indus.*, 415 P.3d 1071, 1073 n.1 (Or. Ct. App. 2018) ("In 2013, the legislature enacted ORS 659A.143, which includes detailed provisions about assistance animals and, among other things, the circumstances under which places of public accommodation 'may not deny a person with a disability the right to be accompanied by an assistance animal in any area of the place that is open to the public or to business invitees.'") (simplified); *see also* ORS § 659A.143(1)–(9) (providing multiple definitions and guidelines for various topics.) It is unclear how Defendants can conclude that the statute "only regulates what people can or cannot ask about service animals." (Mot. at 15.)

Second, courts in Oregon, including this one, regularly entertain claims alleging discrimination under ORS 659A.143, especially when asserted in tandem with claims under ORS 659A.142. *See e.g.*, *Sadler v. Fred Meyer Stores, Inc.*, No. 3:17-CV-1269-SI, 2018 WL 4854064 (D. Or. Oct. 5, 2018) (denying the defendants' motion for summary judgment of discrimination claims asserted—as they are here—under ORS 659A.142 and 659A.143); *Mas v. Sound Lounge, LLC*, No. 1:20-CV-02176-CL, 2021 WL 5356970 (D. Or. Oct. 27, 2021), *findings and recommendation adopted*, 2021 WL 5355921 (D. Or. Nov. 16, 2021) (same).

Finally, as discussed at length above, Mr. Luna has sufficiently pleaded that GOTF qualifies as a "place of public accommodation" for the purposes of the OPAA. So, in sum, because Defendants make no new argument other than to summarily and incorrectly define the statute under which Mr. Luna properly asserts a claim, their arguments here should be rejected.

### c. Defendants' Motion to Strike Mr. Luna's Civil Conspiracy Allegations Should Be Denied.

Defendant moves this court to dismiss "'civil conspiracy' as a cause of action and basis for recovering damages" with prejudice on the basis that "[i]t does not exist as a separate cause of action under Oregon law." (Mot. at 15–16.) To the extent the Court reaches this issue under Defendants' anti-SLAPP motion, that motion should be denied for either of two reasons.

To the extent Defendants are correct that civil conspiracy "is not a claim," then it cannot be a basis for a special motion to strike under ORS 31.150. *See* ORS 31.150(1) ("A defendant may make a special motion to strike against *a claim* in a civil action[.]) (emphasis added); ORS 31.150(2) ("A special motion to strike may be made under this section against any *claim* in a civil action[.]") (emphasis added).

Defendants' argument is semantic and ignores the substance of Mr. Luna's conspiracy claim. Mr. Luna does not assert civil conspiracy as a standalone cause of action. (SAC ¶¶ 142-51). Rather, he has pled conspiracy as a theory of joint liability for the discriminatory removal and retaliatory actions taken against him. (*Id.*) Defendants are essentially challenging Mr. Luna's decision to label his conspiracy theory as "Count 7" in the SAC. That is not a basis for a motion to strike, it is an issue "of semantics rather than substance" and the Court should deny the Motion on that basis. *Amort v. NWFF, Inc*, NO. 6:11-cv-06396, 2012 WL 3756330, at *4 (D. Or. Aug. 27, 2012).

To the extent the Court agrees that Count 7 should be denominated differently, Mr. Luna requests leave to amend Count 7 to conform to the Court's preferred formulation of a civil conspiracy theory, but that is all that is required given that Defendants assert no argument that Mr. Luna failed adequately to plead the elements of a civil conspiracy. *Cf. Morasch v. Hood*, 222

P.3d 1125, 1131-32 (Or. Ct. App. 2009) (discussing the required elements of a civil conspiracy under Oregon law.)

Further, to the extent Mr. Luna's civil conspiracy allegations qualify as a "claim" within the meaning of ORS 31.150, Defendants' Motion should be denied because, as explained above, that claim does not arise out of conduct in furtherance of the exercise of a protected right.

Thus, to the extent that Defendants move to strike Mr. Luna's allegations under Oregon's anti-SLAPP statute, that motion should be denied. To the extent this issue is analyzed under FRCP 12(b)(6) and outside of the scope of Oregon's anti-SLAPP fee provision, Mr. Luna is willing to amend the SAC to alleviate Defendants' concerns about the nomenclature issue.

**d. Mr. Luna Alleges Interference by Lamp and GOTF with Third-Party Economic Relationships.**

With respect to Mr. Luna's intentional interference claim, Defendants move for dismissal on the ground that Defendants cannot be liable for interference with a contract to which they are a party. (Mot. at 16.) Defendants' argument fails because it rests on a misreading of the SAC.

To state a claim of intentional interference with economic relations under Oregon law, a plaintiff must plead "(1) the existence of a professional or business relationship; (2) intentional interference with that relationship or advantage; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and the harm to the relationship or prospective advantage; and (6) damages." *Green Bldg. Initiative, Inc.*, 2025 WL 1434993, at *4 (simplified).

Defendants challenge only the sufficiency of Mr. Luna's allegations relating to the third element, that is, that Defendants interfered with a prospective economic relationship between Mr. Luna and a third party. (*See* Mot. at 16, arguing that "[e]ssentially, Plaintiff is alleging that Defendants Get out the Float LLC and Louis Lamp 'interfered' with Plaintiff's relationship with

Get out the Float LLC.") Contrary to Defendants' characterization, Mr. Luna expressly alleges that "[o]n information and belief, the continued discrimination and retaliation against Mr. Luna has interfered with his ability to attend and enjoy various events including, but not limited to, Furlandia, the Portland Roadsters Show, 2026 Pacific Northwest Reptile & Exotic Animal Show, and more." (SAC ¶ 156.) Notably missing from that list is GOTF. Mr. Luna alleges that Defendants interfered with his prospective economic advantages with Furlandia and other third-parties, which satisfies the third-party relationship element under Oregon law.

Further, Defendants again fail to establish the applicability of their own argument based on the content of the very case they cite. Specifically, Defendants rely on *McGanty v. Staudenraus*, 901 P.2d 841, 846 (Or. 1995) to argue that Lamp cannot interfere with Mr. Luna's prospective economic relationship with GOTF because Lamp is an employee of GOTF. (Mot. 16.) As Defendants' parenthetical recognizes, that doctrine only applies if the "employee is acting in the scope of the employee's employment[.]" (*Id.*) Defendants do not address or demonstrate that the alleged conduct was exclusively within the scope of Lamp's employment.

To determine whether the relevant conduct occurred within the scope of an employee's employment, Oregon courts consider three factors: "(1) whether the act occurred substantially within the time and space limits authorized by the employment; (2) whether the employee was motivated, at least partially, by a purpose to serve the employer; and (3) whether the act is of a kind which the employee was hired to perform." *Chesterman v. Barmon*, 753 P.2d 404, 406 (Or. 1988) (en banc). Oregon courts have expressly recognized that "if the agent's sole purpose is one that is not for the benefit of the corporation, the agent is not acting within the scope of employment and may be liable." *Boers v. Payline Sys., Inc.*, 918 P.2d 432, 435 (Or. Ct. App. 1996) (citations omitted).

Generally speaking, Mr. Luna's economic interference claim is based on Lamp's alleged blacklisting of Mr. Luna following GOTF 2025, preventing Mr. Luna from attending and financially benefitting from various conventions. (*See* SAC ¶¶ 152-158.) The conduct at issue happened outside the time and space of the GOTF events, and was certainly not the kind of conduct for which he was hired by GOTF to perform. Even if it were otherwise, Mr. Luna expressly alleges that Lamp blacklisted him "for the improper purpose of excluding Mr. Luna from various events because of his personal animus and vendetta against Mr. Luna for asserting his right to be accompanied by his service animal, Scout." (*Id.* ¶ 154; *see also id.* ¶ 1, "All this intentional, systematic, and discriminatory conduct was motivated by hostility and personal animus[.]")

Thus, Mr. Luna alleges that Lamp's "sole purpose is one that is not for the benefit of the corporation," but rather, personal animus unrelated to any interest of GOTF, which means that Lamp was "not acting within the scope of employment and may be liable." *Boers*, 918 P.2d at 435 (citations omitted); *see also RMS Tech., Inc. v. Stenbock*, 832 P.2d 1260, 1261 (Or. Ct. App. 1992) (reversing the trial court's grant of summary judgment on an intentional interference claim against an employee because "the pleading was adequate and . . . there was evidence that permitted an inference that [the employee]'s motives were not to benefit the corporations' interests, but were instead self-serving or vindictive."); *Porter v. Oba, Inc.*, 42 P.3d 931, 936 (Or. Ct. App. 2002).

In sum, Defendants mischaracterized Mr. Luna's allegations and incorrectly portrayed his claimed prospective economic relationships as limited to GOTF. Mr. Luna alleges Defendants' interference with numerous prospective third-party economic relationships. Further, Mr. Luna adequately alleges facts demonstrating that Lamp was acting outside of the scope of his

employment and therefore may be liable for his tortious interference with Mr. Luna's relationship with GOTF. Defendants have not even attempted to demonstrate otherwise. Accordingly, the Court should deny Defendants' Motion with respect to Mr. Luna's economic interference claim.

**e. Defendants' Alleged Defamatory Statements Imply Provable Factual Assertions.**

With respect to Mr. Luna's defamation claim, Defendants move for dismissal only on the ground that Lamp's characterizations of Mr. Luna and Scout as "'aggressive' or 'dangerous,'" or that they "cause problems, and require monitoring" are non-actionable statements of opinion. (Mot. at 17.) Defendants again ignore relevant allegations in the SAC.

"To establish a claim for defamation, a plaintiff must show [1] that a defendant made a defamatory statement about the plaintiff and [2] published the statement to a third party." *Neumann v. Liles*, 369 P.3d 1117, 1121 (Or. 2016). "A defamatory statement is one that would subject the plaintiff to hatred, contempt or ridicule or tend to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held or to excite adverse, derogatory or unpleasant feelings or opinions against the plaintiff." *Id.* at 712 (simplified).

Although the First Amendment protects opinion, the United States Supreme Court has held that "the First Amendment protects [only] statements of opinion *that do not contain or imply provable factual assertions*." *Dossett*, 472 F. Supp. 3d at 913 (citing *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20–21 (1990)). The Ninth Circuit and the Oregon Supreme Court employ the same "three-part test to determine whether a statement implies an assertion of objective fact:

> whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact; (2) whether the defendant used figurative or hyperbolic language that negates that impression; and (3) whether the statement in question is susceptible of being proved true or false.

*Id.* (quoting *Neumann,* 369 P.3d at 1123-24.).

Defendants fail to identify or apply the relevant test. Instead, Defendants merely conclude that the word "aggressive" is analogous to a description of business conditions as "inhuman." (Mot. at 17.) Defendants identifying that both allegations contain a descriptive adjective misses the substance of the test. In fact, Mr. Luna plausibly alleges that Lamp's statements conveyed specific factual assertions about identifiable past and present conduct by Mr. Luna and Scout, which is what Oregon law requires.

Specifically, Mr. Luna does not simply allege that Lamp "call[ed] somebody 'aggressive.'" (Mot. at 17.) Rather, he alleged that "Lamp has stated to one or more third parties that Mr. Luna *is not entitled to be accompanied by Scout under the ADA* because Scout is 'aggressive.'" (SAC ¶ 160) (emphasis added). Mr. Luna also alleged that Lamp later stated it was Scout's "aggressiveness, [and his] barking and growling all day" that supported his removal and denial of disability-related access to that and later events. (*Id.* ¶ 45.)

Lamp's alleged statements were not rhetorical, unprovable opinion, but rather, implied provable factual assertions about Mr. Luna's conduct, Scout's training, Scout's behavior at the convention, and Mr. Luna's entitlement to be accompanied by a service animal. As further discussed in Section 3(b) below, Lamp's comments communicate that Scout is not a qualified ADA service dog either because he is not sufficiently trained or behaves in a manner that disqualifies him from acting as a service dog. Further, those statements also communicate that Mr. Luna failed sufficiently to train Scout and is incapable of maintaining the requisite level of control over Scout. These facts are not only "susceptible to being proved true or false," but their

truth or falsity must be proven at trial and will likely dictate the outcome of Mr. Luna's disability discrimination claims under state and federal law.[3]

Because Lamp's alleged statements imply provable facts about Mr. Luna and Scout's conduct, they cannot be found to be protected opinion as a matter of law. Accordingly, the Court should deny Defendants' Motion with respect to Mr. Luna's defamation claim.

**3. Defendants' Factual Challenge Fails on the Facts and Law.**

**a. Defendants' Arguments Fail on the Law—Their Factual Challenge and Motion for Summary Judgment Are Premature.**

As this Court has made clear time and again, "[u]nder *Planned Parenthood*, a party opposing an anti-SLAPP motion challenging the factual sufficiency of its claims 'must' have the opportunity to conduct discovery in federal court." *Conroy v. Mewshaw*, No. 3:21-cv-00298-SB, 2022 WL 2981453, at *7 (D. Or. July 28, 2022) (quoting *Planned Parenthood*, 890 F.3d at 834); *see also Conroy v. Mewshaw*, 2022 WL 602354, at *2 ("Here, the parties have engaged in no discovery. Thus, discovery must be allowed before the Court decides Defendants' anti-SLAPP motion."); *Chase v. Gordon, Aylworth & Tami, P.C.*, No. 3:18-cv-00568-AC, 2020 WL 1644310, at *4 (D. Or. Feb. 14, 2020) ("A district court's evaluation of the factual sufficiency of the plaintiff's prima facie case must wait until after discovery."), *findings and recommendation adopted*, 2020 WL 3977608 (D. Or. July 14, 2020).

[3] Defendants' evidence further confirms the appropriateness of a defamation claim here. Lamp swore under penalty of perjury that Mr. Luna threatened him with violence and suggested Mr. Luna "was potentially planning to show up with his gun." (Lamp Decl. ¶ 23.) Mr. Luna denies that he ever threatened Lamp with violence, and does not and did not own a gun at the relevant time. (Luna Decl.¶ 20.) Krystofer Dublinski-Milton, chair of the Furlandia convention, confirmed it was Lamp who informed him of the situation at GOTF and that the purported threats of violence against Lamp, which Mr. Luna denies ever happened, caused Mr. Luna to be excluded from Furlandia 2026. (Decl. Krystofer Dublinski-Milton Supp. Mot. Strike ("KDM Decl.") ¶¶ 3, 10.)

Despite this clear and repeated guidance, Defendants argue otherwise based on a passing reference to FRCP 56(d)(2) in a non-binding, unpublished opinion from another district court case in which the parties had already engaged in initial discovery. (*See* Mot. at 5, quoting *Wynn v. Bloom*, No. 2:18-cv-00609-JCM-GWF, 2019 WL 1983044, at *3 (D. Nev. May 2, 2019).) In the sentence immediately following Defendants' selective quotation, that same court recognized that "[i]n *Planned Parenthood* . . . , the court stated that if an anti-SLAPP motion challenges the factual sufficiency of plaintiff's claim, then it must be treated like a motion for summary judgment under Rule 56" and "[d]iscovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court." *Wynn*, 2019 WL 1983044, at *3.

This Court has expressly rejected Defendants' argument and deferred ruling on anti-SLAPP motions asserting factual challenges when there has been no discovery, even assuming that FRCP 56(d) applies and that a party fails to comply with its requirements. *See Conroy*, 2022 WL 2981453, at *7-8 ("Although failure to comply with Rule 56(d) may be a basis to deny a party's request for further discovery, the rule does not require the Court to rule on the merits of a summary judgment motion (or anti-SLAPP motion challenging factually sufficiency) solely because the party seeking further discovery identified those discovery topics in an opposition brief rather than declaration or affidavit.")

Pursuant to this Court's previous guidance, and modeled after the relevant briefing in those cases, Mr. Luna identifies, but is not limited to, the following discovery topics relevant to Defendants' two factual challenges for which he intends to seek discovery:

- The identities and contact information of all witnesses who observed Mr. Luna or Scout, participated in the removal decision, or possess information concerning the asserted basis for exclusion;
- All video footage, audio recordings, pictures, etc. from the 2025 GOTF convention;
- All documentary evidence or testimony relating to the nature and source of any complaints or grievances relating to Mr. Luna or Scout from any GOTF conventions;
- Communications concerning Mr. Luna, Scout, and the decision to remove Mr. Luna from the convention, including communications between or among GOTF personnel, convention-center personnel, volunteers, and security personnel;
- Communications, notes, and internal discussions reflecting the actual reasons for Mr. Luna's removal and subsequent permanent ban from GOTF events.
- Any databases, blacklists, watchlists, or similar materials identifying Mr. Luna or Scout as problematic, requiring monitoring, or warranting exclusion from events.

Thus, pursuant to *Planned Parenthood* and this Court's previous guidance, the Defendants' motion asserting a factual challenge should be denied.

**b. Defendants' Arguments Fail on the Facts—Scout Is a Service Dog.**

Defendants assert a factual challenge to Scout's qualification as a service animal. (Mot. at 18-20.)

Mr. Luna alleges—and now submits declarations further supporting—that Scout is a certified service animal that is trained to assist him with a number of daily activities including: (1) notifying him that he has abnormal glucose/blood sugar levels; (2) notifying him when someone is approaching his visually impaired side; and (3) helping him safely navigate public spaces, particularly in crowded areas. (SAC ¶ 15; Luna Decl. ¶ 5; *see also* Decl. Brett Blumfield Supp. Opp'n Mot. Strike ("Blumfield Decl.") ¶¶ 4-6.) "Scout is also trained to perform tasks that help Mr. Luna manage chronic pain and anxiety, including deep pressure therapy." (SAC ¶ 16; Luna Decl. ¶ 6; Blumfield Decl. ¶ 5.)

Defendants challenge only whether Scout "(1) helps monitor [Mr. Luna's] blood glucose levels; (2) notifies [Mr. Luna] if someone approaches his 'visually impaired side;' and (3) helps [Mr. Luna] navigate public spaces, and crowded areas." (Mot. at 18.) Defendants also assert a factual challenge to Mr. Luna's allegation that he is visually impaired. (*Id.* at 19.)

Notably absent from Defendants' factual challenges is any mention of Mr. Luna's other conditions that cause him symptoms such as "chronic pain and anxiety" or Scout's ability to perform "deep pressure therapy" to help manage those conditions. (SAC ¶¶ 15-17.) Thus, Mr. Luna's allegations and supporting declarations relating to Scout's ability to perform deep pressure therapy and the corresponding benefit to his qualifying disabilities (SAC ¶¶ 15-17; Luna Decl. ¶ 6; Blumfield Decl. ¶¶ 4-6) are undisputed and sufficient to defeat Defendants' factual challenge. *See Shelley v. Leisure Hotel Grp., LLC*, No. 4:23-cv-02007, 2024 WL 235218, at *7 (N.D. Cal. Jan. 22, 2024) (finding that the dog at issue was a qualified service dog in part because it perform "deep tissue" or "deep pressure therapy");[4] *C.G. ex rel. P.G. v. Saucon Valley Sch. Dist.*, 571 F. Supp. 3d 430, 442 (E.D. Pa. 2021) (finding that a dog trained to perform deep pressure therapy that positively affected the plaintiff's bodily pain and anxiety was sufficient to qualify as a service animal); *Mission Working Dogs v. Brookfield Props. Retail, Inc.*, 770 F. Supp. 3d 215, 268 (D. Me. 2025) (denying a motion for summary judgment in part based on dogs' training in "'deep pressure therapy,' a scientifically backed task whereby a dog is trained to press on certain pressure points in order to release positive hormones in their individual.").

With respect to the challenges that Defendants actually assert, this Court rejected similar arguments in *Sadler*. Specifically, like Defendants here (Mot. at 20), the defendant in *Sadler*

[4] The court in *Shelley* and the plaintiff in their first amended complaint appear to use the term "deep pressure therapy" and "deep tissue therapy" interchangeably.

argued that the court should grant summary judgment on the plaintiff's disability discrimination claims because the service dog at issue "merely accompanies [the plaintiff] for comfort and does not perform any task that would qualify [the dog] as a protected service animal." *Id.* at *2. There, like here, the defendant argued that "no evidence substantiates the contention that [the dog] can sense when [the plaintiff] is suffering from anxiety or PTSD symptoms; and (b) [the plaintiff] does not continuously rely on [the dog] to perform specific tasks at all times." *Id.* This Court rejected those arguments and denied summary judgment in light of the plaintiff's testimony that "she trained [the dog] to recognize symptoms of her disability and to perform specific actions to help [her] cope with anxiety attacks and PTSD." *Id.* at *3.

Here, Defendants' factual challenges should be rejected for the same reason. Mr. Luna has alleged—and now submits declarations further supporting—that he suffers from various qualifying disabilities and that he trained Scout to perform various tasks directly related to those disabilities for the benefit of Mr. Luna. (SAC ¶¶ 12-17; Luna Decl. ¶¶ 2-8; Blumfield Decl. ¶¶ 4-7.) Thus, even ignoring the other deficiencies with Defendants' factual challenge described above, Mr. Luna has put forth sufficient evidence to create a genuine dispute of material fact with respect to whether Scout is a qualified service animal. Accordingly, the Court should deny Defendants' Motion.

**c. Defendants Discriminated Against Mr. Luna.**

In an attempt to justify their removal of Mr. Luna and Scout, Defendants argue that an exception applies to the general requirement that a place of public accommodation permit the use of a service animal by an individual with a disability. (Mot. at 20.) Specifically, 28 C.F.R. § 36.302(c)(2)(i) provides that a service animal may be removed if "[t]he animal is out of control

and the animal's handler does not take effective action to control it[.]" Courts have recognized that the

> ADA regulations do not define what it means for a service animal to be 'out of control[,]' [h]owever the regulations dictate that an animal is 'under the handler's control' if it 'ha[s] a harness, leash, or other tether, unless either the handle[r] is unable because of a disability to use a harness, leash, or other tether, or the use of a harness, leash, or other tether would interfere with the service animal's safe, effective, performance of work or tasks, in which case the service animal must be otherwise under the handler's control (e.g., voice control, signals, or other effective means).

*Mission Working Dogs*, 770 F. Supp. 3d at 270 (quoting 28 C.F.R. § 36.302(c)(4)).[5]

With respect to whether Scout was leashed, Mr. Luna submitted a declaration supporting that Scout was leashed the entire time while they were at GOTF, with two brief exceptions. (Luna Decl. ¶¶ 16-18.) Mr. Luna expressly stated that Scout's leash did not wrap around Tanner Colvin's legs, and that Mr. Luna dropped the automatically retractable leash to avoid that outcome. (*Id.* ¶ 18.) Thus, there is a genuine dispute of material fact regarding whether Scout was leashed.

With respect to Defendants' more general contention that Scout was "out of control," Defendants both fail to identify any authority defining or interpreting the term "out of control," and exclusively rely on disputed fact to support their argument. Defendants assert that "Scout was barking, growling, tangling his leash up in an attendee's legs,[6] and [Mr. Luna] was unable to prevent any of it." (Mot. at 20.)

---

[5] As an initial point, Defendants' Motion only challenges Mr. Luna's state law claims, and they have failed to identify or explain why their reliance on federal regulations should justify striking or granting summary judgment on claims asserted under state law. Regardless, Defendants' arguments fail on their merits.

[6] It is unclear from Defendants' supporting declarations whether they contend Scout was or was not leashed. For example, Lamp's declaration repeatedly asserts that Scout was "off

Again, Mr. Luna alleged—and now files a declaration supporting—that Scout was responsive to verbal commands preceding the incident, and in response to a costumed figure approaching Mr. Luna's visually impaired side, "barked a single bark, which lasted three to four second" and then "Scout sat down next to Mr. Luna." (SAC ¶¶ 24-25; Luna Decl. ¶ 14.) Mr. Luna states that Scout was leashed and did not wrap his leash around anyone. (Luna Decl. ¶ 18.) U.S. Department of Justice ADA guidance expressly advises that a single bark is insufficient to justify removal of a service dog; or, stated differently, a single bark does not mean the dog is "out of control." *Frequently Asked Questions about Service Animals and the ADA*, U.S. Dep't of Justice (last updated Feb. 28, 2020), available at https://www.ada.gov/resources/service-animals-faqs/ ("Under control also means that a service animal should not be allowed to bark repeatedly in a lecture hall, theater, library, or other quiet place. However, if a dog barks just once, or barks because someone has provoked it, this would not mean that the dog is out of control.").[7] But even if Scout was momentarily considered "out of control," that is still insufficient grounds to remove Scout under the regulations because Scout was immediately brought back under control by Mr. Luna. (SAC ¶ 25; Luna Decl. ¶¶ 14, 18.); *see also* 28 C.F.R. § 36.302 (c)(2)(i) ("A public accommodation may ask an individual with a disability to remove a service animal from the premises if . . . [t]he animal is out of control *and the animal's handler does not take effective action to control it*[.]") (emphasis added).

leash" or "unleashed" (Lamp Decl. ¶¶ 10-11) but also asserts that Scout "tangled up [an] attendee's legs in his leash." (*Id.*¶ 11.)

[7] *See Sadler*, 2018 WL 4854064, at *2 (citing favorably to the same source).

In light of those facts put forth by Mr. Luna, there is a genuine dispute of material fact regarding whether Defendants' removal of Mr. Luna and Scout was justified. Accordingly, Defendants' Motion asserting a factual challenge should be denied.

**4. Defendants' Requests for Dismissal with Prejudice and for Fees Should be Denied.**

Two brief final points. First, Defendants move to dismiss the claims at issue in their motion "with prejudice." (Mot. at 22.) Mr. Luna respectfully requests that, to the extent the Court grants any part of Defendants' motion relating to legal challenges, it does so without prejudice, consistent with the great weight of authority in this circuit. *Dossett*, 472 F. Supp. 3d at 916 ("After *Planned Parenthood*, courts have generally granted leave to amend after ruling on an anti-SLAPP motion based on legal challenges.") (citation omitted) (collecting cases).

Second, Defendants seek fees under Oregon's anti-SLAPP statute. (Mot. at 21.) To the extent the Court grants any part of Defendants' anti-SLAPP motion asserting legal challenges without prejudice, that request should be denied. *See Green Building Initiative, Inc. v. Peacock*, 350 F.R.D. 289, 293 (D. Or. 2025) (declining to award fees when the motion to strike was granted without prejudice.); *cf. Tallman v. Spencer*, No. 2:23-cv-01773, 2026 WL 496434, at *1 (D. Or. Feb. 23, 2026).

## IV. CONCLUSION

For the foregoing reasons, Mr. Luna respectfully requests that Defendant's Motion be denied in its entirety. In the event the Court denies Defendants' anti-SLAPP motion, Mr. Luna intends to move for an award of reasonable attorney fees and costs incurred in responding to Defendants' frivolous Motion under ORS 31.152(3). *See Cantua v. Creager*, 7 P.3d 693, 703 (Or Ct. App. 2000) (defining "frivolous" to mean "without factual basis or well-grounded legal argument.")

DATED: August 21, 2026

STOEL RIVES LLP

*/s/ D. Ryan Mets*

MELISSA J. HEALY, OSB No. 102176
melissa.healy@stoel.com
D. RYAN METS, OSB No. 234680
ryan.mets@stoel.com

*Attorneys for Plaintiff*