Will Riddell, OSB No. 195635
1491 Commercial Street SE
Salem, Oregon 97302
Phone: (503) 269-8961
Email: will@riddell.lawyer
Attorney for Defendants Louis Lamp
and Get Out the Float LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

| | |
|---|---|
| **JOSEPH LUNA**,<br><br>Plaintiff,<br><br>v.<br><br>**FRANK KAIM**, individually; **LOUIS LAMP**, individually; **GET OUT THE FLOAT LLC**; **RAINFURREST ANTHROPOMORPHICS INTERNATIONAL**, **the CITY OF SEASIDE**, and **JOHN DOES I-X**, individually,<br><br>Defendants. | **Case No.** 3:26-cv-00398-SI<br><br>**DEFENDANTS LOUIS LAMP AND GET OUT THE FLOAT LLC'S REPLY SUPPORTING SPECIAL MOTION TO STRIKE**<br><br>Oral argument requested |

**REPLY**

Plaintiff's response concedes more than it contests. It doesn't dispute that Get Out the Float is an expressive event, a gathering where attendees perform invented personas in costume. It concedes that "civil conspiracy" isn't a standalone claim. *See* Response at 27. It also disclaims any interference theory based on Plaintiff's own relationship with Get Out the Float, even though the Second Amended Complaint pleads exactly that. *See* Response at 28–29; ECF No. 23 ¶ 153. And Plaintiff's new declaration admits that "sometimes Scout is off leash," that Plaintiff let go of the leash while Scout moved around another attendee, and that Plaintiff registered Scout as an emotional support animal. *See* Luna Declaration ¶¶ 4, 9, 16–18.

What the response contests, it gets wrong. Its central move is to recast this case as one about "conduct, not speech," as if the convention didn't matter. But *every* claim in this case is about who may participate in a collective performance, and what its organizer said about that decision to the organizers of similar events. Under Oregon law, deciding who participates in collective expression *is itself* an exercise of the rights of speech, assembly, and association, and warning a community's organizers about a participant's threatening conduct addresses an issue of public interest.

Finally, the response suggests that this motion is "intimidat[ion]" because it doesn't challenge the federal claims. *See* Response at 7. But Oregon's anti-SLAPP statute reaches state-law claims arising from protected activity. Defendants moved against those claims because the statute is designed to test them "at an early stage." *Yes on 24-367 Comm. v. Deaton*, 276 Or. App. 347, 349–50 (2016). Filing a motion that the Oregon legislature specifically provided to protect people from cases like this one – cases filed to punish various forms of creative expression – isn't intimidation.

**A. Each challenged claim arises out of conduct in furtherance of protected expression, assembly, and association.**

The Oregon Supreme Court recently restated the framework that applies to a special motion to strike under ORS § 31.150. At step one, the defendant must show the claim "arises out of" conduct described in ORS § 31.150 (2). Then, the burden shifts to the plaintiff to present substantial evidence supporting a prima facie case. Or. Rev. Stat. § 31.150 (4); *see Lowes v. Thompson*, 374 Or. 23, 32–33 (2025) (en banc). Subsection (2) (a) (D) reaches "any other conduct in furtherance of the exercise of the constitutional right of assembly, petition or association or the constitutional right of free speech . . . in connection with a public issue or an issue of public interest." Or. Rev. Stat. § 31.150 (2) (a) (D). Two main points about that standard are important for the analysis here.

First, the statute expressly protects conduct "in furtherance of" expression – not only conduct that *is itself* expression, and not only conduct "necessary to" expression. *See Mullen v. Meredith Corp.*, 271 Or. App. 698, 705–06 (2015). The statute's reach is clearly broader than the expressive activity itself, and Oregon cases have already interpreted it that way. The moving party doesn't need to show that its conduct was directly protected by the First Amendment. *See DeHart v. Tofte*, 326 Or. App. 720, 742 (2023). Instead, conduct is protected when it "advances or promotes" those rights. *See Davoodian v. Rivera*, 327 Or. App. 197, 207 (2023). Second, subsection (2) (a) (D) also protects assembly and association, and it applies to intentional interference claims no less than defamation claims. *See Cider Riot, LLC v. Patriot Prayer USA, LLC*, 330 Or. App. 354, 378 (2024). Plaintiff's response never actually engages with the text of ORS § 31.150 (2) (a) (D), and his quotation of subsection (2) (a) (D) on page 11 of the response omits the assembly and association clause entirely. *See* Response at 11.

**1. The conduct underlying each claim, claim by claim.**

Plaintiff says the motion never identified the conduct underlying each claim. *See* Response at 10. But that's wrong; the conduct was described at length. *See* ECF No. 27 at 6–12. Each claim does arise out of protected conduct. Count 5 (ORS §§ 659A.142, 659A.143) arises out of Plaintiff's removal from the convention and the letter banning him from future ones. *See* ECF No. 23 ¶¶ 46–47, 129–30. As Defendants' motion and supporting filings explained, a "furry" convention is a collective performance. Everyone attends in character, expressing a persona. *See* Lamp Declaration ¶¶ 2–4; ECF No. 23 ¶ 2. Deciding who may participate in collective expression is itself expression. The Supreme Court held that a parade organizer's "selection of contingents" is protected by the First Amendment, because a speaker who chooses what to say may also choose what – and whom – to leave out. *See Hurley v. Irish-American Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 570–73 (1995). The Court likewise held that forcing an expressive association to include an unwanted member burdens the association's own expression. *See Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000).[1]

California's courts apply that principle under the anti-SLAPP statute, which Oregon's statute was modeled on. *See Lowes v. Thompson*, 374 Or. 23, 38 n.16 (2025) (en banc); *Handy v. Lane Cnty.*, 360 Or. 605, 618 (2016). A network's choice of who appears in its programming, a band's choice of who performs its music, and an organization's decision to disassociate from a speaker accused of misconduct are all "conduct in furtherance" of expression. *See Hunter v. CBS Broad. Inc.*, 221 Cal. App. 4th

[1] Remember that the question of whether any exclusion of an unwanted member was ultimately wrongful on the merits is not relevant to this step of the inquiry. *See* DeHart v. Tofte, 326 Or. App. 720, 741 (2023) ("That inquiry is not an inquiry into whether the defendant's conduct was wrongful.").

1510, 1521 (2013); *Symmonds v. Mahoney*, 31 Cal. App. 5th 1096, 1106–07 (2019); *Doe v. Cal. Ass'n of Directors of Activities*, 117 Cal. App. 5th 796, 822–23 (2025). Removing a participant whose uncontrolled dog was frightening vendors and disrupting the event, and then formalizing that removal in a letter, is exactly that kind of participant curation. The relationship between the decision and the expression is direct. The convention is the performance, and the act of removal decided who could take part in it. That conduct also furthers the right of assembly, because an organizer who can't manage who assembles can't protect the assembly. ORS § 31.150 (2) (a) (D) protects that conduct.

Count 7 for "civil conspiracy" targets the same removal, alleging that it was agreed to, and then repeats the blacklisting allegations. *See* ECF No. 23 ¶¶ 143–49. A claim that arises out of an agreement to engage in protected conduct arises out of that protected conduct, and the blacklisting allegations are statements – or speech.

Count 8 for intentional interference is also built on speech. The Second Amended Complaint alleges that Lamp "marked or identified" Plaintiff on a list "or otherwise misrepresented to other conventions and expos" that Plaintiff and Scout are dangerous. *See* ECF No. 23 ¶ 155. Plaintiff's own response describes the claim as "blacklisting," that is, communications to other event organizers. *See* Response at 30. A claim based on what the defendant said to third parties is a claim based on speech, whatever its label. *See Cider Riot, LLC v. Patriot Prayer USA, LLC*, 330 Or. App. 354, 378 (2024) (interference claims); *Deep Photonics Corp. v. LaChapelle*, 282 Or. App. 533, 546–47 (2016) (how a claim is pleaded "does not change the nature of the acts" giving rise to it).

Count 9 (defamation) is definitionally a claim about statements. Specifically, Lamp's alleged statements to other convention organizers about Plaintiff and Scout. *See* ECF No. 23 ¶¶ 160–62. Defamation claims arising from speech on matters of public

interest are the paradigm the anti-SLAPP statute was written for. *See Handy v. Lane Cnty.*, 360 Or. 605, 612 n.4 (2016) (anti-SLAPP statutes' "goal is to permit defendants who are targeted for their statements to end such suits quickly and with minimal expense"); *Neumann v. Liles*, 295 Or. App. 340, 344–46 (2018) (defamation claims over an online review of a business were claims arising out of conduct in furtherance of free speech). To the extent Count 9 also rests on Lamp's report to the police, *see* ECF No. 23 ¶ 161, it arises out of protected "petitioning" conduct under *Mouktabis v. Clackamas Cnty.*, 327 Or. App. 763, 772–74 (2023) (police reports were protected petitioning conduct). Plaintiff's "conduct, not speech" argument can't even be stated as to Counts 8 and 9, because the only "conduct" those counts target is actually speech.

**2. Plaintiff's authorities involve different conduct.**

Plaintiff's cases confirm the framework and then have nothing to say about this record. *Deep Photonics*, 282 Or. App. at 542, involved litigation among the "directors, officers, and shareholders of a private, closely-held corporation," with no expressive event, no community, and no public dimension. *Mouktabis v. Clackamas Cnty.*, 327 Or. App. 763, 771 (2023), directs courts to examine the conduct the claims target. Here, the targeted conduct is participant curation of an expressive gathering and statements about it. And *C. R. v. Eugene School District 4J*, 308 Or. App. 773, 780 (2021), reversed the trial court's order because the school offered no evidence that its statements about a student's discipline involved an issue of public interest. Here, as explained below, the statements were made inside a live community controversy that Plaintiff himself kept alive. Plaintiff's "background context" argument fails on its own terms. Every claim depends on what Plaintiff was removed from, banned from, and discussed in connection with – an expressive assembly. None of the claims could be stated without it.

**B. The conduct was in connection with an issue of public interest.**

This phrase is defined by its common-sense meaning. *See DeHart v. Tofte*, 326 Or. App. 720, 742 (2023). California's framework (which is persuasive here) asks whether a statement concerns a definable community and was made in the context of an ongoing controversy or discussion within it. *See Du Charme v. Int'l Bhd. of Elec. Workers*, 110 Cal. App. 4th 107, 119 (2003). Warnings to a community about a person's dangerous or threatening conduct qualify. A church's report to parents about a youth group leader, a parent-teacher organization's decision to bar a volunteer coach over safety concerns, a school's statements about a teacher's conduct toward a student, and a speakers' network's decision to disassociate from a speaker accused of misconduct all qualified. *See Terry v. Davis Cmty. Church*, 131 Cal. App. 4th 1534, 1547–48 (2005); *Hecimovich v. Encinal Sch. Parent Teacher Org.*, 203 Cal. App. 4th 450, 469 (2012); *Bishop v. The Bishop's Sch.*, 86 Cal. App. 5th 893, 905–06 (2022); *Doe v. Cal. Ass'n of Directors of Activities*, 117 Cal. App. 5th 796, 822–23 (2025).

This case is squarely inside that line. The safety of attendees at conventions (events held at a city-owned venue attended by a definable, overlapping community of fans, vendors, and volunteers) is an issue of interest to that community, just as safety in a youth basketball program was in *Hecimovich*. And the communications at issue occurred inside an ongoing controversy, not after it. Plaintiff made the controversy public himself on the day of the removal. He called the Seaside police and asked them to shut the convention down, then called the mayor's office and asked the City to fire the convention center's general manager. *See* Lamp Declaration ¶¶ 17, 20. The Furlandia communications took place while Plaintiff was actively contesting his ban, emailing Furlandia's chair and volunteer coordinator for months, demanding reconsideration

and threatening litigation. *See* Milton Declaration ¶¶ 11–13 & Ex. 03. That's an "ongoing controversy, dispute or discussion" within a definable community, *cf. Du Charme v. Int'l Bhd. of Elec. Workers*, 110 Cal. App. 4th 107, 119 (2003), and it's the reason Plaintiff's redundancy argument misses. *See* Response at 14–15. Defendants aren't arguing that expressive conduct is automatically a public issue. The public issue in this case is separate from that. It's the safety of community events, and the legitimacy of service-animal claims asserted at them, which is a subject of active public debate and regulation.

That's enough to meet the requirements of ORS § 31.150. The acts giving rise to all claims were at least "in furtherance of" constitutionally protected speech or assembly, *see* ORS § 31.150 (2) (a) (D), and were connected to an issue of public interest.

**C. The challenged claims are legally insufficient.**

Even at step two, the challenged claims fail as alleged, starting with the contradictions in Plaintiff's own account of Louis Lamp's role.

**1. Plaintiff's opposing theories of Lamp's role defeat each other.**

Plaintiff needs Lamp to occupy two different roles at once. For the OPAA claims, it needs him "acting on behalf of" a place of public accommodation. *See* Or. Rev. Stat. § 659A.142 (4). The Second Amended Complaint alleges it that way. Every operative allegation runs "through its Manager and agent Louis Lamp," and the ban letter was sent "on behalf of Get Out The Float LLC." *See* ECF No. 23 ¶¶ 46, 80–81, 128–29. But for the interference claim, Plaintiff needs the opposite. He argues Lamp acted outside any GOTF role, for "personal animus" alone, to escape the rule that a party's own agent is not a "third party." *See* Response at 29–30; *McGanty v. Staudenraus*, 321 Or. 532, 538 (1995) ("[W]hen an employee is acting in the scope of the employee's employment, the employee is acting as the employer, and not as an independent entity.").

Oregon law blocks each path. If Lamp acted for a "sole purpose" of his own, outside of his role with GOTF, *Boers v. Payline Sys., Inc.*, 141 Or. App. 238, 243 (1996), then he was not a "person acting on behalf of" a place of public accommodation, and the OPAA claims against him personally fail on Plaintiff's own theory. Conversely, if Lamp acted within the scope of his role, as Plaintiff alleges, then he's not a third party to GOTF's relationships and can't tortiously interfere with Plaintiff's relationship with GOTF. *See McGanty*, 321 Or. at 538. Plaintiff can't plead Lamp inside the scope of his agency with GOTF for the discrimination claims but then outside of it for the tort claims from the same conduct on the same day. *See id.* ("[a] statement of fact in a party's pleading is an admission that the fact exists as stated."). And *Cortez v. Nacco Material Handling Grp., Inc.*, 356 Or. 254, 268–69 (2014), resolves none of this for Plaintiff. Defendants don't argue that Lamp is immune for his own torts. They argue that on Plaintiff's own allegations, the specific claims pleaded against Lamp are internally inconsistent, and each fails as a matter of law on at least one of Plaintiff's theories.

**2. The interference claim fails on Plaintiff's own theory of it.**

Plaintiff answers Defendants' third-party point by moving the goalposts. Count 8 still has to plead a business relationship, interference with it by a third party through improper means or for an improper purpose, causation, and damages, *see McGanty*, 321 Or. at 535, and the relationships now at issue are with Furlandia, the Portland Roadsters Show, a reptile expo, "and more." *See* Response at 28–29; ECF No. 23 ¶ 156. Taking Plaintiff at his word, the claim fails four different ways.

Let's start with the relationship. The claim protects "a voluntary relationship with another party that would have very likely resulted in a pecuniary benefit for the plaintiff but for the defendant's interference," *Cron v. Zimmer*, 255 Or. App. 114, 127 (2013), and

that element requires "at a minimum, the identity of the other party to the alleged prospective relationship." *Sharma v. Providence Health & Servs.-Or.*, 289 Or. App. 644, 670 (2018). What Plaintiff alleges with these events is attendance, a Furlandia volunteer slot that paid in free admission, a tee-shirt, and lounge access, a ticket to the Roadsters Show, and booths he "often maintains" at unnamed events. *See* ECF No. 23 ¶¶ 49–52, 65, 69–74. No specific vendor agreement, booth reservation, or invitation is alleged with regard to any particular event. A member of the public's expectation of buying a ticket is not a business relationship with the organizer, and Plaintiff admits that Furlandia let him buy one. Furlandia only declined his volunteer labor, *see id.* ¶ 62, but that wasn't the source of any particular economic benefit for Plaintiff.

Next, the alleged interference. Every allegation that Lamp or GOTF said anything to these events is pleaded "on information and belief," *see* ECF No. 23 ¶¶ 68, 155–56, and the actual facts alleged by Plaintiff point elsewhere. Furlandia's coordinator said the ruling changed because "Furlandia has some Get Out The Float staff joining our staff," *id.* ¶ 57, which is Furlandia acting on what its own staff knew. Plaintiff gives the Roadsters Show and the reptile expo only a sentence each, with no speaker, listener, statement, or date. *See id.* ¶¶ 65–66. A blacklist no one has ever seen is a conclusion, not a fact. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The response's footnote borrows Defendants' evidence that Lamp told Furlandia's chair about Plaintiff's threats, *see* Response at 33 n.3, but that report isn't pleaded in Count 8 and isn't about the dog.

Third, improper means or purpose. Interference must be "wrongful by some measure beyond the fact of the interference itself." *Allen v. Hall*, 328 Or. 276, 285 (1999). The only means pleaded in this case is speech, and if the statements are opinion, as shown below, they can't become "defamation, or disparaging falsehood" under

another label. *See Top Service Body Shop, Inc. v. Allstate Ins. Co.*, 283 Or. 201, 210 n.11 (1978). Interference claims built on the same statements "are subject to the same first amendment requirements that govern actions for defamation," *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1057–58 (9th Cir. 1990), and this district dismisses them as "derivative" when the defamation claim is struck as opinion. *See Dossett v. Ho-Chunk, Inc.*, 472 F. Supp. 3d 900, 916 (D. Or. 2020). Nor does "improper purpose" help. A purpose is improper only when it is to injure the plaintiff "as such," and a defendant's own judgment about its legitimate interests generally controls. *See Nw. Natural Gas Co. v. Chase Gardens, Inc.*, 328 Or. 487, 498 (1999); *cf. Top Service*, 283 Or. at 212. The complaint pleads the legitimate one. Convention center staff and the convention chair removed Plaintiff over his dog, and he came back to argue. *See* ECF No. 23 ¶¶ 27–38, 47.

Fourth, causation, which must be pleaded with facts rather than speculation. *See Dossett*, 472 F. Supp. 3d at 916–17. Plaintiff skipped Furlandia because he "felt humiliated," not because he was turned away, *see* ECF No. 23 ¶¶ 62–63, 96; he got into the Roadsters Show, *id.* ¶ 65; and he attributes his lost booths to "the incident at GOTF 2025," not to any specific statement, *id.* ¶ 71. And if any of this is treated as a factual challenge, Plaintiff's declaration says nothing about any of these events, a booth, a sale, a list, or a statement by Lamp to anyone. *See* ECF No. 41.

### 3. The OPAA claims.

Defendants acknowledge that under *Abraham v. Corizon Health, Inc.*, 369 Or. 735, 755 (2022), a place of public accommodation "need not be a physical place." But the Second Amended Complaint doesn't allege that the GOTF event was a place of public accommodation; it alleges that the GOTF *limited liability company* is a place of public accommodation. *See* ECF No. 23 ¶ 79. Now, Plaintiff argues he meant the convention.

Setting that aside, what remains is narrower than Plaintiff suggests. *Abraham* construed "customer or patron" to reach a person who uses a business's services. *See Abraham v. Corizon Health, Inc.*, 369 Or. 735, 740–41 (2022). But Plaintiff pleads his presence differently. He attended GOTF as a volunteer (event staff working shifts in exchange for benefits like lodging) whose badge and hotel room came from his labor, not his patronage. *See* ECF No. 23 ¶¶ 19, 37–39. Browsing a third-party vendor's table doesn't make Plaintiff a customer of GOTF any more than browsing a mall kiosk makes a shopper a customer of the mall's janitorial contractor. Whether a volunteer staffer is a "customer or patron" of the event he volunteers at is a question *Abraham* didn't answer, and Plaintiff's own allegations put him on the staff side of the line. The ORS § 659A.143 claim rises and falls with the same definitions and conduct. Since Plaintiff's allegations don't put him in the "customer or patron" category, the claims fail as a matter of law.

**4. Plaintiff concedes that Count 7 should be dismissed.**

The response concedes that Plaintiff doesn't assert civil conspiracy "as a standalone cause of action," and offers to re-plead it as a theory. *See* Response at 27–28. That's what Defendants' motion requested. Count 7 is pleaded as a claim, with its own prayer for damages. Striking a claim that Oregon law says does not exist is substance, not semantics. *See Osborne v. Fadden*, 225 Or. App. 431, 437 (2009) (civil conspiracy "is not a separate tort or basis for recovery but, rather, a theory of mutual agency"). And Plaintiff can't have it both ways. If Count 7 is a "claim," it targets the same removal and statements as the claims above and fails with them. *See* ECF No. 23 ¶¶ 143–49. If not, there's nothing to re-plead because a conspiracy theory only extends liability for an underlying claim and can't outlive the claim it's based on. *See Morasch v. Hood*, 232 Or. App. 392, 402–03 (2009) (affirming JNOV against conspiracy allegations).

**5. The defamation claim targets protected opinion.**

Each of the three factors from *Neumann* points to statements of opinion, not fact. *See Neumann v. Liles*, 358 Or. 706, 719 (2016). Start with tenor. The alleged statements were evaluations passed between event organizers deciding whom to admit, a context of judgment calls rather than reportage. *See* ECF No. 23 ¶¶ 160–62; Milton Declaration ¶¶ 3–4, 10. The language points the same way. "Aggressive," "cause[s] problems," and "require[s] monitoring" are evaluative characterizations of behavior – the kind of loose, judgment-laden descriptions courts in this district have held nonactionable, including the characterization of a person's conduct as "predatory behavior." *See Dossett v. Ho-Chunk, Inc.*, 472 F. Supp. 3d 900, 913–14 (D. Or. 2020). Verifiability is the clearest of the three factors. The one full sentence Plaintiff attributes to Lamp, that Plaintiff "is not entitled to be accompanied by Scout under the ADA because Scout is 'aggressive,'" is an opinion about legal entitlement based on the "aggressive" nature of Plaintiff's dog – not on Plaintiff's claimed disabilities. *See* ECF No. 23 ¶ 160. Whether Plaintiff's dog is "aggressive" isn't a fact that a jury can objectively find true or false. It's an opinion that could vary widely based on what a person thinks is "aggressive." That's not actionable.

Plaintiff's remaining points fail. He reformulates the claim as statements that "imply" Scout is untrained, conceding the statements don't actually assert that. Plaintiff also relies on "blacklist" allegations pleaded entirely "on information and belief," with no statement, speaker, listener, or date, which is insufficient to plead plausible publication. And, in a footnote, Plaintiff builds a new defamation theory out of Lamp's report to Furlandia's chair about Plaintiff's threats, which is absent from Count 9. *See* Response at 33 n.3. Parties can't amend complaints through opposition briefs. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

Finally, as Defendants' motion explained, nothing about *Planned Parenthood* defers a ruling on the legal challenges raised by Defendants. A challenge to legal sufficiency is decided on the pleadings like a motion under Rule 12 (b) (6), without discovery. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). Sections A through C above resolve this motion in Defendants' favor regardless of any factual dispute. And, even when it comes to factual issues, the plaintiff must still identify any discovery that's necessary to avoid responding to the motion now. *Cf. Wynn v. Bloom*, 2019 WL 1983044, at *3 (D. Nev. May 2, 2019).

**D. The factual challenge.**

The factual half of Defendants' motion needs less than Plaintiff suggests, and Plaintiff's own filings supply most of what the motion does need.

**1. Plaintiff's own declarations concede the dispositive facts.**

The factual challenge turns on two facts uniquely in Plaintiff's possession. Those facts are (1) whether Scout is individually trained to perform disability-related tasks, and (2) whether Plaintiff kept Scout under control. Plaintiff responded to both on the merits, with a declaration from himself and his roommate conceding the operative points. Plaintiff admits "sometimes Scout is off leash," and that he let go of the leash while Scout moved around another costumed attendee. *See* Luna Declaration ¶¶ 4, 14, 18. He admits Scout's only credential is an emotional-support certificate, which he obtained so that Scout could live with him, and that Scout's training consists of Plaintiff's efforts with treats, online sources, and videos. *See id.* ¶¶ 7–9; ECF No. 1, Pg. 30. There's no training program, records, or any trainer. Federal law *defines* a service animal by individualized training to perform tasks "directly related to the individual's disability," and emotional support animals are excluded. *See* 28 C.F.R. § 36.104.

Plaintiff's "deep pressure therapy" argument doesn't change the analysis. Defendants challenged Scout's status as a service animal wholesale. The ESA registration and the absence of any qualifying training were the main point. Pressure applied for comfort is excluded *by definition*, 28 C.F.R. § 36.104, and the only "training" behind this task is Plaintiff's self-training. More fundamentally, the exceptions under federal law apply either way. Even a trained service animal may be removed when it "is out of control and the animal's handler does not take effective action to control it." 28 C.F.R. § 36.302 (c) (2) (i); Or. Rev. Stat. § 659A.143 (6) (a) (B). Plaintiff never engages with the record on that issue. He says nothing about the nine incident reports collected that day, the attendee whose legs Scout wrapped, the vendor incident that brought the safety team out, the hotel-room barking that pushed Plaintiff's own roommate to a different room, or Plaintiff's own email admitting that his dog was off leash at the 2024 convention. *See* Lamp Declaration ¶¶ 21, 27–28; Colvin Declaration ¶¶ 4–7; Fileccia Declaration ¶¶ 4–5; Milton Declaration Ex. 03. And Plaintiff says nothing about the texts from his roommate, filed with Plaintiff's original complaint, calling Scout "NOT A SERVICE ANIMAL" and "NEVER PROPERLY TRAINED." *See* ECF No. 1, Pgs. 26–27.

**2. Factual challenges should be deferred if they are not decided.**

Plaintiff asks the Court to deny the factual challenges outright for lack of discovery. But the discovery topics his brief lists (witness identities, complaint records, event footage, internal communications about the removal decision) are aimed at *Defendants'* side of the removal, not at the two dispositive facts – his dog's training and his own control of the dog – which are Plaintiff's facts to prove. *See* Response at 34–35. He doesn't need discovery to address those facts, and he did address them. Worse still, Plaintiff doesn't support his request for discovery the way Rule 56 (d) requires, by

affidavit or declaration showing that specified facts are essential and unavailable. *See* Fed. R. Civ. P. 56 (d); *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (construing former Rule 56 (f)). Defendants recognize that this Court has discretion to defer factual anti-SLAPP challenges when discovery is necessary. *See Conroy v. Mewshaw*, No. 3:21-cv-00298-SB, 2022 WL 602354, at *2 (D. Or. Mar. 1, 2022); *Conroy v. Mewshaw*, No. 3:21-cv-00298-SB, 2022 WL 2981453, at *7–8 (D. Or. July 28, 2022). But when that's happened in cases like *Conroy,* it was because the plaintiff identified "key factual disputes" and necessary discovery in the defendant's possession. *See Conroy*, 2022 WL 2981453, at *8. That hasn't happened here. However, if the Court declines to rule on Defendants' motion now, it should defer the ruling without prejudice with leave to renew the factual challenges after discovery.

**E. Prejudice and fees.**

Plaintiff asks that any dismissal be without prejudice. *See* Response at 40. For most of the claims, that request only postpones the inevitable, but two defects can't be cured by amendment and warrant dismissal with prejudice. Count 7 is not a claim under Oregon law no matter how it is re-pleaded, and Count 8's GOTF-relationship theory is barred as a matter of law by *McGanty*, so those claims, at least, should be dismissed with prejudice. As for fees, ORS § 31.152 (3) entitles a defendant who prevails on a special motion to strike to reasonable attorney fees, and that entitlement applies in federal court. *See Northon v. Rule*, 637 F.3d 937, 938–39 (9th Cir. 2011). Consistent with this Court's guidance on the proper timing of fee awards, *Green Bldg. Initiative, Inc. v. Peacock*, 350 F.R.D. 289, 291–92 (D. Or. 2025), Defendants will move for their fees by separate motion after entry of a judgment.

**CONCLUSION**

Plaintiff's fifth, seventh, eighth, and ninth claims for relief (and the sixth, to the extent it is asserted against Defendants) arise out of protected activity and cannot survive either step of the anti-SLAPP analysis. The Court should grant the special motion to strike, dismiss Count 7 and the GOTF-relationship portion of Count 8 with prejudice, and dismiss the remaining challenged claims.

Dated September 2, 2026.

*s/ Will Riddell*

**Will Riddell, OSB No. 195635**
1491 Commercial St SE
Salem, Oregon 97302
Phone: (503) 269-8961
Email: will@riddell.lawyer
Attorney for Defendants Louis Lamp and Get Out the Float LLC

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **Defendants Louis Lamp and Get Out the Float LLC's Reply Supporting Special Motion to Strike** on the following persons on September 2, 2026, by electronic service through the Court's CM/ECF system:

Melissa J. Healy, OSB No. 102176
Email: melissa.healy@stoel.com
D. Ryan Mets, OSB No. 234680
Email: ryan.mets@stoel.com
Stoel Rives LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Attorneys for Plaintiff

Kenneth S. Montoya
Email: Kenny@Montoyalaw.org
Montoya Law LLC
350 Mission St. SE, Suite 202
Salem, Oregon 97302
Attorney for Defendants City of Seaside and Frank Kaim

Dated September 2, 2026.

*s/ Will Riddell*
**Will Riddell, OSB No. 195635**
1491 Commercial St SE
Salem, Oregon 97302
Phone: (503) 269-8961
Email: will@riddell.lawyer
Attorney for Defendants Louis Lamp and Get Out the Float LLC